## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION

ADDIE EDWARDS, AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF OZIE EDWARDS, AND ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF OZIE EDWARDS;
GAILE WOLFE, AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF MYRTLE KEY, AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF MYRTLE KEY;
AND ALL OTHERS SIMILARLY SITUATED                      **PLAINTIFFS**

vs.                          **CASE NO. CV-2014-203-6**

DIVERSICARE LEASING CORP. D/B/A OUACHITA NURSING
AND REHABILITATION CENTER; DIVERSICARE HEALTHCARE
SERVICES, INC.; DIVERSICARE MANAGEMENT SERVICES CO.;
ADVOCAT ANCILLARY SERVICES, LLC; CAMDEN
OPERATIONS, LLC D/B/A CAMDEN NURSING
AND REHABILITATION CENTER; JEJ INVESTMENTS, LLC;
SUB-TEN HLDINGS, LLC; MASTERTEN, LLC; ADVANCED
PRACTICE SOLUTIONS, LLC; PROCARE THERAPY
SERVICES, LLC; SOUTHERN ADMINISTRATIVE
SERVICES, LLC; PONTHIE HOLDINGS, LLC;
PROFESSIONAL NURSING SOLUTIONS, LLC;
JOHN PONTHIE; ROSS PONTHIE; MARK
THOMPSON; OMEGA HEALTHCARE INVESTORS, INC.;
AND JENNIE JEANETTE GOSS HASSAN
IN HER CAPACITY AS ADMINISTRATOR OF
OUACHITA NURSING AND REHABILITATION CENTER         **DEFENDANTS**

STATE OF ARKANSAS      ss
County of Ouachita
FILED ON THIS 13 DAY OF Jan 20 17
at 10:56 o'clock a M.
Gladys F. Nettles Circuit Clerk
By: Mary Andrews D.C

## PARTIAL
## AGREED/ORDER OF DISMISSAL WITH PREJUDICE

Now on this 5th day of Jan, 2017, comes on for hearing the Joint

Motion of the Plaintiffs and Separate Defendants Diversicare Leasing Corp., Diversicare

Healthcare Services, Inc., Diversicare Management Services Co., and Advocat Ancillary

Services, LLC, as well as Separate Defendants Omega Healthcare Investors, Inc.

("Omega") and Jennie Jeanette Goss Hassan ("Ms. Hassan"), in her capacity as

Administrator of Ouachita Nursing and Rehabilitation Center, with respect to the

allegations against Omega and Ms. Hassan arising prior to September 1, 2013 (collectively, "Separate Defendants"), to dismiss all claims of the Plaintiffs, on behalf of themselves and all others similarly situated, as against the Separate Defendants pending in the above-styled cause with prejudice, and the Court, being well and sufficiently advised in the premises, finds:

<div align="center">I.</div>

That all claims and causes of action of the Plaintiffs, on behalf of themselves and all others similarly situated, as against the Separate Defendants should be, and hereby are, dismissed with prejudice.

**IT IS SO ORDERED.**

Honorable David Guthrie
13th Judicial Circuit Judge

Date: 5 Jan 2017

AS APPROVED BY:

Mr. Brian D. Reddick
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202

Mr. H. Gregory Campbell
**Campbell Law Firm, P.A.**
One Information Way, Box 101
Little Rock, AR 72202

Attorneys for Plaintiff

Ms. Stephanie I. Randall
**HARDIN, JESSON & TERRY, PLC**
P.O. Box 10127
Fort Smith, Arkansas 72917-0127

Attorneys for Separate Defendants

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
## SIXTH DIVISION

Addie Edwards as Personal Representative of the
Estate  of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards                               PLAINTIFFS

vs.                                CASE NO. CV-2014-203-6

Diversicare Leasing Corp. d/b/a Ouachita Nursing
and Rehabilitation Center; Diversicare Healthcare
Services, Inc.; Diversicare Management Services Co.;
Advocat Ancillary Services, LLC; Omega
Healthcare Investors, Inc.; Camden Operations, LLC
d/b/a Ouachita Nursing and Rehabilitation Center;
JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen,
LLC; Advanced Practice Solutions, LLC; Procare
Therapy Services, LLC; Southern Administrative Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; John Ponthie; Ross Ponthie;
Mark Thompson; and Jennie Jeanette Goss Hassan
in her capacity as Administrator of
Ouachita Nursing and Rehabilitation Center                               DEFENDANTS

## <u>MOTION FOR CONTINUANCE</u>

COMES NOW, the Plaintiff Addie Edwards, as Personal Representative of the Estate of

Ozie Edwards, deceased, and on behalf of the wrongful death beneficiaries of Ozie Edwards, and,

for her motion for continuance, states as follows:

1.      The five-day trial of this case is scheduled to begin on May 1-5, 2017.

2.      Portions of this cause of action have settled and have had several defendants

dismissed; therefore, some discovery against the remaining defendants have yet to be exchanged.

3.      This case is currently behind the class action lawsuit of CV-2011-121-6, which is

scheduled to begin on the same day, also with the undersigned law firm of Reddick Moss.

4.      The Defense does not object to the continuance.

1

Respectfully submitted,

Plaintiff Addie Edwards, as Personal Representative
Of the Estate of Ozie Edwards

By

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
Daniel K. Yim (2014202)
John C. Hout (94210)
David Eanes (2000167)
Reddick Moss, PLLC
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Facsimile:  (501) 907-7793

and

Robert M. Sexton (1996106)
Rainwater Holt & Sexton
801 Technology Dr.
Little Rock, AR 72223
Telephone: (501) 868-2500
Facsimile:  (501) 868-2505

*Attorneys for the Plaintiff*

2

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify that a true and correct copy of the foregoing motion to continue was served on the following counsel of record via U.S. Mail, postage prepaid, on this the 1st day of February, 2017:

Mark Dossett
Dale Brown
**Kutak Rock, LLP**
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703

Amy M. Wilbourn
Vicki Bronson
**CONNER & WINTERS, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

Attorneys for the Plaintiff

IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
CIVIL DIVISION
SIXTH DIVISION

ADDIE EDWARDS AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF OZIE EDWARDS, AND ON BEHALF
OF THE WRONGFUL DEATH
BENEFICIARIES OF OZIE EDWARDS                                    **PLAINTIFF**

VS.                          NO. 52CV-14-203-6

DIVERSICARE LEASING CORP,
D/B/A OUACHITA NURSING AND
REHABILITATION CENTER, et al.                                   **DEFENDANTS**

## ORDER OF CONTINUANCE

For good cause shown in the unopposed motion, the captioned cause is hereby
continued from its trial setting of May 1-5, 2017, to a date to be determined by subsequent
order.

Dated this _____22____ day of February, 2017.

_____
DAVID F. GUTHRIE
CIRCUIT JUDGE

FILED
2017 MAR 14 PM 1 55
OUACHITA COUNTY, ARK
GLADYS F. NETTLES
CIRCUIT CLERK

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION

Addie Edwards, as Personal Representative of the                      PLAINTIFF
Estate of Ozie Edwards, and on behalf of the
Wrongful Death Beneficiaries of Ozie Edwards


vs.                              NO. CV-2014-203-6


Omega Healthcare Investors, Inc.;
Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; JEJ Investments, LLC;
Sub-Ten Holdings, LLC; MasterTen, LLC;
Advanced Practice Solutions, LLC; ProCare Therapy
Services, LLC; Souther Administrative Services; LLC;
Ponthie Holdings, LLC; Professional Nursing Solutions,
LLC; John Ponthie; Ross Ponthie; Mark Thompson; and
Jennie Jeanette Goss Hassan, in her capacity as
Administrator of Ouachita Nursing and Rehabilitation Center       DEFENDANTS



### PLAINTIFF'S MOTION TO COMPEL DISCOVERY
### AND INCORPORATED BRIEF IN SUPPORT

Comes now Plaintiff, Addie Edwards, as Personal Representative of the Estate of Ozie

Edwards, and on behalf of the wrongful death beneficiaries of Ozie Edwards, through counsel,

Reddick Moss, PLLC, and for her Motion to Compel Discovery and Incorporated Brief in

Support, states as follows:

### INTRODUCTION AND BACKGROUND

Mr. Ozie Edwards was a resident of Ouachita Nursing and Rehabilitation Center

(sometimes referred to as the "facility") from approximately November 24, 2012 until his

untimely death on November 12, 2013. On September 1, 2013, Defendants acquired Ouachita

Nursing and Rehabilitation Center and exerted operational and managerial control over the

facility until Mr. Edwards' death. While under the Defendants' care, Mr. Edwards suffered from

skin breakdown and the development of an abscess, infection, malnutrition, dehydration, poor

hygiene, and, ultimately, death. On August 28, 2015, Plaintiff filed her Amended Complaint against the Defendants to recover for Mr. Edwards' injuries and death.[1]

Mr. Edwards' injuries were caused by the Defendants' collective negligence. During Mr. Edwards' residency, the Defendants' jointly controlled the operation, planning, management, quality control, and staffing of the facility in such a way that predictably led to injury for residents such as Mr. Edwards. After acquiring Ouachita Nursing and Rehabilitation Center, the Defendants recklessly exerted budgetary control over the facility so as to maximize profits by reducing expenditures for needed staff, supervision, and training, while at the same time pressuring the facility to increase the number of residents. This compromised the staff's ability to provide adequate care for the number of residents entrusted to them. Simply stated, the Defendants placed revenue over the needs of the residents, and Mr. Edwards suffered.

Plaintiff has sought the discovery of evidence to prove that the neglect from which Mr. Edwards suffered while a resident at the Facility was a result of Defendants' conscious decisions to (1) fill their buildings, including Ouachita Nursing and Rehabilitation Center, with residents who needed high levels of care, such as Mr. Edwards, because Defendants are reimbursed at a higher rate for such residents, and then (2) fail to provide appropriate budgets for their nursing homes, including Ouachita Nursing and Rehabilitation Center, for the labor, training, and supplies necessary to meet their residents' needs, including the needs of Mr. Edwards.

The discovery that Plaintiff has sought from Defendants is, in part, designed to demonstrate Defendants' strategy of recruiting medically complex, high acuity ("high need")

---

[1] Plaintiff filed her Amended Complaint against the current "Ponthie" Defendants contemporaneously with her First Amended Class Action Complaint against Diversicare Leasing Corp. d/b/a Ouachita Nursing and Rehabilitation Center; Diversicare Healthcare Services, Inc.; Diversicare Management Services Co.; and Advocate Ancillary Services, LLC ("Diversicare Defendants"). On January 13, 2017, this Court entered an order dismissing the Diversicare Defendants from the present action with prejudice. This matter is currently proceeding against the remaining Ponthie Defendants, named in the caption above, who acquired Ouachita Nursing and Rehabilitation Center on September 1, 2013.

residents, while simultaneously pressuring their staff to reduce labor and work at minimum service levels and with minimum supplies. This practice is exceedingly dangerous given that Defendants are responsible for residents with medically complex needs, such as Mr. Edwards. Plaintiff requires this discovery in order to show why Defendants were cutting labor and work at minimum service levels at the same time that they were targeting society's most labor-dependent and vulnerable adults to become residents at their facilities: because revenue (high need residents pay the most) minus expenses (the largest expense in nursing homes is labor) equals profits. Plaintiff's requests are, in part, directed at discovering evidence of Defendants' business model that prized profits over people.

Furthermore, Plaintiff avers that the discovery of the requested documents and information will prove that Defendants, including the corporate Defendants, had notice and knowledge of the inadequacy and dangerousness of the care and treatment being provided to residents at Ouachita Nursing and Rehabilitation Center, and that it was not in accordance with the accepted standards of care, and yet Defendants failed to correct these problems for their residents, including Mr. Edwards.

The requested documents and information are relevant to Plaintiff's claims for corporate negligence and punitive damages. Evidence that tends to show Defendants knew or should have known that its conduct would result in damage, and evidence that they continued such conduct despite their knowledge, clearly supports a claim for punitive damages. *See Missouri Pacific R.R. Co. v. Ark. Sheriff's Boys' Ranch*, 280 Ark. 53, 65, 655, S.W.2d 389, 395 (1983) ("[I]f a defendant knew that its corporate policy would inflict damage but nevertheless continued that policy with a conscious indifference to the consequences, it could be liable for punitive damages.") Additionally, the requested documents and information demonstrate corporate

control because they show the extent to which critical decisions impacting care and treatment are made at the corporate level.

Plaintiff served Defendants with initial sets of interrogatories and requests for production on December 2, 2014. *See* Pl.'s First Set of Interrog. and Req. for Produc. (attached as **Exhibit "A."**)[2] Defendants thereafter responded to Plaintiff's Interrogatories and Requests for Production with a multitude of objections, including unfounded privilege objections without an accompanying privilege log. On September 18, 2015, counsel for Plaintiff sent correspondence to Defendants in a good-faith attempt to confer and resolve discovery disputes currently at issue. *See* Corresp. from Pl. to Def., Sept. 18, 2015 (attached as **Exhibit "B."**)[3] Defendants supplemented their discovery responses on November 30, 2015 with some additional documentation; however, as of the date of the filing of this motion, numerous requests submitted by the Plaintiff remain woefully unfulfilled and unsatisfied. *See* Ex. A. For these reasons, Plaintiff now moves to compel certain documents and information responsive to Plaintiff's Interrogatories and Requests for Production, as explained more fully below.

## DISCUSSION

### A.    Discovery Standard

All of the information and documentation requested herein is within the permissible scope of discovery. Rule 26 of the Arkansas Rules of Civil Procedure governs discovery in Arkansas. The pertinent part of Rule 26 reads:

---

[2] For the Court's convenience, **Exhibit "A"** also includes Defendants' initial responses, objections, and supplemental responses of November 30, 2015.
[3] All current Defendants were originally represented by Ms. Vicki Bronson of *Conner & Winters. LLP*. On November 21, 2016, Messrs. Mark Dossett, Jeff Fletcher, and Dale Brown of *Kutak Rock, LLP*, filed an Entry of Appearance in this matter on behalf of Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center; Sub-Ten Holdings, LLC; and Jennie Jeanette Goss Hassan, in her capacity as Administrator of Ouachita Nursing and Rehabilitation Center.

> Parties may obtain discovery regarding any matter not privileged which is relevant to the issues in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition, identity, and the location of any books, documents, or other tangible things and the identity and location of persons who have knowledge of any discoverable matter or will or may be called as a witness at the trial of any cause. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Ark. R. Civ. P. 26(b)(1).

Both the Arkansas Supreme Court and the Arkansas Court of Appeals have provided guidance on discovery issues that occur in cases where a plaintiff alleges that a long-term care facility has abused and/or neglected a resident. In *Advocat, Inc. v. Sauer*, the Arkansas Supreme Court ruled that information and evidence that: (1) has a tendency to make a plaintiff's allegations more or less probable, and (2) any evidence that puts a long-term care facility on notice of a condition is relevant evidence. 353 Ark. 29, 111 S.W.3d 346 (2003). In *Sauer*, the specific evidence addressed was surveys in which the OLTC found that the nursing home was not meeting the OLTC requirements. *Id.* at 59-60, 111 S.W.3d at 363-64. Even though some of the surveys involved residents other than Ms. Sauer and time frames outside of Ms. Sauer's residency, the Court held that the evidence was sufficient to put the facility on notice of dangerous conditions.

In *Rose Care, Inc. v. Ross*, the Arkansas Court of Appeals, relying on the *Sauer* decision, affirmed the trial court's decision admitting an OLTC survey that was conducted outside the time frame of Ms. Givens' residency and involved issues relating to residents other than Ms. Givens. 91 Ark. App. 187, 208, 209 S.W.3d 393, 406 (2005). The Court also addressed an evidentiary ruling in which the trial court refused to order the discovery of certain "reports,

correspondence, or other writings generated by or on behalf of any management or consultant to Rose Care concerning the care and treatment of residents." *Id.* at 211, 209 S.W.3d at 408. Although the facility argued that the plaintiff did not prove that the reports existed, the Court of Appeals opined that the documentation should have been provided because the purpose of discovery is to determine whether information and documentation exists and what information is contained therein. *Id.*

In *First Nat'l Bank v. Newport Hosp. and Clinic, Inc.*, 281 Ark. 332, 663 S.W.2d 742 (1984), the Arkansas Supreme Court noted:

> No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.

*Id.* at 335, 663 S.W.2d at 743 (quoting *Hickman v. Taylor*, 329 U.S. 495 (1947)).

Additionally, a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Ark. R. Civ. P. 26(e). Moreover, Rule 33(b) of the Arkansas Rules of Civil Procedure requires each interrogatory to be answered under oath and signed by the person making the answer.

Furthermore, it is well-established that "[a]n objection is inadequate if it merely asserts, in boilerplate fashion, that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc., without specifying how each request for production is deficient and without articulating the particular harm that would accrue if the party were required to respond." 2 Ark.

Civ. Prac. & Proc. § 21:10 (5th ed.) (internal quotation marks omitted). Indeed, "the party opposing a motion to compel has the burden of showing how each discovery request is improper." *Thompson v. Harding Univ.*, No. 4:06-CV-01653, 2007 WL 2081695, at *1 (E.D. Ark. July 20, 2007). "Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production." *Id.* "The objecting party ***must show specifically*** how each request is not relevant or how each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden, or how the request is irrelevant." *Jones v. Forrest City Grocery Inc.*, No. 4:06-CV-00944, 2007 WL 841676, at *1 (E.D. Ark. Mar. 16, 2007) (emphasis added).[4]

Similarly, "[t]he burden of showing that a privilege applies is upon the party asserting it." *Kinkead v. Union Nat. Bank*, 51 Ark. App. 4, 11, 907 S.W.2d 154, 158 (1995). "The party 'me[ets] its burden of providing a factual basis for asserting the privileges when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its . . . counsel.'" *Lee v. Overbey*, No. 2:08-CV-02115, 2010 WL 161443, at *3 (W.D. Ark. Jan. 8, 2010) (quoting *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 628 (N.D. Iowa 2000); citing *Zar v. South Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 463-64 (8th Cir. 1992)). This obligation applies equally to Defendants' assertions of the quality assurance and peer review privileges and patient confidentiality concerns. *See Csiszer v. Wren*, No. 3:08CV3011, 2008 WL 5071874, at *3 (W.D. Ark. Nov. 25, 2008) ("If the Defendant contends that their response is protected by the quality assurance/peer review privilege, patient confidentiality, or

---

[4] *See also Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory . . . the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.").

other privacy concerns, the Defendant is ordered to produce a log listing each document withheld, the privilege claimed, and an affidavit setting forth the basis of the privilege.")

In addition to the aforementioned authority, Arkansas Rule of Civil Procedure 34, in pertinent part, provides:

> The response [to a request for production] shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

Ark. R. Civ. P. 34. Here, Defendants' blanket objections and claims of privilege in response to Plaintiffs' requests violate this directive. Indeed, the manner in which Defendants have responded to Plaintiffs' requests should be considered incomplete, if not evasive. Under Ark. R. Civ. P. 37, "an evasive or incomplete answer or response is to be treated as a failure to answer or respond."

Arkansas Rule of Civil Procedure 37 provides that a party may apply for an order compelling discovery if another party, in response to a request for inspection submitted under Rule 34, either fails to respond that inspection will be permitted as requested or provides an evasive or incomplete answer or response, which is considered a failure to respond. Ark. R. Civ. P. 37(a)(2). Here, Defendants have failed to respond to interrogatories and requests to produce documents, have not supplemented their earlier answers and responses, and have not verified their answers to interrogatories.

Accordingly, this Court should overrule Defendants' objections and order meaningful answers and production of responsive documents along with a privilege log, if necessary.

**B.    The Applicability of the Requested Items to This Case**

As indicated above, and though Defendants have produced some information relating to Plaintiff's requests, numerous requests remain incomplete. (**Ex. "A,"** *passim.*) Plaintiff's discovery requests break down into three basic categories of information that are typical in nursing home actions: (1) information regarding the witnesses and Defendants and the roles they played in providing care or operating, managing, and controlling the facility; (2) information regarding the quality of care and conditions in the facility in which Mr. Edwards resided and the notice that Defendants had of those conditions; and (3) information regarding the level and manner of control exercised by the Defendants over the individual facility, including the financial and budgetary constraints placed on the facility, that influenced care, and the corporate Defendants' knowledge and approval of certain practices and outcomes in the facility. With this in mind, each request that Plaintiff has proffered is specifically designed to reveal information that is specifically related to the residency and injuries suffered by Mr. Edwards, and the following requests remain unanswered or incomplete:

### 1.   *Information Regarding Witnesses/Defendants and Their Roles in Providing Care and Operating the Facility*

<u>Request to Produce Nos. 27-36</u>:  Employee files for persons employed at the facility from September through November of 2013.

### 2.   *Information Regarding the Quality of Care and Conditions in the Facility and the Notice Defendants had of Those Conditions*

<u>Request to Produce No. 45</u>:  Any shift change reports and/or 24-hour reports created in September through November of 2013.

<u>Request to Produce No. 46</u>:  Reports or documents that reflect employee turnover that occurred at the facility from September through November of 2013.

<u>Request to Produce Nos. 56-59</u>:  Any memoranda or e-mails that reflect staffing issues within the facility, as well as any e-mails sent or received by managerial-level staff members regarding facility census, budgets, turnover, and resident neglect created from September through November of 2013.

Request to Produce No. 60:  Quality Indicator Reports reflecting facility statistics from September through November of 2013.

3.  *Information Regarding the Control the Defendants Exercised Over the Facility, Financial Incentives and Constraints That Influenced Care, and the Defendants' Knowledge and Approval of Certain Practices and Outcomes*

Request to Produce No. 37:  Policy and Procedure manuals in effect at the facility from September through November of 2013.

Request to Produce No. 47:  Payroll journals and records for the facility for September through November of 2013.

Request to Produce Nos. 61-62:  Budgets, cost reports, and any documents reflecting or relating to the maintenance of the facility's budget for September through November of 2013.

C.  **The Information Requested Is Within the Scope of Discovery and Should Be Produced**

These requests are narrowly tailored to explore the most fundamental information associated with Mr. Edwards' residency and are highly relevant to the allegations contained within the Plaintiff's Complaint. The information requested is within the liberal scope of discovery articulated by the Arkansas Supreme Court in the Arkansas Rules of Civil Procedure and the cases interpreting those rules. Additionally, because the evidence detailing Mr. Edwards' care and treatment at the hands of Defendants can only be found in Defendants' own records and files, the even more generous scope of discovery explained by the Arkansas Supreme Court in *Marrow v. State Farm*, 264 Ark. 227, 236-38, 570 S.W.2d 607, 613-14 (1978), is applicable. Moreover, the decisions in *Sauer* and *Ross* indicate the importance of evidence that places a defendant on notice of poor care being rendered in its nursing facility, like many of Plaintiff's interrogatories and requests are designed to do. The evidence will demonstrate that Defendants were aware of problems at their facility and yet chose to disregard those problems. Instead of providing additional staff, supervision, and training in order to meet the needs of residents,

Defendants placed profits over patient care and continued to provide inadequate staff and supervision, resulting in the injuries suffered by Mr. Edwards.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion.

Respectfully submitted,

Addie Edwards, as Personal Representative of the Estate of Ozie Edwards, deceased

By: _____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
John C. Hout (94210)
Daniel K. Yim (2014202)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:     (501) 907-7790
Facsimile:     (501) 907-7793

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record on this the 5th day of June, 2017:

Mark Dossett
Dale Brown
**Kutak Rock, LLP**
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703

Amy Wilbourn
Vicki Bronson
**Conner & Winters, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

Attorney for the Plaintiff

# EXHIBIT "A"

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### 6th DIVISION

Addie Edwards as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards                         **PLAINTIFFS**


vs.                              **CASE NO. CV-2014-203-6**


Diversicare Leasing Corp. d/b/a Ouachita Nursing
and Rehabilitation Center; Diversicare Healthcare
Services, Inc.; Diversicare Management Services Co.;
Advocat Ancillary Services, LLC; Omega
Healthcare Investors, Inc.; Camden Operations, LLC
d/b/a Ouachita Nursing and Rehabilitation Center;
JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen,
LLC; Advanced Practice Solutions, LLC; ProCare
Therapy Services, LLC; Southern Administrative Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; John Ponthie; Ross Ponthie;
Mark Thompson; and Jennie Jeanette Goss Hassan
in her capacity as Administrator of
Ouachita Nursing and Rehabilitation Center                          **DEFENDANTS**

## SEPARATE DEFENDANTS' FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO PONTHIE DEFENDANTS

COME NOW the Separate Defendants, Omega Healthcare Investors, Inc. (for the time period on and after September 1, 2013); Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center; JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen, LLC; Advanced Practice Solutions, LLC; ProCare Therapy Services, LLC; Southern Administrative Services, LLC; Ponthie Holdings, LLC; Professional Nursing Solutions, LLC; John Ponthie; Ross Ponthie; and Mark Thompson (jointly referred to as "ONR"), and in their response to the following, state as follows:

## INITIAL STATEMENTS AND OBJECTIONS

1.       Responding Defendants are providing one cumulative set of responses for judicial economy.

2.       Responding Defendants interpret these requests only to seek non-privileged information and documentation, and by responding do not intend to explicitly or implicitly waive any applicable privilege.

3.       Responding Defendants answer the following discovery for the period September 1, 2013 to November 12, 2013.

4.       Further, these responses should not be construed as a waiver of any right to compel arbitration in the event a valid Arbitration Agreement exists. Responding Defendants do not intend to waive any right to compel arbitration in this matter by supplying the enclosed information.

**INTERROGATORY NO. 1:**  Please state the name, address and title of each person who contributed in any way to the gathering of the information upon which your answers to these interrogatories are based.

**RESPONSE TO INTERROGATORY NO. 1:**

**Jeanette Goss, Administrator**
**Ouachita Nursing and Rehabilitation Center**
**1411 Country Club Road**
**Camden, AR 71701**

**Mary Williams, LPN/Medical Records Clerk**
**Ouachita Nursing and Rehabilitation Center**
**1411 Country Club Road**
**Camden, AR 71701**

**INTERROGATORY NO. 2:**  For each person employed at the facility during the residency of Ozie Edwards, please state:

2

(a)    His or her name, last known address, and telephone number;

(b)    His or her title;

(c)    The dates of employment;

(d)    The reasons for termination, if applicable; and,

(e)    Whether the person was the subject of any disciplinary action during his or her term of employment and, if so, the precise details thereof.

**RESPONSE TO INTERROGATORY NO. 2:**  Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  The facility employed numerous individuals during the residency of Ozie Edwards.  In addition, providing this information would result in the disclosure of confidential information.  SUPPLEMENTAL ANSWER: As stated above, providing reasons for termination and information concerning disciplinary actions would require the disclosure of private and confidential employee information that ONR is not at liberty to disclose. Subject to and without waiving the foregoing objections, Plaintiff is referred to documents Bates-numbered DEF-000141 to DEF-000146 produced in response to Request for Production No. 36; documents Bates-numbered DEF-000287 to DEF-000506 produced in response to Request for Production No. 42; Bates-numbered DEF-000507 to DEF-000515 produced in response to Request for Production No. 43; and Bates-numbered DEF-000516 to DEF-000526 produced in response to Request for Production No. 44.

**INTERROGATORY NO. 3:**  Please state the name, address and title of each person whom you know, or have reason to believe, has any information or knowledge regarding the residency of Ozie Edwards at the facility and/or the facts alleged in Plaintiff's Complaint.

**RESPONSE TO INTERROGATORY NO. 3:** See Response to Interrogatory No. 13. In addition, nurses and CNAs who are listed as caregivers in the medical records of Ozie

3

Edwards may have information regarding Mr. Edwards's residency. Defendants refer Plaintiff to the medical records.

**INTERROGATORY NO. 4:** Please state the name, address, and telephone number of each person who you may call as a witness in this case, the subject matter to which each person will testify, and the substance of the facts to which each person will testify.

**RESPONSE TO INTERROGATORY NO. 4: Separate Defendants have not made a decision as to which witnesses they expect to call at trial.**

**INTERROGATORY NO. 5:** Identify each person you may call as an expert witness at trial of this case and with respect to each such person:

(a)   State separately for each expert his or her educational background, including all educational institutions attended, dates of attendance, and degrees, if any received;

(b)   State separately for each expert any other specialized training in his or her field, including the type of training received, the institution at which the training was received, and the dates of the training;

(c)   Identify separately for each expert each professional, trade, academic, or other organization of which he or she is a member, including in your response the name of the organization, the dates of membership, and a description of each office held;

(d)   Identify separately each book, paper, article, or other writing or publication of each expert, including title and subject matter, name and address of publisher, date of publication, and co-authors, if any;

(e)   State separately for each expert each job held by each expert for the past ten (10) years including name and address of employer, dates of employment, and description of position held;

(f)   State separately for each expert any other experience that is relevant in any manner to his or her expected testimony in the case;

(g)   State separately for each expert the subject matter of his or her expected testimony;

4

(h)   State separately and in detail for each expert the substance of all facts about which the expert is expected to testify;

(i)   State separately and in detail for each expert the substance of all opinions about which each expert is expected to testify;

(j)   State separately and in detail for each expert the substance of the grounds for each opinion by each expert and state in detail the substance of all facts upon which any opinions are based;

(k)   Identify separately for each expert all documents he or she has been shown, had summarized, or otherwise had made available for review in connection with his or her testimony in this matter;

(l)   Identify separately for each expert all depositions, pleadings, or other records of any court or administrative proceeding that have been made available for review in connection with his or her testimony in this proceeding;

(m)   Identify separately for each expert anything else shown to or reviewed by each expert in connection with his or her expected testimony in this action;

(n)   Identify separately for each expert all work papers, whether preliminary or final, prepared by or for each expert in connection with his or her expected testimony in this litigation;

(o)   Identify separately for each such expert all reports, including all drafts prepared by or for each expert in connection with his or her expected testimony in this action and state the name and present location of the person with custody of each report or draft;

(p)   State separately for each expert all instructions given by the defendant or defendants' agents in connection with the expert's expected testimony in this action;

(q)   Identify separately for each expert all persons with whom each expert spoke regarding his expected testimony in this action and state the substance of those discussions;

(r)   Identify separately for each expert all persons assisting each expert in any manner in the preparation of his or her expected testimony in this action, including the name and address of each such person who gave assistance, the type of assistance given, and the dates during which the assistance was given;

(s)   Identify separately for each expert anyone else with whom each expert has spoken regarding his or her expected testimony in this action;

(t)     State separately as to each expert the compensation already paid; and

(u)     State separately as to each expert the compensation yet to be paid, the times when payment will become due, and any conditions that each expert must meet in order to secure compensation.

**RESPONSE TO INTERROGATORY NO. 5:** Separate Defendants have not made a decision as to whether they will call an expert witness at trial. Separate Defendants reserve the right to supplement this response. SUPPLEMENT: Separate Defendants will provide information concerning its experts in accordance with the Court's scheduling order and will provide such information as is required by Arkansas Rule of Civil Procedure

**INTERROGATORY NO. 6:** Please state the name and address of each person with whom you have consulted whose report or opinions will be relied upon in whole or in part by a testifying expert in this case.

**RESPONSE TO INTERROGATORY NO. 6:** Defendants object to Interrogatory Number 6 on the grounds that it seeks confidential information and information protected by attorney client privilege and attorney work product doctrine. See also response to Interrogatory No. 5.

**INTERROGATORY NO. 7:** Identify all members of the governing body of the facility during the residency and list the following information:

(a)     Name;

(b)     Current or last known home address;

(c)     Current or last known place of employment;

(d)     Telephone number; and,

(e)     Dates identified person served as a member of the governing body.

6

**RESPONSE TO INTERROGATORY NO. 7:** Those listed below are only to be contacted through the undersigned counsel.

| | | |
|---|---|---|
| (i) | (a) | **Camden Operations, LLC** |
| | (b) | **1411 Country Club Road, Camden, AR 71701** |
| | (c) | **N/A** |
| | (d) | **(870) 836-4111** |
| | (e) | **September 1, 2013 to present** |
| | | |
| (ii) | (a) | **Jeanette Goss, Administrator** |
| | (b) | **2930 Huron St., Camden, AR 71701** |
| | (c) | **Ouachita Nursing and Rehabilitation Center** |
| | (d) | **(870) 836-4111** |
| | (e) | **September 1, 2013 to present** |

**INTERROGATORY NO. 8:** Please identify each company that operated and/or managed the facility during the residency of Ozie Edwards. For each company, please identify the applicable time periods.

**RESPONSE TO INTERROGATORY NO. 8:** Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center began operating the facility on September 1, 2013 to present. The Separate Defendants do not have the requested information for the period prior to September 1, 2013.

**INTERROGATORY NO. 9:** Please list and describe in detail each item of evidence that you plan to offer at trial, including, but not limited to, those that you plan to or will use in the direct examination and cross-examination of witnesses.

**RESPONSE TO INTERROGATORY NO. 9:** Separate Defendants have not determined what exhibits they will introduce at trial.

**INTERROGATORY NO. 10:** Please identify all insurance policies providing potential coverage for the claims alleged in Plaintiffs' Complaint. For each policy, state the following:

(a)     The name of the insurance carrier;

(b)     The named insured as shown on the policy;

(c)     Coverage limits per person, per occurrence and aggregated limits;

(d)     Whether the policy is an occurrence or claims made policy;

(e)     Whether the coverage is primary, excess or umbrella; and,

(f)     Whether any insurance carrier has denied coverage or is defending under a reservation of rights.

**RESPONSE TO INTERROGATORY NO. 10:  Objection, overly broad and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, see documents produced in Response to Request to Produce No. 17.**

**INTERROGATORY NO. 11:** Please state each date during the residency of Ozie Edwards that Ouachita Nursing and Rehabilitation Center failed to have the minimum level of staff working in the facility as required by the Arkansas Office of Long Term Care Provider Manual.

**RESPONSE TO INTERROGATORY NO. 11:  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. During the residency of Ozie Edwards for September 1, 2013 to November 12, 2013, the facility experienced shift shortages for the following dates:**

(i)     September 1, 14, 15, 21, 22, 28, 2013

(ii)     October 6, 13, 26, 27, 2013

(iii)     November 3, 9, 10, 2013

**INTERROGATORY NO. 12:** Please identify the name, last known address, telephone number and dates of service of every person who performed any type of audit or review of medical charts at the facility during the residency.

8

### RESPONSE TO INTERROGATORY NO. 12:

(i)   Mary Williams, LPN/Medical Records Clerk
      Ouachita Nursing and Rehabilitation Center
      1411 Country Club Road
      Camden, AR 71701
      (870) 836-4111
      September 1, 2013 to Present

(ii)  Clinical Concepts
      P.O. Box 176
      Arkadelphia, AR 71923
      (501) 605-3546
      September 1, 2013 to Present

(iii) Elizabeth Carlton, RD
      125 Covey Rise Trail
      Hot Springs, AR 71901
      (501) 282-4434
      September 1, 2013 to Present

**INTERROGATORY NO: 13:** Please state the name, last known address and telephone number, as well as dates of service, of every Administrator, Director of Nursing, and Assistant Director of Nursing employed at the facility during the residency of Ozie Edwards.

**RESPONSE TO INTERROGATORY NO. 13:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. The information from September 1, 2013 to the present is as follows:

| Administrator | DON |
|---|---|
| Jeanette Goss | Rocksanne Moseley, RN |
| 2930 Huron St. | 2403 Chidester Hwy |
| Camden, AR 71701 | Camden, AR 71701 |
| (870) 818-7799 | (870) 833-0596 |
| September 1, 2013 to Present | September 1, 2013 to Present |

ADON

Kyra Smith, RN
1003 Monroe St.
El Dorado, AR 71730
(870) 314-1006

September 1, 2013 to Present

**INTERROGATORY NO. 14:** Please state the name, last known address and telephone number, as well as dates of service, of every Medical Director employed at the facility during the residency of Ozie Edwards.

**RESPONSE TO INTERROGATORY NO. 14:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. The Medical Director contracted for medical services during the residency period September 1, 2013 to November 12, 2013 was:

Dan Martin, MD, FACP
476 Hospital Dr.
Camden, AR 71701
(870) 836-6627

**INTERROGATORY NO. 15:** Please identify each consultant utilized by the facility during the residency, including but not limited to dietary consultant, medical records consultant, physical therapy consultant, nursing consultant, or pharmacy consultant.

**RESPONSE TO INTERROGATORY NO. 15:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. The following consultants were utilized by the facility during the residency period September 1, 2013 to November 12, 2013:

    (a)    Dietary Consultant - Elizabeth Carlton, RD

    (b)    Pharmacy Consultant – Lauren Carroll, Pharm D

    (c)    Nursing Consultant – Melissa Koonce, RN

**SUPPLEMENTAL RESPONSE:** See also documents produced in response to Request for Production 22.

10

**INTERROGATORY NO. 16:** Please list the date and substance of any investigation which Defendants know or believe was conducted by any governmental agency concerning Ozie Edwards, including, but not limited to, the Office of Long Term Care or any law enforcement offices, as well as the name and address of the agency that conducted the investigation.

**RESPONSE TO INTERROGATORY NO. 16:** None.

**INTERROGATORY NO. 17:** Please state whether Defendants had a system to record consumer, resident or employee suggestions (i.e., suggestion box, 800 number, etc.) regarding the facility during the residency. If so, please state the names and types of records of suggestions that exist; the person(s) primarily responsible for suggestions; and the name and business address of the records custodian who maintains these records.

**RESPONSE TO INTERROGATORY NO. 17:** **Residents or their representatives are encouraged to provide written documentation on the Grievance/Complaint Report which is then given to Cheryl Purifoy, LPN, Ouachita Nursing and Rehabilitation Center, Camden, AR 71701, who maintains the records. The facility has an open door policy and facility staff may make recommendations or suggestions during the in-service/training held once a month.**

**INTERROGATORY NO. 18:** Please state the name, address and telephone number of all corporations, associations, entities or persons who have an ownership or financial interest in Ouachita Nursing and Rehabilitation Center.

**RESPONSE TO INTERROGATORY NO. 18:** **See also Response to Interrogatory No. 20:**

> **Camden Operations, LLC**
> **Sub-Ten Holdings, LLC**
> **P.O. Box 12187**
> **Alexandria, LA 71315**

11

(318) 443-8167

**INTERROGATORY NO. 19:** State the names of all licensees of the facility during the residency. Please list the dates each person or entity was a licensee.

**RESPONSE TO INTERROGATORY NO. 19:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center became the licensee on September 1, 2013.

**INTERROGATORY NO. 20:** Identify the owner(s) of the facility during the residency. Please list the dates each person or entity was an owner.

**RESPONSE TO INTERROGATORY NO. 20:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Sub-Ten Holdings, LLC is the sole member of Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center, the licensed operator of the facility, beginning September 1, 2013 to present. The facility's property is owned by OHI Asset (AR) Camden, LLC. SUPPLEMENTAL ANSWER: The owner of the real estate on which the facility is located is Omega Healthcare Investors, Inc. The licensed operator of the facility from September 1, 2013 through November 12, 2013 was Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center.

**INTERROGATORY NO. 21:** Are you aware of any care, services, or treatment that is documented in Ozie Edwards's facility chart but that was not provided? If so, please state:

    (a)    a description of the service, care or treatment documented as provided;

    (b)    the date on which the service, care or treatment was documented as being provided;

12

(c)    the name and position of the person who provided the care, service or treatment; and,

(d)    the location of the documentation of the care, service or treatment provided that was not provided.

**RESPONSE TO INTERROGATORY NO. 21:  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Separate Defendants are not aware of any care documented in Mr. Edwards's facility chart that was not provided after September 1, 2013.**

**INTERROGATORY NO. 22:**  Please identify each employment agency utilized by the facility during the residency of Ozie Edwards for any employment need, including but not limited to nursing, dietary, housekeeping or administration. Further, please state the date(s) each agency was utilized.

**RESPONSE TO INTERROGATORY NO. 22:  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. SUPPLENTAL RESPONSE: Plaintiffs are referred to the documents produced in response to Request for Production Number 22, Bates Numbered DEF-000083 to DEF-000097 and DEF _____. In addition, the following agency was utilized for housekeeping and laundry** services:

**Healthcare Services Group
3220 Tillman Dr., Suite 300
Bensalem, PA 19020
(215) 639-4274
Dates: September 1, 2013 to Present**

**INTERROGATORY NO. 23:**  Do you claim that Plaintiffs, or any other person or entity was at fault, negligent, or comparatively negligent, in whole or in part, for the claims asserted against you in this lawsuit? If your answer is "Yes", please describe in detail each act or

13

omission on the part of the Plaintiffs, or any other person or entity that you contend constituted negligence or fault or caused in whole or in part Plaintiffs' injuries.

**RESPONSE TO INTERROGATORY NO. 23:** **Objection, attorney-client privilege, work product, seeks mental impression of counsel. Subject to and without waiving these objections, it is unknown at this time whether Plaintiff or another party or non-party was at fault, negligent or comparatively negligent.**

**INTERROGATORY NO. 24:** Do you or your attorneys have in your possession, custody or control any statement of any person (including any plaintiff) concerning the facts surrounding this controversy including any written statements, signed or otherwise, adopted or proved by such person or any stenographic, mechanical, electrical, or other recording or any transcript thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously reported? If so, please state the following:

    (a)    The name, address, and phone number of the person from whom it was obtained;

    (b)    The date it was obtained;

    (c)    The title and position of the person who obtained it;

    (d)    Where it was obtained; and,

    (e)    Is the statement signed by the person giving the statement? If it was not signed, please state how the statement is connected with the person purportedly giving the statement. For example, telephone-recorded conversation, etc.

**RESPONSE TO INTERROGATORY NO. 24:** **None known other than what may appear in Mr. Edwards's facility chart or medical records.**

**INTERROGATORY NO. 25:** Please list and describe in detail each and every document, item or thing which supports any defense upon which you intend to rely at the trial of this matter.

**RESPONSE TO INTERROGATORY NO. 25:**   Separate Defendants have not determined what documents, items or things they will introduce at trial. **SUPPLEMENTAL RESPONSE:**   ONR has not determined what documents, items or things it will introduce at trial. Mr. Edwards' medical records reflect that he received proper care from September 1, 2013 through November 12, 2013, the period of time during which ONR was the operator of the facility. Mr. Edwards' medical records also demonstrate that he was 100 years old at the time of his death and passed away due to his myriad health issues.

**INTERROGATORY NO. 26:**   Please identify all members of the Quality Assurance Committee for the facility during the dates of residency until now.

**RESPONSE TO INTERROGATORY NO. 26:**   The Separate Defendants do not have the requested information for the period prior to September 1, 2013. The following individuals were members of the Quality Assurance Committee for the facility during the residency September 1, 2013 to November 12, 2013:

- Jeanette Goss, Administrator
- Rocksanne Moseley, RN/DON
- Kyra Smith, RN/ADON
- Mary Williams, LPN/Medical Records
- Rebecca Kimbell, LSW
- Marie Watson, Dietary Manager
- Cheryl Purifoy, LPN
- Dan Martin, MD
- Ken Mason, Maintenance

**INTERROGATORY NO. 27:**   Specifically state each and every date nursing personnel of the facility or any person engaged by you to render services at the facility notified any physician or family member of Ozie Edwards about any change in the condition of Ozie Edwards or any problem with respect to his care.

15

**RESPONSE TO INTERROGATORY NO. 27:  See Mr. Edwards' medical records which have been previously produced.**

**INTERROGATORY NO. 28:** Please identify, with sufficient particularity to formulate the basis of a request to produce, all records of any kind prepared and/or maintained by the facility, which pertain in any way to Ozie Edwards, and state the name, title, and business address of the custodian of each such record.

**RESPONSE TO INTERROGATORY NO. 28:  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the period after September 1, 2013, there are none other than what is contained in Mr. Edwards's facility chart or medical records.**

**INTERROGATORY NO. 29:** Please identify each dietary aide or dietician for the facility during the residency, and state the dates of service for each and every dietary aide or dietician.

**RESPONSE TO INTERROGATORY NO. 29:  Objection, overly broad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Subject to and without waiving these objections, for the period after September 1, 2013, Elizabeth Carlton, RD and Marie Watson, Dietary Manager.**

Dated: 11/30/15

16

OMEGA HEALTHCARE INVESTORS, INC.
(FOR THE TIME PERIOD ON AND AFTER
SEPTEMBER 1, 2013); CAMDEN, LLC D/B/A
OUACHITA NURSING AND REHABILITATION
CENTER; JEJ INVESTMENTS, LLC; SUB-TEN
HOLDINGS, LLC; MASTERTEN, LLC;
ADVANCED PRACTICE SOLUTIONS, LLC;
PROCARE THERAPY SERVICES, LLC;
SOUTHERN ADMINISTRATIVE SERVICES,
LLC; PONTHIE HOLDINGS, LLC;
PROFESSIONAL NURSING SOLUTIONS, LLC;
JOHN PONTHIE; ROSS PONTHIE; AND MARK
THOMPSON

By: _____
Amy M. Wilbourn (Ark. Bar No. 2003166)
Vicki Bronson (Ark. Bar No. 97058)
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703
(479) 582-5711 Telephone
(479) 587-1426 Facsimile
Email:  awilbourn@cwlaw.com
Email:  vbronson@cwlaw.com

ATTORNEYS FOR THESE DEFENDANTS

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed to the following on this the 30th day of November, 2015:

Brian D. Reddick
Brent L. Moss
Robert W. Francis
Matthew D. Swindle
REDDICK MOSS, PLLC
One Information Way, Suite 105
Little Rock, AR  72202

Robert M. Sexton
RAINWATER HOLT & SEXTON
6315 Ranch Drive
Little Rock, AR  72223

Stephanie Randall
HARDIN, JESSON & TERRY, PLC
P.O. Box 10127
Fort Smith, AR 72917-0127

Vicki Bronson

IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
6th DIVISION

Addie Edwards as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards                    **PLAINTIFFS**

vs.                              **CASE NO. CV-2014-203-6**

Diversicare Leasing Corp. d/b/a Ouachita Nursing
and Rehabilitation Center; Diversicare Healthcare
Services, Inc.; Diversicare Management Services Co.;
Advocat Ancillary Services, LLC; Omega
Healthcare Investors, Inc.; Camden Operations, LLC
d/b/a Ouachita Nursing and Rehabilitation Center;
JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen,
LLC; Advanced Practice Solutions, LLC; Procare
Therapy Services, LLC; Southern Administrative Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; John Ponthie; Ross Ponthie;
Mark Thompson; and Jennie Jeanette Goss Hassan
in her capacity as Administrator of
Ouachita Nursing and Rehabilitation Center               **DEFENDANTS**

## SEPARATE DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO PONTHIE DEFENDANTS

COMES NOW, the Separate Defendants, Omega Healthcare Investors, Inc. (for the time

period on and after September 1, 2013); Camden Operations, LLC d/b/a Ouachita Nursing and

Rehabilitation Center; JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen, LLC;

Advanced Practice Solutions, LLC; ProCare Therapy Services, LLC; Southern Administrative

Services, LLC; Ponthie Holdings, LLC; Professional Nursing Solutions, LLC; John Ponthie;

Ross Ponthie; and Mark Thompson, (collectively referred to as "ONR") and in their response to

the following, state as follows:

## INITIAL STATEMENTS AND OBJECTIONS

1.      Responding Defendants are providing one cumulative set of responses for judicial economy.

2.      Responding Defendants interpret these requests only to seek non-privileged information and documentation, and by responding do not intend to explicitly or implicitly waive any applicable privilege.

3.      Responding Defendants answer the following discovery for the period September 1, 2013 to present.

4.      Further, these responses should not be construed as a waiver of any right to compel arbitration in the event a valid Arbitration Agreement exists. Responding Defendants do not intend to waive any right to compel arbitration in this matter by supplying the enclosed information.

**REQUEST TO PRODUCE NO. 1:**   Please produce a Bates-stamped copy of the original chart for Ozie Edwards, including but not limited to the following:

(a) Admission and Discharge documents;

(b) Resident Assessments Protocols (RAPs);

(c) Minimum Data Sets (MDS);

(d) Care Plans;

(e) Physician's Notes;

(f) Physician's Orders;

(g) Nursing Notes;

(h) Medication Administration Records (MARs);

(i) Treatment Records;

2

    (j)  CNA Flowsheets;

    (k)  Activities for Daily Living (ADLs);

    (l)  Social Service Notes;

    (m) Advance Directives, including Acknowledgement of Resident's Rights, Living Will,

    (n)  Do Not Resuscitate Orders (DNR), Consent Forms;

    (o)  Diagnosis, including EKG's, x-rays, laboratory studies or other test performed during the residency;

    (p)  Nutritional Notes or notes of registered dieticians;

    (q)  Rehabilitation Notes; and

    (r)  Miscellaneous Assessments, including behavior monitors, pressure sore risk assessments and bowel and bladder assessments.

**RESPONSE TO REQUEST TO PRODUCE NO. 1:** **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Medical records of Mr. Edwards for the time period September 1, 2013 through November 12, 2013 were previously produced.    SUPPLEMENTAL RESPONSE: Please see attached documents Bates-stamped DEF-000535 to DEF-000562.**

**REQUEST TO PRODUCE NO. 2:**  Please produce all reports, correspondence, memorandums and/or any other form of communication not included as a part of the "normal" facility chart used to memorialize the care and treatment rendered to Ozie Edwards at the facility during his residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 2:**  **Objection, vague and ambiguous. The term "normal" facility chart is not defined. The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Subject to and without waiving this objection, all known documents related to Mr. Edwards' care are contained in the facility chart or medical records which have already been produced.**

3

SUPPLEMENTAL RESPONSE: For the period beginning September 1, 2013 through November 12, 2013, there are no documents related to Mr. Edwards' care other than the medical records and charts that have already been provided.

**REQUEST TO PRODUCE NO. 3:** Please produce all documentation by the facility's caregivers used to communicate regarding the care or treatment of residents that references or concerns Ozie Edwards during his residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 3:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Please see the medical records of Mr. Edwards for the time period September 1, 2013 through November 12, 2013 that were previously produced. SUPPLEMENTAL RESPONSE: Plaintiffs have been provided all of Mr. Edwards' medical records for the time of his residency at the facility. ONR does not have any documents responsive to this request other than the medical records.

**REQUEST TO PRODUCE NO. 4:** Please produce all documents, e-mails, memoranda, notes, or documents of any kind that were provided to Ozie Edwards' physician(s) or that memorialize any notification regarding Ozie Edwards to his physician(s) during his residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 4:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Please see the medical records of Mr. Edwards for the time period September 1, 2013 through November 12, 2013 that were previously produced. SUPPLEMENTAL RESPONSE: Plaintiffs have been provided all of Mr. Edwards' medical records for the time of his residency at the facility. ONR does not have any documents responsive to this request other than the medical records.

**REQUEST TO PRODUCE NO. 5:**   Please produce all incident and/or accident reports that were produced at the facility as required to be kept by the Arkansas Office of Long Term Care Provider Manual, including but not limited to:

(a) Reports that reference Ozie Edwards; and,

(b) All other reports generated during Ozie Edwards' residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 5:**   **Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, none known. SUPPLEMENTAL RESPONSE: Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence with respect to this Request seeking information related to residents other than Mr. Edwards.  Plaintiffs have been provided all of Mr. Edwards' medical records for the time of his residency at the facility. ONR does not have any documents responsive to this request related to Mr. Edwards. ONR continues its objection to providing information related to other residents of the facility.**

**REQUEST TO PRODUCE NO. 6:**   Please produce all documentation reflecting any investigations conducted by state or federal agencies, including local law enforcement, concerning Ozie Edwards.

**RESPONSE TO REQUEST TO PRODUCE NO. 6:**   **None.**

**REQUEST TO PRODUCE NO. 7:**   Please produce color copies of all photographs taken by Defendants of Ozie Edwards during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 7:**   **None.**

**REQUEST TO PRODUCE NO. 8:**   Please produce all complaints or incident investigations that relate to Ozie Edwards undertaken by you or at your request **prior to receiving formal notice of this lawsuit.**

**RESPONSE TO REQUEST TO PRODUCE NO. 8:   These Defendants are not aware of any complaints or incident investigations relating to Mr. Edwards prior to receiving formal notice of this lawsuit.**

**REQUEST TO PRODUCE NO. 9:**   Please produce complete and itemized bills for all services, medical supplies, pharmaceutical supplies, therapies, or any other goods or services for which the facility charged Ozie Edwards or any third party payer on behalf of Ozie Edwards for his residency at the facility, including, but not limited to:

(a)   All bills or statements submitted to Medicaid or Medicare, or any fiscal intermediary for Medicaid or Medicare, for supplies, therapies, or other ancillary charges covering care, supplies, equipment, or other ancillary charges for Ozie Edwards;

(b)   All bills or statements submitted to Ozie Edwards, his power of attorney, guardian, or family for room and board, services, supplies, equipment, or other items provided to Ozie Edwards, including co-payments or deductibles, by the facility;

(c)   All revenue reports and/or remittance advisories that reflect reimbursement made by Medicare, Medicaid, private insurance, or any individual for room and board, services, supplies, equipment, or other items provided by the facility; and

6

(d)     All statements, lists, or reconciliations of trust accounts reflecting funds received from Ozie Edwards' power of attorney, guardian, or family or held in trust for the benefit of Ozie Edwards.

**RESPONSE TO REQUEST TO PRODUCE NO. 9:** **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the period after September 1, 2013, please see documents attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000001 to DEF-000008.**

**REQUEST TO PRODUCE NO. 10:** Please produce all documents received from or provided to the Office of Long Term Care regarding Ozie Edwards.

**RESPONSE TO REQUEST TO PRODUCE NO. 10:** **None.**

**REQUEST TO PRODUCE NO. 11:** Please produce all skin audits performed on Ozie Edwards during his residency at the facility, including any reference to:

(a)     The area of the body that was affected;

(b)     The determination of the skin audit and/or examination;

(c)     The regimen followed to correct the problem; and,

(d)     The final outcome of the affected area or body part.

**RESPONSE TO REQUEST TO PRODUCE NO. 11:** **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Please see the medical records of Mr. Edwards for the time period September 1, 2013 through November 12, 2013 that were previously produced. SUPPLEMENTAL RESPONSE: Plaintiffs have been provided all of Mr. Edwards' medical records for the time of his residency at the facility. ONR does not have any documents responsive to this request other than the medical records.**

7

**REQUEST TO PRODUCE NO. 12:**  Please produce all bath schedules pertaining to Ozie Edwards.

**RESPONSE TO REQUEST TO PRODUCE NO. 12:**  **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Please see the medical records of Mr. Edwards for the time period September 1, 2013 through November 12, 2013 that were previously produced. SUPPLEMENTAL RESPONSE: Plaintiffs have been provided all of Mr. Edwards' medical records for the time of his residency at the facility. ONR does not have any documents responsive to this request other than the medical records.**

**REQUEST TO PRODUCE NO. 13:**  Please produce a copy of the organizational charts and/or corporate structures of each of the Defendants.

**RESPONSE TO REQUEST TO PRODUCE NO. 13:**  **None.**

**REQUEST TO PRODUCE NO. 14:**  Please produce a copy of the articles of incorporation or organization for each Defendant, if any.

**RESPONSE TO REQUEST TO PRODUCE NO. 14:**  **See attached. SUPPLEMENTAL RESPONSE: ONR has provided the Articles of Association for the following corporations or limited liability companies: Camden Operations, LLC; JEJ Investments, LLC; Sub-Ten Holdings, LLC; MasterTen, LLC; Advanced Practice Solutions, LLC; Procare Therapy Services, LLC; Southern Administrative Services, LLC; Ponthie Holdings, LLC; and Professional Nursing Solutions, LLC, all Bates-stamped DEF-000009 to DEF-000031. ONR does not have the articles of association or articles of incorporation of any other defendant.**

**REQUEST TO PRODUCE NO. 15:**  Please produce a copy of any operating agreements between the Defendant(s) related to the facility.

8

**RESPONSE TO REQUEST TO PRODUCE NO. 15:**   Objection, overly broad and unduly burdensome, vague and ambiguous as "related to the facility", not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, ONR is not aware of any "operating agreements between the Defendants related to the facility".

**REQUEST TO PRODUCE NO. 16:**  Please produce the floor plan of the facility that reflects the layout of the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 16:**       See attached. **SUPPLEMENTAL RESPONSE: See document Bates-stamped DEF-000032.**

**REQUEST TO PRODUCE NO. 17:**  Please produce all insurance policies that were in effect during the residency, including primary, umbrella, and excess that covered employees, agents, officers and/or consultants of the facility.

**RESPONSE TO REQUEST TO PRODUCE NO. 17:**   The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. **SUPPLEMENT: See documents Bates-stamped DEF-000033 to DEF-000034.**

**REQUEST TO PRODUCE NO. 18:**    Please produce all contracts related to management services or administrative services provided to the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 18:**   The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. **SUPPLEMENT: See documents Bates-stamped 000035 to DEF-000054.**

**REQUEST TO PRODUCE NO. 19:**  Please produce all contracts related to staffing or personnel services provided to the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 19:**   The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENT: See documents Bates-stamped DEF-000055 to DEF-000081. See also documents produced in response to Request for Production No. 22.

**REQUEST TO PRODUCE NO. 20:**   Please produce all provider agreements between Defendant and the State of Arkansas, and Defendant and the federal government for the years 2012-2013.

**RESPONSE TO REQUEST TO PRODUCE NO. 20:**   **SUPPLEMENTAL RESPONSE:** The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period September 1, 2013 through November 12, 2013, see document Bates-stamped DEF-000534.

**REQUEST TO PRODUCE NO. 21:** Please produce all licenses issued by any state agency to operate the facility that were in effect during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 21:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached.  SUPPLEMENT: ONR withdraws its objections to this Request. See document Bates-stamped DEF-000082.

**REQUEST TO PRODUCE NO. 22:**  Please produce all contracts with consultants or outside vendors who provided care or services to the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 22:  Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Subject to and without waiving these objections for the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENT: See documents Bates-stamped DEF-000083 to DEF-000097 and Bates-stamped DEF-000563 to DEF-000590.**

**REQUEST TO PRODUCE NO. 23:**  Please produce all contracts between the facility's Administrator(s) and Defendants effective during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 23:   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. SUPPLEMENTAL RESPONSE: ONR does not have any such document for the time period after September 1, 2013.**

**REQUEST TO PRODUCE NO. 24:**  Please produce all contracts between the facility's Medical Director(s) and Defendants effective during the residency, as well as:

  (a) Proof of certification;

  (b) A copy of his/his license; and,

  (c) Documents reflecting disciplinary action or suspension by the facility or by the State of Arkansas.

**RESPONSE TO REQUEST TO PRODUCE NO. 24:   Objection, vague and ambiguous, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The Separate Defendants do not have the requested**

11

information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached documents. Separate Defendants do not have any documents responsive to subparagraph c. **SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000098 to DEF-000108.**

**REQUEST TO PRODUCE NO. 25:** Please produce all written job descriptions for the following job categories during the period of the residency:

    (a) Medical Director;

    (b) Administrator;

    (c) Director of Nursing;

    (d) Assistant Director of Nursing;

    (e) Licensed Practical Nurse;

    (f) Registered Nurse;

    (g) Care Plan Coordinator;

    (h) MDS Coordinator;

    (i) Certified Nursing Assistant;

    (j) Restorative Nurse Aide;

    (k) Physical Therapy; and

    (l) Occupational Therapy.

**RESPONSE TO REQUEST TO PRODUCE NO. 25:** **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013, to the extent they exist, see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000109 to DEF-000140 and DEF-000591 to DEF000600.**

**REQUEST TO PRODUCE NO. 26:**   Please produce all written guidelines, forms and/or procedures for evaluating the job performances of the Administrator, Director of Nursing, Assistant Director of Nursing, and all other nursing personnel, including registered nurses, licensed vocational nurses, nurse assistants, medication aides, and orderlies at the facility in effect during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 26:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, evaluation of job performances did not begin until 2014.

**REQUEST TO PRODUCE NO. 27:**   Please produce applications for employment for all persons employed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 27:**   Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.   Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit.  Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.

**REQUEST TO PRODUCE NO. 28:**   Please produce documentation of criminal background checks for all persons employed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 28:**   Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.   Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in

13

this lawsuit. Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.

**REQUEST TO PRODUCE NO. 29:** Please produce licensing/certification documentation for all persons employed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 29:** Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit. Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.

**REQUEST TO PRODUCE NO. 30:** Please produce all documentation reflecting disciplinary actions including reprimands and complaints by third parties, for all persons employed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 30:** Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit.

**REQUEST TO PRODUCE NO. 31:** Please produce documents addressing or memorializing all complaints registered by employees who worked at the facility during the residency.

14

**RESPONSE TO REQUEST TO PRODUCE NO. 31:**  Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit.  SUPPLEMENTAL RESPONSE: ONR does not have any documents responsive to this request that relate to Mr. Edwards.

**REQUEST TO PRODUCE NO. 32:**  Please produce performance evaluations for all persons employed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 32:**  Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit.  Subject to and without waiving these objections, evaluation of job performances did not begin until 2014.

**REQUEST TO PRODUCE NO. 33:**  Please produce exit interviews/forms for all persons who ceased working at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 33:**  Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit.  Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.

**REQUEST TO PRODUCE NO. 34:** Please produce resignation letters for all persons who resigned (voluntarily or involuntarily) from the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 34: Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit. Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.**

**REQUEST TO PRODUCE NO. 35:** Please produce termination letters for all persons who were terminated from the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 35: Objection, overly broad and unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Such request may further lead to the disclosure of private and confidential personal information on individuals who have no connection to the claims in this lawsuit. Subject to and without waiving these objections, Responding Defendants will consider a more tailored request for these documents in the event specific individuals' personnel files may lead to the discovery of admissible evidence.**

**REQUEST TO PRODUCE NO. 36:** Please produce all documentation regarding any personnel agency staff utilized during the residency, including, but not limited to:

(a) Invoices for services rendered;

(b) Schedules that reflect the use of agency staff; and,

(c) Classification of nursing personnel utilized (i.e. RNs, LPNs, CNAs)

**RESPONSE TO REQUEST TO PRODUCE NO. 36:**   **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000141 to DEF-000146. See also documents produced in response to Request to Produce Nos. 19 and 22.**

**REQUEST TO PRODUCE NO. 37:** Please produce all Policy and Procedures Manuals in effect for the facility during the residency of Ozie Edwards, including but not limited to:

(a) Management;

(b) Nursing;

(c) Wound care;

(d) Infections;

(e) Falls;

(f) Weight loss;

(g) Dehydration;

(h) Malnutrition

(i) CNA policies and training;

(j) Documentation;

(k) MDS;

(l) Care plans;

(m) Resident assessment protocols;

(n) Abuse and neglect;

17

(o) Social Services;

(p) Activities;

(q) Administrative;

(r) Personnel;

(s) Food Services;

(t) Restorative and/or Maintaining Function;

(u) Staffing; and

(v) Governing body.

**RESPONSE TO REQUEST TO PRODUCE NO. 37:**   Objection, vague and ambiguous, overbroad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving these objections, counsel will consider reasonable requests for Responding Separate Defendants' policies and procedures, subject to the execution of a confidentiality agreement or protective order.

**REQUEST TO PRODUCE NO. 38:**   Please produce all guidelines, criteria and/or procedure manuals for the Medical Director, Administrator, Director of Nursing, and Assistant Director of Nursing of the facility in effect during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 38:**   None available.

**REQUEST TO PRODUCE NO. 39:** Please produce all documentation from in-service training sessions held at the facility during the residency, including the following:

(a) Dates of the sessions;

(b) Names of those in attendance;

(c) The person(s) conducting the sessions; and,

(d) The subject(s) addressed during the sessions.

**RESPONSE TO REQUEST TO PRODUCE NO. 39:** **The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000147 to DEF-000259.**

**REQUEST TO PRODUCE NO. 40:**  Please produce all internal staffing calculation documents for the facility applicable to the residency, including all back-up documentation that was used to determine the number of staff needed each day at the facility.

**RESPONSE TO REQUEST TO PRODUCE NO. 40:** **Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The Separate Defendants do not have the requested information for the period prior to September 1, 2013. Subject to and without waiving these objections, see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000527 to DEF-000533 and DEF-000601 to DEF-000603.**

**REQUEST TO PRODUCE NO. 41:**  Please produce all daily census reports and/or records with resident acuity information for the facility applicable to the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 41:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Providing this information may result in the disclosure of other residents' information.   Subject to and without waiving these objections, see attached redacted records for the period after September 1, 2013. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000260 to DEF-000286.

**REQUEST TO PRODUCE NO. 42:**   Please produce all weekly work schedules, employee sign-in sheets, payroll records and timecards and/or timesheets showing the identity, number (quantity), or classification (e.g. LPN, R.N., Nurse Aide, etc.) of all nursing personnel, (including nurses, nurses' aides, medication aides and orderlies) who worked on each unit or wing in the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 42:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.   Separate Defendants further object on the basis that some of the information sought is confidential. The Separate Defendants do not have the requested information for the period prior to September 1, 2013.   Subject to and without waiving these objections, see attached Daily Staffing Logs for the time period September 1, 2013 through November 12, 2013. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-0002877 to DEF-000506.

**REQUEST TO PRODUCE NO. 43:** Please produce all CNA work/wing assignments for the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 43:** Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000507 to DEF-000515.

**REQUEST TO PRODUCE NO. 44:** Please produce all Assignment Schedules generated during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 44:** Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The Separate Defendants do not have the requested information for the period prior to September 1, 2013. For the time period beginning September 1, 2013 through November 12, 2013 see attached. SUPPLEMENTAL RESPONSE: See documents Bates-stamped DEF-000516 to DEF-000526. See also documents produced in Response to Request to Produce No. 43.

**REQUEST TO PRODUCE NO. 45:** Please produce all shift change reports and/or 24 hour reports for the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 45:** Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. This response will be supplemented pending further investigation.

**REQUEST TO PRODUCE NO. 46:** Please produce all reports or documents that reflect personnel turnover that occurred at the facility during the residency.

21

**RESPONSE TO REQUEST TO PRODUCE NO. 46:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The facility employed numerous individuals during Mr. Edwards's residency, many of whom have no information regarding Mr. Edwards.  Providing this information may result in the disclosure of confidential information.

**REQUEST TO PRODUCE NO. 47:**  Please produce all payroll journals and/or payroll records for the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 47:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. The facility employed numerous individuals during Mr. Edwards's residency, many of whom have no information regarding Mr. Edwards. Providing this information may result in the disclosure of confidential information.

**REQUEST TO PRODUCE NO. 48:**  Please produce all documents, reports, correspondence, e-mails or other writings generated by or on behalf of any management company or consultant to the facility concerning the care and treatment of residents during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 48:**   Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Information regarding other residents has no bearing on the claims in this lawsuit.

**REQUEST TO PRODUCE NO. 49:**  Please produce all documentation and/or reports from any consultant or management personnel hired to evaluate the adequacy of care rendered to residents at the facility any time during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 49:**  Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Information regarding other residents has no bearing on the claims in this lawsuit. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 50:**  Please produce all documentation (i.e., correspondence, e-mails, document or form) from any licensing body, including federal and state agencies, that lists deficiencies in the maintenance or operation of the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 50:**  Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 51:**  Please produce all documentation from any division or bureau of any local, state, or federal governmental entity which sets forth findings, conclusions, violations, deficiencies, penalties, actions and recommended sanctions regarding the facility at any time during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 51:**  Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 52:**  Please produce copies of all recordings, whether audio or video, of exit interviews or other meetings between representatives of the facility and surveyors or representatives of the Arkansas Office of Long Term Care, created during residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 52:**   Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 53:**   Please produce all resident council minutes for meetings that took place at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 53:**   Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, there are no resident council minutes that took place at the facility regarding Ozie Edwards during September 1, 2013 to November 12, 2013.

**REQUEST TO PRODUCE NO. 54:**   Please produce the minutes from any and all Governing Body meetings for the facility that occurred during the residency and the six months preceding the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 54:**   Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 55:**   Please produce all internal and/or mock surveys performed at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 55:**   Objection, overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

24

**REQUEST TO PRODUCE NO. 56:** Please produce all internal memoranda, e–mails, or any other documents that reflect discussions of staffing issues at the facility during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 56:** None known other than required to report to the Office of Long Term Care.

**REQUEST TO PRODUCE NO. 57:** Please produce any and all e-mails to or from the Medical Director at the facility related to the following:

(a) Census;

(b) Budgets;

(c) Turnover;

(d) Controlled Cost Items;

(e) Supplies; and

(f) Abuse and Neglect.

**RESPONSE TO REQUEST TO PRODUCE NO. 57:** Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.

**REQUEST TO PRODUCE NO. 58:** Please produce any and all e-mails to or from the Administrator at the facility related to the following:

(a) Census;

(b) Budgets;

(c) Turnover;

(d) Controlled Cost Items;

(e) Supplies; and

(f) Abuse and Neglect.

25

**<u>RESPONSE TO REQUEST TO PRODUCE NO. 58:</u> Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.**

**<u>REQUEST TO PRODUCE NO. 59:</u>** Please produce any and all e-mails to or from the Director of Nursing at the facility related to the following:

(a) Census;

(b) Budgets;

(c) Turnover;

(d) Controlled Cost Items;

(e) Supplies; and

(f) Abuse and Neglect.

**<u>RESPONSE TO REQUEST TO PRODUCE NO. 59:</u> Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.**

**<u>REQUEST TO PRODUCE NO. 60:</u>** Please produce quality indicator reports that reflect facility statistics during the residency.

**<u>RESPONSE TO REQUEST TO PRODUCE NO. 60:</u> Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Separate Defendants further object on the basis that the requested information is confidential and protected based on the Quality Assurance privilege and self-critical analysis privilege. Separate Defendants do not have the requested information for times prior to September 1, 2013. Subject to and without waiving the foregoing, Separate Defendants have been unable to locate responsive documents for the period from September 1, 2013 to November 12, 2013.**

**REQUEST TO PRODUCE NO. 61:**   Please produce all budgets, reports that track deviations or variances from the budget, and cost reports related to operation of the facility in the years 2012-2013.

**RESPONSE TO REQUEST TO PRODUCE NO. 61:**   **Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. In addition, Separate Defendants do not have the requested information for times prior to September 1, 2013.**

**REQUEST TO PRODUCE NO. 62:**   Please produce all documents that reflect or are related to maintaining the budget at the facility, including but not limited to, internal or inter-company memoranda, correspondence, handwritten notes, and e-mails during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 62:**   **Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. In addition, Separate Defendants do not have the requested information for times prior to September 1, 2013.**

**REQUEST TO PRODUCE NO. 63:**   Please produce all documentation regarding performance bonus programs that were in effect in 2012-2013 regarding the facility and any of the Defendants during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 63:**   **Objection, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, none known.**

**REQUEST TO PRODUCE NO. 64:**   Please produce a copy of the documentation regarding any "internal investigation" which you conducted regarding Ozie Edwards during the residency.

**RESPONSE TO REQUEST TO PRODUCE NO. 64:**   **None.**

Dated: 11/30/2015.

OMEGA HEALTHCARE INVESTORS, INC.
(FOR THE TIME PERIOD ON AND AFTER
SEPTEMBER 1, 2013); CAMDEN OPERATIONS,
LLC D/B/A OUACHITA NURSING AND
REHABILITATION CENTER; JEJ
INVESTMENTS, LLC; SUB-TEN HOLDINGS,
LLC; MASTERTEN, LLC; ADVANCED
PRACTICE SOLUTIONS, LLC; PROCARE
THERAPY SERVICES, LLC; SOUTHERN
ADMINISTRATIVE SERVICES, LLC; PONTHIE
HOLDINGS, LLC; PROFESSIONAL NURSING
SOLUTIONS, LLC; JOHN PONTHIE; ROSS
PONTHIE; AND MARK THOMPSON

By: _____
Amy M. Wilbourn (Ark. Bar No. 2003166)
Vicki Bronson (Ark. Bar No. 97058)
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703
(479) 582-5711 Telephone
(479) 587-1426 Facsimile
Email:  awilbourn@cwlaw.com
Email:  vbronson@cwlaw.com

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed to the following on this the 30th day of November, 2015:

Brian D. Reddick
Brent L. Moss
Robert W. Francis
Matthew D. Swindle
REDDICK MOSS, PLLC
One Information Way, Suite 105
Little Rock, AR 72202

Robert M. Sexton
RAINWATER, HOLT & SEXTON
6315 Ranch Drive
Little Rock, AR 72223

Stephanie Randall
HARDIN, JESSON & TERRY, PLC
P.O. Box 10127
Fort Smith, AR 72917-0127

_____
Vicki Bronson

# EXHIBIT "B"



ONE INFORMATION WAY
SUITE 105
LITTLE ROCK, AR 72202

**REDDICK • MOSS**
Trial Attorneys

PHONE: 501-907-7790
FAX: 501-907-7793
TOLL FREE: 877-907-7790

September 18, 2015

**VIA E-MAIL**

Ms. Amy Wilbourn
Ms. Vicki Bronson
**Conner & Winters, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

Re:   *Addie Edwards, as Personal Representative of the Estate of Ozie Edwards v. Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center, et al.*, Ouachita County Circuit Court, Case No. CV-2014-203-6

Dear Counsel,

I am writing to request that you reconsider your objections and supplement your responses to Plaintiff's first set of written discovery. The Plaintiff has requested relevant, non-privileged information regarding the operation and management of Ouachita Nursing and Rehabilitation Center, conditions at the facility, and relevant witnesses and caregivers who were supposed to be providing care to Mr. Edwards during his residency. Plaintiff's requests are targeted and relevant to the many claims enumerated in her Complaint and, as such, responsive documents should be produced.

Plaintiff's discovery requests break down into three basic categories of information that is typical in nursing home cases: (1) information regarding the witnesses and Defendants and the roles they played in providing care or operating, managing, and controlling the facility; (2) information regarding the quality of care and conditions in the facility in which Mr. Edwards resided and the notice that the Defendants had of those conditions; and (3) information regarding the level and manner of control exercised by the corporate Defendants over the individual facility, including the financial and budgetary constraints placed on the facility that influenced care and the corporate Defendants' knowledge and approval of certain practices and outcomes in the facility. Accordingly, the following requests and categories of information remain incomplete:

*Information Regarding Witnesses/Defendants and Their Roles*

Request No.: 42.
Interrogatory Nos.: 2, 3, and 7.

*Information Regarding the Quality of Care and Conditions in the Facility and the Notice
Defendants Had of Those Conditions*

<u>Request Nos.</u>: 20, 27-36, 40, 45-48, and 56-60.

*Information Regarding the Control the Defendants Exercised Over the Facility,
Financial Incentives and Constraints That Influenced Care, and the Defendants' Knowledge and
Approval of Certain Practices and Outcomes*

<u>Request Nos.</u>: 14, 18, 22, 23, and 61-63.
<u>Interrogatory No.</u>: 23.

With regard to Request No. 14, please supplement your response with the Articles of Incorporation for Omega Healthcare Investors, Inc.

With regard to Request No. 18 and 22, please provide contracts relating to all management and administrative services, as well as contracts relating to all consultants and outside vendors. Though we appreciate your production of documents responsive to these requests, it is apparent that your production is not complete. For example, you have provided job descriptions for the occupational therapist and physical therapist in response to Request No. 25; both of these descriptions contain the heading "ProCare Therapy." The Plaintiff, however, has received no contracts related to ProCare Therapy. Please provide documents wholly responsive to these requests.

With regard to Request Nos. 36, 40, and 42, we appreciate your production of employee work schedules and daily staffing logs created during Mr. Edwards' residency. These pages, however, are almost completely illegible and indecipherable. Please supplement this Request with clear documents, as well as any other responsive documentation.

With regard to Request No. 40, please supplement your response with the Minimum Staffing Reports implemented by the facility and utilized by the OLTC.

Finally, with regard to Request No. 37, I do not believe that an Agreed Protective Order has been entered in this matter. Please send a proposed Protective Order for our review so that we may continue with discovery and receive documents responsive to this request.

After reviewing the plethora of objections you have raised in response to Plaintiff's first written discovery requests, I have found no compelling argument justifying the extent of your nondisclosure. Your reliance on various objections, including the Quality Assurance privilege and 3rd party privacy and confidentiality concerns, is entirely too broad. As noted above, Plaintiff has requested only relevant, non-privileged information regarding Mr. Edwards' residency and we ask that you reconsider your objections.

Please consider this letter a good-faith attempt to resolve this issue without resorting to Court intervention, which we have no desire to do. Please produce and supplement your responses by **September 25, 2015,** so that we may move forward with this case. Feel free to contact me if you have any questions or concerns.

Sincerely,

**Reddick Moss, PLLC**

Daniel K. Yim

Page **3** of **3**

06/30/2017 02:00PM 8708372252 DUA CIR CLK PAGE 01/01
RECEIVED 06/30/2017 01:54PM 8708372252 DUA CIR CLK

# IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS

Addie Edwards, as Personal Representatives of the
Estate of Ozie Edwards, and on behalf of the Wrongful
Death Beneficiaries of Ozie Edwards

**PLAINTIFF**

**52CV-14-203**

v.                CASE NO CV-2014-203-6

Omega Healthcare Investors, Inc.; Camden Operations, LLC d/b/a
Ouachita Nursing and Rehabilitation Center; JEJ Investments, LLC;
Sub-Ten Holdings, LLC; MasterTen, LLC; Advanced Practice
Solutions, LLC; ProCare Therapy Services, LLC; Southern
Administrative Services, LLC; Ponthie Holdings, LLC; Professional
Nursing Solutions, LLC; John Ponthie; Ross Ponthie; Mark
Thompson; and Jennie Jeanette Goss Hassan, in her capacity as
Administrator of Ouachita Nursing and Rehabilitation Center

**DEFENDANTS**



## SEPARATE DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

COME NOW Separate Defendants Camden Operations, LLC d/b/a Ouachita Nursing and

Rehabilitation Center, Sub-Ten Holdings, LLC, and Jennie Jeannette Goss Hassan ("Separate

Defendants"), by and through their attorneys, Kutak Rock, LLP, and for their Response to

Plaintiff's Motion to Compel, respectfully submits the following:

## I. INTRODUCTION

Plaintiff filed her motion to compel and brief in support on or about June 5, 2017.

Plaintiff failed to confer in good faith with counsel for Separate Defendants prior to the filing of

her motion to compel. Additionally, Separate Defendants have now made a substantial

supplemental production of responses and documents to Plaintiff that addresses each of the

issues raised in her motion to compel. For the reasons set forth herein, Separate Defendants

request that the Court deny Plaintiff's motion to compel.

1

4831-8056-0203.1

## II. ARGUMENT AND AUTHORITY

1.     **Plaintiff has failed to comply with Ark. R. Civ. P. 37(a).**

Plaintiff did not comply with Ark. R. Civ. P. 37(a), and her motion to compel should be denied. Rule 37(a) requires:

> The motion shall include a statement that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

Ark. R. Civ. P. 37(a)(2). In her motion to compel, Plaintiff claims to have conferred with Separate Defendants in good faith via correspondence dated September 18, 2015. *Motion to Compel Brief*, at page 4. Plaintiff acknowledges that Separate Defendants supplemented their discovery responses shortly thereafter, on November 30, 2015. *Id.* Notwithstanding Separate Defendants' 2015 supplementation, and without any notice of further discovery deficiencies, Plaintiff filed the instant motion nearly two years later. Additionally, and as acknowledged by Plaintiff, Separate Defendants have been represented by different counsel since November 21, 2016, but no attempts have been made by Plaintiff to confer in good faith with Separate Defendants' current counsel regarding the discovery dispute at issue. *Id.* Consequently, Plaintiff has failed to comply with her obligation to confer with Separate Defendants in good faith, and her motion to compel should therefore be denied.

2.     **Separate Defendants have provided supplemental responses to Plaintiff's discovery requests.**

Separate Defendants have now produced approximately 827 pages of documents via supplemental responses to Plaintiff's requests for production. Specifically, in connection with service of Separate Defendants' Second Supplemental Objections and Responses to Plaintiff's First Set of Request for Production to Ponthie Defendants, Separate Defendants produced documents bates labeled DEF-001284 through DEF-001567, and DEF-100000 through DEF-

2

100542.    These supplemental responses fully satisfy each and every discovery request outlined

in Plaintiff's motion to compel:

- <u>Request to Produce Nos. 27-36</u>: Employee files for persons employed at the facility from September through November of 2013.

    o   Separate Defendants have provided a list of all persons employed during the relevant time period.  Separate Defendants have also made available for copying employee files for each employee listed.

- <u>Request to Produce No. 45</u>:  Any shift change reports and/or 24-hour reports created in September through November of 2013.

    o   Separate Defendants are not in possession of any responsive documents.

- <u>Request to Produce No. 46</u>:  Reports or documents that reflect employee turnover that occurred at the facility from September through November of 2013.

    o   Separate Defendants have produced a list of employees who were terminated during the residency period.

- <u>Request to Produce Nos. 56-59</u>:  Any memoranda or emails that reflect staffing issues within the facility, as well as any e-mails sent or received by managerial-level staff members regarding facility census, budgets, turnover, and resident neglect created from September through November of 2013.

    o   Separate Defendants have produced electronically stored information in the form of documents bates-numbered DEF-100000 through DEF-100542.

- <u>Request to Produce No. 60</u>:  Quality Indicator Reports reflecting facility statistics from September through November of 2013.

    o   Separate Defendants do not maintain Quality Indicated Reports, but instead, have produced CASPER reports, which contain measure descriptions for those topics relevant to the alleged injuries in Plaintiffs' Complaint.

- <u>Request to Produce No. 37</u>:  Policy and Procedure manuals in effect at the facility from September through November of 2013.

    o   Separate Defendants have produced the table of contents for the Lippencott Manual utilized by the facility.

- <u>Request to Produce No. 47</u>:  Payroll journals and records for the facility for September through November of 2013.

4831-8056-0203.1

- o   Separate Defendants have produced Time Detail Reports for the relevant time period.

- <u>Request to Produces Nos. 61-62</u>: Budgets, cost reports, and any documents reflecting or relating to the maintenance of the facility's budget for September through November of 2013.

   - o   Separate Defendants do not maintain a "budget," but have produced Guide Reports that track the facility expenditures, as well as Cost Reports for the relevant time period.

These documents represent all the responsive documents in Separate Defendants' possession, and Separate Defendants will supplement production if new, responsive documents are discovered.   Despite Plaintiff's failure to confer with Separate Defendants in good faith regarding perceived deficiencies with their discovery responses, Separate Defendants have put forth considerable effort to satisfy those issues set forth in Plaintiff's motion to compel. Accordingly, Plaintiff's motion to compel should be denied.

### III. CONCLUSION

Plaintiff has failed to comply with Ark. R. Civ. P. 37(a).  Moreover, Plaintiff is now in possession of Separate Defendants' supplemental responses to requests for production that satisfy each and every discovery concern.  If, for some reason, Plaintiff still believes she is entitled to additional information and/or documentation, then Separate Defendants stand ready to work with Plaintiff's counsel to satisfy her concerns without the need for involving the Court. For these reasons, Plaintiff's motion to compel should be denied.

WHEREFORE, Separate Defendants Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center, Sub-Ten Holdings, LLC, and Jennie Jeannette Goss Hassan respectfully pray that Plaintiff's Motion to Compel be denied, for their costs and attorneys' fees incurred herein, and for all other relief to which they may be entitled.

4

Respectfully submitted,
**KUTAK ROCK LLP**

By: _____
Mark W. Dossett, AR 95174
Jeff Fletcher, AR 2005129
Dale W. Brown, AR 2004121
Andrew Tarvin, AR  2015191
234 East Millsap Road, Suite 200
Fayetteville, AR  72703-4099
(479) 973-4200 Telephone
(479) 973-0007 Facsimile
Mark.Dossett@KutakRock.com
Jeffrey.Fletcher@KutakRock.com
Dale.Brown@KutakRock.com

**ATTORNEYS FOR DEFENDANTS**
**Camden Operations, LLC d/b/a Ouachita**
**Nursing and Rehabilitation Center; Sub-Ten**
**Holdings, LLC; and Jennie Jeanette Goss**
**Hassan, in her capacity as Administrator of**
**Ouachita Nursing and Rehabilitation Center**

4831-8056-0203.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed to the following on this the 29th day of June, 2017, to:

Mr. Brian Reddick
Mr. Brent Moss
Mr. Matthew Swindle
Mr. Robert Francis
Mr. Daniel Yim
REDDICK MOSS, PLLC
One Information Way, Suite 105
Little Rock, AR 72202

Mr. H. Gregory Campbell
Campbell Law Firm, P.A.
One Information Way, Box 101
Little Rock, AR 72202

Mr. Kirkman Dougherty
Ms. Stephanie Randall
HARDIN, JESSON, & TERRY, PLC
5000 Rogers Avenue
Suite 500
Fort Smith, AR 72917

Ms. Amy Wilbourn
Ms. Vicki Bronson
CONNER & WINTERS, LLP
4375 N. Vantage Drive
Suite 405
Fayetteville, AR 72703

Andrew Tarvin

4831-8056-0203.1

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION

Addie Edwards, as Personal Representative of the                    PLAINTIFF
Estate of Ozie Edwards, and on behalf of the
Wrongful Death Beneficiaries of Ozie Edwards

vs.                              NO. CV-2014-203-6



Omega Healthcare Investors, Inc.;
Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; JEJ Investments, LLC;
Sub-Ten Holdings, LLC; MasterTen, LLC;
Advanced Practice Solutions, LLC; ProCare Therapy
Services, LLC; Southern Administrative Services; LLC;
Ponthie Holdings, LLC; Professional Nursing Solutions,
LLC; John Ponthie; Ross Ponthie; Mark Thompson; and
Jennie Jeanette Goss Hassan, in her capacity as
Administrator of Ouachita Nursing and Rehabilitation Center          DEFENDANTS

## PLAINTIFF'S REPLY TO SEPARATE DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Comes now, the Plaintiff, by and through counsel, and for her Reply to Separate

Defendants Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center, Sub-Ten

Holdings, LLC, and Jennie Jeanette Goss Hassan's Response to Plaintiff's Motion to Compel

Discovery, states as follows:

### INTRODUCTION

The Plaintiff's motion should be granted. The Separate Defendants have produced some

documentation in response to Plaintiff's motion; however, the items produced by the Separate

Defendants are insufficient and do not provide complete responses to Plaintiff's requests. The

Plaintiff has acted in good-faith to resolve the discovery issues prior to Court intervention, and the

Plaintiff requests that Defendants be compelled to produce all requested information currently

incomplete or outstanding.

## DISCUSSION

**A.     Plaintiff has Acted in Accordance with the Arkansas Rules of Civil Procedure**

Separate Defendants claim that Plaintiff has failed to confer with counsel regarding the current discovery dispute for two reasons: (1) the Separate Defendants have provided supplemental documentation since receiving Plaintiff's correspondence; and (2) that Separate Defendants are now represented by different counsel. These arguments are made simply to distract the Court from the Defendants' failure to provide responsive documentation for over two years, and Plaintiff's motion should be granted.

Defendants' December 2015 supplementation included very few additional items – not anywhere near all of the requested documentation and information. Indeed, Defendants' chose to rely on objections made within their initial responses to Plaintiff's requests and withhold both relevant and discoverable information. The Separate Defendants were aware of the extent of their non-disclosure and, despite Plaintiff's good-faith attempt at resolving this issue without Court intervention, many discoverable items would not be produced to the Plaintiff.

In this regard, the Separate Defendants' retention of new counsel in the middle of litigation does not require Plaintiff to begin the discovery process anew. Separate Defendants cite to no rule or case in support of their assertion. The Plaintiff's initial discovery requests were made to the Separate Defendants' themselves, through their counsel at the time. The Separate Defendants were fully aware of the documents and information withheld from the Plaintiff regardless of the counsel retained to represent them. Defendants' retention of new counsel does not change the status of the discovery proceedings or require the Plaintiff to start the discovery process over. Accordingly, Plaintiff has made a good-faith attempt at resolving the pending discovery dispute and Plaintiff's motion to compel should be granted.

**B.      Separate Defendants Have Failed to Produce Requested Items and Information**

Separate Defendants have produced a host of requested information in response to Plaintiff's motion to compel discovery. However, many of the documents produced by the Separate Defendants are highly redacted and do not provide the information requested. Additionally, the electronically stored information produced by the Separate Defendants does not encompass the entirety of Plaintiff's request. Plaintiff respectfully requests that the Court compel production of the following items and information:

- <u>Request to Produce No. 46</u>:  Reports or documents that reflect employee turnover that occurred at the facility from September through November of 2013.

The Separate Defendants have produced two pages in response to this request. According to Defendants, the documents contain "a list of employees terminated during the residency period." *Sep. Defs.' Response* 3. Much of the information contained in these documents, however, is redacted, including the hire date and termination date of each employee.

Documents reflecting employee turnover, including dates each employee was employed at the facility, are relevant to Plaintiff's claims that the Defendants deliberately and systematically understaffed the nursing home. Accordingly, Plaintiff respectfully requests that the Court order the redactions to be removed and compel the Defendants to provide dates on which the named employees were hired and terminated.

- <u>Request to Produce No. 56</u>:  Internal memoranda, e-mails, or any other documents that reflect discussions of staffing issues during Mr. Edwards' residency.

- <u>Request to Produce No. 57</u>:  E-mails to or from the Medical Director at the facility during Mr. Edwards' residency regarding census, budgets, turnover, costs and supplies, and abuse and neglect.

- <u>Request to Produce No. 58</u>:  E-mails to or from the Administrator at the facility Mr. Edwards' residency regarding census, budgets, turnover, costs and supplies, and abuse and neglect.

- <u>Request to Produce No. 59</u>:  E-mails to or from the Administrator at the facility Mr. Edwards' residency regarding census, budgets, turnover, costs and supplies, and abuse and neglect.

The documents produced by the Separate Defendants do not span the scope of the information requested by the Plaintiff. Further, Separate Defendants assertion that they produced 542 pages of electronically stored data is misleading – more than half of the produced items are redundant or not responsive to Plaintiff's requests. For example, the Separate Defendants' production includes nearly 70 pages of step-by-step training guides for using the facility's financial system, 49 pages of a "new hire packet," and over 225 pages of the facility's 2013-2014 Employee Benefit Summary. In fact, the Employee Benefit Summary was produced no fewer than six times in the Separate Defendants production of electronic information.

Additionally, Defendants production of electronically stored information does not contain information exchanged about the census of the facility during the residency, as well as e-mails sent or received by the Director of Nursing or Medical Director. Accordingly, Plaintiff respectfully requests that the Court compel the Separate Defendants to produce all electronic information requested.

- <u>Request to Produce No. 60</u>:  Quality Indicator Reports reflecting facility statistics from September through November of 2013.

In response to this request, Separate Defendants produced four pages of CASPER reports indicating various resident statistics of the facility during Mr. Edwards' residency. Like the turnover reports above, however, the reports by the Separate Defendants are almost completely redacted. Plaintiff is seeking this information to show that Defendants had knowledge of the inadequate care being rendered within the nursing home and failed to correct such deficiencies. The redactions placed on the documents by the Separate Defendants unreasonably preclude Plaintiff from discoverable information. Accordingly, Plaintiff requests that the Court order the

redactions to be removed and compel the Defendants to provide unredacted CASPER reports created or received during Mr. Edwards' residency.

## CONCLUSION

For these reasons, and those contained within her initial motion, Plaintiff respectfully requests that this Court grant her Motion to Compel Discovery and compel Separate Defendants to produce the requested items and information.

Respectfully submitted,

Addie Edwards, as Personal Representative of the Estate of Ozie Edwards, deceased

By:   _____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
John C. Hout (94210)
Daniel K. Yim (2014202)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:   (501) 907-7790
Facsimile:   (501) 907-7793

*Attorneys for the Plaintiff*

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record on this the 10th day of July, 2017:

Mark Dossett
Dale Brown
**Kutak Rock, LLP**
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703

Amy Wilbourn
Vicki Bronson
**Conner & Winters, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

Attorney for the Plaintiff

# IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
## SIXTH DIVISION

Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

*FILED*

2017 JUL 28  AM 11 32

K. Pouch

OUACHITA COUNTY, ARK
GLADYS F. NETTLES
CIRCUIT CLERK

PLAINTIFFS

vs.                                   CASE NO. CV-2014-203-6

Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; Camden-Progressive Eldercare
Services, Inc. d/b/a Ouachita Nursing
and Rehabilitation Center; Progressive Eldercare Services, Inc.;
Sub-Ten Holdings, LLC; JEJ Investments, LLC;
Advanced Practice Solutions, LLC; Procare Therapy
Services, LLC; Southern Administrative Services, LLC;
Ponthie Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John Ponthie          DEFENDANTS

## FIRST CLASS ACTION COMPLAINT
## AGAINST CAMDEN OPERATIONS, LLC AND CAMDEN-PROGRESSIVE
## ELDERCARE SERVICES, INC BOTH d/b/a OUACHITA NURSING
## AND REHABILITATION CENTER AND
## THE PONTHIE DEFENDANTS

COMES NOW, the Plaintiffs, on behalf of themselves and all others similarly situated,

by and through their attorneys, Reddick Moss, PLLC, and the Campbell Law Firm, P.A., and for

their causes of action against the Defendants, state as follows:

### INTRODUCTION

1.      The class claims of this Complaint are that the Defendants' engaged in a civil

conspiracy, pursued a common plan and design and acted in concert to create a deceptive

business practice of chronically understaffing the Facility which violated the residents' statutory

and contractual rights and unjustly enriched the Defendants. Plaintiffs allege that the Defendants

engaged in a deceptive business practice of chronically understaffing the Facility, breached the

Admission Agreement and the Provider Agreement, violated the Arkansas Deceptive Trade Practices Act ("ADTPA") and violated the Arkansas Residents' Rights Act. Plaintiffs seek damages for breach of the Admission Agreement and breach of the Provider Agreement. Plaintiffs also seek damages under the ADTPA as well as damages for unjust enrichment for receiving payments they were not legally entitled to receive by engaging in the deceptive business practice of understaffing the Facility and violating state and federal staffing laws, including the Arkansas Residents' Rights Act.

2.      This complaint includes a request that a class be certified consisting of all residents and estates of residents who resided at Camden Operations, LLC and Camden-Progressive Eldercare Services, Inc. both d/b/a Camden Nursing and Rehabilitation Center ("the Facility") from September 1, 2013 through the present ("Class Period"), as well as a prayer for compensatory, economic and punitive damages, attorney's fees, interest, and costs. Excluded from the Class are residents and estates of residents that have sued in the past or currently have lawsuits pending against any of the Defendants, and all employees of the Court in which the case in pending.

## CLASS ACTION COMPLAINT

### PARTIES

2.      Addie Edwards is Ozie Edwards's wife and the Personal Representative of the Estate of Ozie Edwards pursuant to an Order of the Ouachita County Circuit Court dated October 20, 2014, a copy of which is attached hereto as **Exhibit A.**

3.      Addie Edwards brings this action on behalf of Ozie Edwards, on behalf of the wrongful death beneficiaries of Ozie Edwards, and all other residents of the Facility ("Plaintiff Class") for the period September 1, 2013, to present ("Class Period").

4.      Other than hospitalizations, Ozie Edwards was a resident of Ouachita Nursing and Rehabilitation Center, a nursing home located at 1411 Country Club Road, Camden, Ouachita County, Arkansas, from September 1, 2013, until his death on November 12, 2013.

5.      Defendant Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center was a domestic limited liability company that, beginning September 1, 2013, owned, operated, managed, and held the license for the nursing home located 1411 Country Club Road, Camden, Ouachita County, Arkansas known as Ouachita Nursing and Rehabilitation Center. See **Exhibit B**. The causes of action that form the basis of this suit arise out of the business conducted by and through the Facility during the residency of Ozie Edwards. The agent for service of process for Defendant Camden Operations, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

6.      Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center is a domestic limited liability company that, beginning on or about September 1, 2015, owned, operated, managed, and held the license for the nursing home located 1411 Country Club Road, Camden, Ouachita County, Arkansas known as Ouachita Nursing and Rehabilitation Center. **Exhibit C**.  The causes of action that form the basis of this suit arise out of the business conducted by and through the Facility during the residency of Ozie Edwards. The agent for service of process for Defendant Camden Operations, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

7.      Defendant Sub-Ten Holdings, LLC is a domestic limited liability company that owned, operated, managed and controlled the Facility at times pertinent to this lawsuit.  Sub-Ten Holdings, LLC was the sole member of Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center.  **Exhibit B and C**.  The causes of action that form the basis of this suit

3

arise out of such business conducted by Sub-Ten Holdings, LLC in the ownership, operation, control, management of, and provision of services to, the Facility during the residency of Ozie Edwards. As a result of Sub-Ten Holdings, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on JEJ Investments, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

8.      Defendant JEJ Investments, LLC is a domestic limited liability company that owned, operated, controlled, managed, and/or provided services to the Facility at times pertinent to this lawsuit. JEJ Investments, LLC also owned, controlled and managed Sub-Ten Holdings, LLC. **Exhibit B**. Defendant John Ponthie owns 100% of Defendant JEJ Investments, LLC. **Exhibit B**. The causes of action that form the basis of this suit arise out of such business conducted by JEJ Investments, LLC in the ownership, operation, control, management of, and provision of services to, the Facility during the residency of Ozie Edwards. As a result of JEJ Investments, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on JEJ Investments, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

9.      Progressive Eldercare Services, Inc. is an Arkansas corporation with its principal place of business located at 26 Warnock Springs Rd., Camden, Arkansas, and it owns 100% of Camden-Progressive Eldercare Services, Inc. Upon information and belief, John Ponthie owns 100% of Progressive Eldercare Services, Inc. Progressive Eldercare Services, Inc. exercises its

powers to supervise and control the Facility and maintains its supervision and control over the Facility through its powers to hire and fire the president and administrator of the Facility; to elect the board of directors of the Facility; dissolve the Facility; and establish and amend the admission policy of the Facility.  The administrator at the Facility is employed by Progressive Eldercare Services, Inc. The causes of action that form the basis of this suit arise out of such business conducted by Progressive Eldercare Services, Inc. in the ownership, operation, control, management of, and provision of services to, the Facility during the residency of Ozie Edwards. As a result of Progressive Eldercare Services' ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.  The agent for service of process for Progressive Eldercare Services, Inc. is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

10.     Defendant Advanced Practice Solutions, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facility at times pertinent to this lawsuit. Advanced Practice Solutions, LLC is integrally involved in staffing the Facility and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Advanced Practice Solutions, LLC in the operation, control, management by, and provision of services to the Facility during the residency of Ozie Edwards. As a result of Advanced Practice Solutions, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Advanced

Practice Solutions, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

11.     Defendant Procare Therapy Services, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facility at times pertinent to this lawsuit. Procare Therapy Services, LLC is integrally involved in staffing the Facility and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Procare Therapy Services, LLC in the operation, control, management by, and provision of services to the Facility during the residency of Ozie Edwards. As a result of Procare Therapy Services, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Procare Therapy Services, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

12.     Defendant Southern Administrative Services, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facility at times pertinent to this lawsuit. Southern Administrative Services, LLC is integrally involved in determining the staff at the Facility and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Southern Administrative Services, LLC in the operation, control, management by, and provision of services to the Facility during the residency of Ozie Edwards.  As a result of Southern Administrative Services, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's

damages. The agent for service of process on Southern Administrative Services, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

13.     Defendant Professional Nursing Solutions, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facility at times pertinent to this lawsuit. Professional Nursing Services, LLC is integrally involved in determining the staff at the Facility and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Professional Nursing Solutions, LLC in the operation, control, management by, and provision of services to the Facility during the residency of Ozie Edwards.  As a result of Professional Nursing Solutions, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Professional Nursing Solutions, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

14.     Defendant Care Plus Staffing, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facility at times pertinent to this lawsuit. Care Plus Staffing, LLC is integrally involved in determining the staff at the Facility and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Care Plus Staffing, LLC in the operation, control, management by, and provision of services to the Facility during the residency of Ozie Edwards. As a result of Care Plus Staffing, LLC's ownership, management and control of the Facility, it knew or should have known of the understaffing at the Facility and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's

damages. The agent for service of process on Care Plus Staffing, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

15.     Defendant John Ponthie is a citizen and resident of Shreveport, Louisiana. At certain times material to this action, John Ponthie was an owner and the Incorporator/Organizer of the licensee Defendant Camden Operations, LLC. John Ponthie is an owner and sole member of separate Defendant JEJ Investments, LLC and an owner/member of Sub-Ten Holdings, LLC. **Exhibit B**. Upon information and belief, John Ponthie is also the owner and/or member of Progressive Eldercare Services, Inc., Advanced Practice Solutions, LLC, Procare Therapy Services, LLC, Southern Administrative Services, LLC, Care Plus Staffing, LLC, and Professional Nursing Solutions, LLC. The causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by John Ponthie in the ownership, operation, control, and management of the Facility and the Ponthie Defendants during the residency of Ozie Edwards. The common plan and design to understaff the Facility to increase profits is the brainchild of John Ponthie and his brother, Ross Ponthie. John Ponthie is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. John Ponthie's systematic and continuous contacts with the operations of the Facility, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101(B).

16.     Defendant Ross Ponthie is a citizen and resident of Alexandria, Louisiana. At certain times material to this action, Ross Ponthie was an owner and the Incorporator/Organizer of the licensee Defendant Camden Operations, LLC, the managing member of Sub-Ten Holdings, LLC, the sole member of the Facility and an owern/member of JEJ Investments, LLC. **Exhibit B**. Upon information and belief, Ross Ponthie is an owner and/or member of separate

Defendants Advanced Practice Solutions, LLC, Procare Therapy Services, LLC, Southern Administrative Services, LLC, Care Plus Staffing, LLC, and Professional Nursing Solutions, LLC. The causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Ross Ponthie in the ownership, operation, control, and management of the Facility and the Ponthie Defendants during the residency of Ozie Edwards. The common plan and design to understaff the Facility to increase profits is the brainchild of Ross Ponthie and his brother, John Ponthie. Ross Ponthie is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. Ross Ponthie's systematic and continuous contacts with the operations of the Facility, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101(B).

17.     Whenever the term "Ponthie Defendants" or "Ponthie Nursing Home Defendants" is used throughout this portion of the Complaint, that term collectively refers to and includes the following Defendants: Camden Operations, LLC and Camden-Progressive Eldercare Services, Inc. both d/b/a Ouachita Nursing and Rehabilitation Center; JEJ Investments, LLC; Sub-Ten Holdings, LLC; Progressive Eldercare Services, Inc.; Advanced Practice Solutions, LLC; Procare Therapy Services, LLC; Southern Administrative Services, LLC; Care Plus Staffing, LLC; Professional Nursing Solutions, LLC; Ross Ponthie and John Ponthie.

18.     The Defendants collectively and by agreement controlled the operation, planning, and management of the Facility allowing them to pursue a common plan and design to understaff the Facility in violation of the residents' statutory and contractual rights. The authority exercised by the Defendants over the Facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policies and

procedures used by the Facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

19.     The Defendants operated as a joint venture/enterprise and pursued a common plan and design to advance their business interests of increasing profits at the expense of the residents, as the Ponthie Defendants were owned by and controlled by the same owners, managers, and decision makers, including Ross Ponthie and John Ponthie.

20.     At all relevant times mentioned herein, the Defendants owned, operated and/or controlled the operation of the Facility, either directly or through the agency of each other and/or other agents, subsidiaries, servants, or employees.

21.     Because the Defendants named herein and others were engaged in a joint venture/enterprise and aided and abetted each other in pursing their common plan and design in carrying out their deceptive business practice of understaffing the Facility, the acts and omissions of each participant are imputable to all other participants making them jointly and severally liable for all harm caused to the residents. The actions of the Defendants and each of its servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter and the parties to this action, and venue is proper in this Court.

## BACKGROUND AND FACTUAL ALLEGATIONS

23.     This case arises from Defendants' systemic failure to have sufficient staff at the Facility to meet the needs of its residents which caused Plaintiffs and the proposed Plaintiff Class

to suffer economic and compensatory damages and injuries described in more detail below.   The operation and activity of the Facility is to provide skilled and complex nursing, rehabilitative and personal care services to ill, infirm, medically disabled and elderly individuals.

24.    Persons admitted to the Facility have limitations caused by physical deterioration, cognitive decline, the onset or exacerbation of an acute or chronic illness or condition, or other related factors. They need nursing care, medical treatment, and rehabilitation to maintain functional status, increase functional status, or live safely from day to day. The residents are elderly, disabled, confined to their beds or unable to rise from a bed or chair independently, and unable to groom, feed, toilet, or clean themselves. Consequently, many nursing home residents rely upon nursing home staff for not only skilled nursing care and treatment, but also essential primary care (herein "Basic Care") including:

a)    Toileting assistance;

b)    Incontinence are and changing of wet and soiled clothing and linen;

c)    Assistance transferring to and from bed and wheelchair;

d)    Assistance with dressing and personal hygiene;

e)    Assistance with bathing;

f)    Assistance with turning and repositioning residents in bed or chair;

g)    Feeding assistance; and

h)    Exercises/passive range of motion ("ROM") exercises.

25.    Defendants limited the number of CNA staff and licensed staff on duty at the Facility which rendered the Facility incapable of meeting the needs of the residents. With the limited budgets for staffing, the supply of staffing hours fell far short of the hours needed to adequately care for the residents.

26.     The difference between the services that Defendants were required to provide according to state and federal law and regulations—which Defendants promised to provide in their admissions agreement—and the services that the Facility were actually capable of providing is profound.

27.     Analysis of survey results reported by the Office of Long Term Care confirm the chronic understaffing at the Facility and the Defendants inability to provide the Basic Care services for which they were paid.

28.     More specifically, understaffing led to a pattern and practice of failing to provide Basic Care Services at the Facility to the residents during the Class Period. For example, the Facility failed to provide adequate staff:

a)      To regularly provide toileting, incontinence care, and basic hygiene care, leaving dependent residents in dirty diapers, dirty clothes, and dirty beds for hours at a time;

b)      To timely respond to call lights rung by residents. Residents were left to soil themselves while waiting for assistance; others fell while attempting to walk to the bathroom unaided;

c)      To re-position bed-bound and immobile residents; many residents remained in the same position for hours at a time, which can and sometimes did result in painful, infection-prone pressure sores;

d)      To undertake ROM exercises – moving their joints and limbs, and assisting vulnerable residents who could walk or exercise. Without this assistance, residents lost mobility, rendering them even less independent.

e)      To wash and bathe dependent residents;

f)      To get dependent residents up, dressed, and out of bed; and

g)      To assist dependent residents with meals. Without help, some residents were unable to eat or drink in the time allotted, and some of them suffered weight loss and dehydration.

29.    These practices confirm that the Facility did not provide the Basic Care that was required and paid for, and highlight the very human toll of understaffing the Facility. Defendants' understaffing practices saved them millions of dollars at the expense of the residents' dignity and comfort, and jeopardized their safety. As a result of chronic understaffing, residents at the Facility were left for long periods in their own urine and waste; were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; were deprived of food and water; and suffered falls. The failure to provide adequate staff not only violated the law and the contractual terms of the Admission Agreement, it also degraded residents and stripped them of their dignity.

30.    As even more specific proof of the chronic understaffing at the Facility and the resulting harm to residents, surveys conducted by the Office of Long Term Care establish that the Defendants were on notice and aware of problems with understaffing causing harm to the residents. For example, from September 1, 2013 to present, the Facility was cited for dozens of health-related deficiencies.

31.    As even more specific proof of the chronic understaffing at the Facility and the resulting harm to residents, surveys conducted by the Office of Long Term Care establish that the Ponthie Defendants were on notice and aware of problems with understaffing at each facility causing harm to the residents. For example, from October 8, 2013 to April 19, 2016, the Facility was cited for at least twenty-seven (27) health related deficiencies. Specifically, in a October 8, 2013 survey, the Facility was cited for failing to "meet minimum direct-care staffing on the day shift." In surveys conducted on October 8, 2013 and April 19, 2016, the Facility was cited for numerous deficiencies relevant to the injuries suffered by Ozie Edwards and the Plaintiff Class including:

a.    Failure to ensure that sufficient direct care staff was available to provide personal care and to assist a resident with getting out of bed as requested; and

b.    Failure to ensure that a resident who enters the facility without pressure sores does not develop pressure sores and a resident having pressure sores

receives necessary treatment and service to promote healing and prevent infection and prevent new pressure sores from developing; and

c.    Failure to ensure physician-ordered laboratory tests were performed as ordered, to enable the physician to identy any potential abnormalities that might necessitate changes in treatment; and

d.    Failure to have a program that investigates, controls and keeps infection from spreading; and

e.    Failure to have enough nurses to care for every resident in a way that

maximizes the resident's well being.

32.    Under Arkansas law, the Department of Human Services which licenses nursing Facility to operate, "shall not issue or renew a license of a nursing Facility unless that Facility employs the direct-care staff needed to provide continuous twenty-four-hour nursing care and service to meet the needs of each resident of the nursing Facility and the staffing standards required by all state and federal regulations." Ark. C. Ann. § 20-10-1402(a).

33.    Under Arkansas law, there are specific staffing standards regarding the minimum number of direct-care staff required in nursing Facility and "the staffing standard required...shall be the minimum number of direct-care staff required by nursing Facility and shall be adjusted upward to meet the care needs of residents." Ark. C. Ann. § 20-10-1402(b)(1). Therefore, a facility which provides staffing at the minimum number of direct-care givers required is not in compliance with Arkansas law as those staffing numbers "shall be adjusted upward to meet the care needs of residents." *Id.* By definition, failure to meet the minimum staffing requirements for direct-care under Arkansas law is also a direct violation of the federal law staffing requirements.

34.    Under Arkansas law for direct-care givers,

...all nursing Facility shall maintain the following minimum direct-care staffing-to-resident ratios:

(1) One (1) direct-care staff to every six (6) residents for the day shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(2) One (1) direct-care staff to every nine (9) residents for the evening shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(3) One (1) direct-care staff to every fourteen (14) residents for the night shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every eighty (80) residents.

Ark. C. Ann. § 20-10-1403(a).

## CAUSES OF ACTION AGAINST THE DEFENDANTS

### CLASS CLAIMS

35.     Plaintiffs bring this action individually and in a representative capacity pursuant to Arkansas Rule of Civil Procedure 23 against the Defendants for engaging in a civil conspiracy, pursuing a common plan and design and acting in concert to create a deceptive business practice of chronically understaffing the Facility which violated the residents' statutory and contractual rights that unjustly enriched the Defendants. Plaintiffs allege that the Defendants engaged in a deceptive business practice of chronically understaffing the Facility, breached the Admission Agreement and the Provider Agreement, violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), and violated the Residents' Rights Act. Plaintiffs seek damages for breach of the Admission Agreement and breach of the Provider Agreement; damages under the ADTPA as well as damages for unjust enrichment for receiving payments they were not legally entitled to receive by engaging in the deceptive business practice of understaffing the Facility and violating state and federal laws, including the Residents' Rights Act on behalf of the named Plaintiffs and all residents and estates of residents who resided at the Facility from April 1, 2016 to present.  Excluded from the class are residents and estates of residents that have sued in the

past or currently have lawsuits pending against any of the Defendants, employees of the Defendants, and all employees of the Court in which this case is pending.

36.     From September 1, 2013 to present, the Defendants provided custodial care to more than 400 residents at the Facility. The class plaintiffs are so numerous that joinder of all individual claims is impracticable.

37.     Upon information and belief, at or near the time of admission to the Facility, all residents were required to sign the same or substantially the same "Admission Agreement," an example of which is attached, marked as **Exhibit D**.

38.     In the Admission Agreement, the Defendants promised "to furnish  . . . nursing and personal care, social services, linens, bedding, and other items required for the Resident's known physical condition or by law for the Resident's health, safety, grooming and well-being." Also, Defendants promised "to exercise due diligence to obtain the services of the Resident's personal physician when the Resident's condition requires such medical attention."

39.     The Defendants owed a non-delegable legal duty to the Plaintiffs and Plaintiff Class to provide adequate and appropriate staffing at the Facility at all times, and Defendants knew that state and federal law, which the Defendants expressly incorporated into their Admission Agreement, required the Defendants to meet critical staffing requirements. These requirements include but are not limited to the following:

      a)    Meeting requirements for minimum numbers of Facility staff members to be present at all times, Ark. Code Ann. § 20-10-1401 et seq.;

      b)    Meeting requirements for the minimum number of staff members to be adjusted upward to meet the care needs of residents, Ark. Code. Ann. § 20-10-1401 et seq.;

   c)   Meeting additional staffing requirements to assure that all residents receive the highest quality of life while protecting their health and welfare; Ark. Code Ann. § 20-10-1002 et seq.;

   d)   Meeting the federal minimum standards imposed by the United States Department of Health and Human Services, 42 CFR Section 405-301 et seq., including providing sufficient nursing staff and nursing personnel to ensure that each resident attains and maintains the highest practical physical, mental, and psychosocial well-being. 42 CFR Section 483.30; and

   e)   Meeting the requirements of other provisions of Arkansas and Federal law.

40.   In an effort to ensure that minimum staffing requirements are met, Arkansas law requires that Defendants honestly, accurately, regularly and truthfully:

   a)   Post daily personnel sign-in sheets reflecting levels of staffing per shift, Ark. Code Ann. § 20-10-1406; and

   b)   Submit to the Office of Long Term Care a written report of all shifts which failed to meet the minimum staffing requirements, Ark. Code Ann. § 20-10-1407.

41.   Defendants filed such reports knowing that they were inaccurate and misleading.

42.   By understaffing the Facility, Defendants saved significant money and profited at the expense of all residents. Defendants operated and managed the Facility so as to maximize profits by reducing staffing levels below that which was needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing Facility. By understaffing the Facility, the Defendants did not use money received from Medicare and/or Medicaid they were legally required to use to adequately staff the Facility to meet the needs of its residents. Thus, Defendants intentionally and/or with reckless disregard for the consequences of their actions caused staffing levels at the Facility to be set so that the personnel on duty at any given time could not reasonably meet the needs of the residents, causing injury to the residents at the Facility. The Defendants have created a broad corporate culture in which understaffing is a

standard practice and in which Defendants sought reimbursement of funds from government sources for services not provided.

43.    All residents in the Facility were injured by the Defendants' chronic and institutionalized understaffing. The lack of personnel in the Facility resulted in residents receiving a level of care (1) that was below the level of care that Defendants represented they were able to provide in their Admission Agreement, and (2) that failed to comply with state and federal minimum staffing requirements.

44.    The pervasive common question is whether the Facility was chronically understaffed so as to violate the residents' statutory and contractual rights and breached their legal duty to adequately staff the Facility. There are other questions of law and fact common to the Plaintiff Class which predominate over questions affecting only individual class members. Such common questions include, but are not limited to:

a)    Whether the standard Admission Agreement required the Facility to have sufficient staff to meet the care needs of the residents as required by state and federal laws and regulations;

b)    Whether Ark. Code Ann. §§ 20-10-1201, et. seq., imposes minimum staffing requirements requiring the Facility to have sufficient staff to meet the care needs of the residents;

c)    Whether Defendants failed to meet the minimum staffing requirements of Ark. Code Ann. §§ 20-10-1201, et seq., and the Defendants' admission agreement by failing to provide sufficient staff to meet the care needs of the residents;

d)    Whether failure to meet the minimum staffing requirements required by state and federal laws and regulations breaches the Defendants' admission agreement, Ark. Code Ann. §20-10-1201, et seq., and the Arkansas Deceptive Trade Practices Act;

e)    Whether chronically understaffing the Facility in violation of state and federal laws and regulations is a deceptive business practice and/or an unconscionable business practice and/or a violation of the Arkansas Deceptive Trade Practices Act;

f)      Whether the Defendants owed a legal duty to the residents to staff the Facility in compliance with state and federal laws and regulations;

g)      Whether failure to staff the Facility in compliance with state and federal laws and regulations is a breach of the provider agreement;

h)      Whether the admission agreement's failure to disclose the Facility's history of understaffing is an omission or concealment which constitutes a deceptive business practice and/or a violation of the Arkansas Deceptive Trade Practices Act;

i)      Whether the Defendants were unjustly enriched;

j)      Whether the Defendants engaged in a civil conspiracy to understaff the Facility in violation of state and federal laws and regulations;

k)      Whether the Defendants entered into a conscious agreement to pursue a common plan or design to violate the Residents Rights Act and/or understaff the Facility;

l)      Whether the Defendants pursued a common plan and design and acted in concert to understaff the Facility;

m)      Whether the Defendants actions degraded the residents and stripped them of their dignity;

n)      Whether the Defendants were required to use the money they received from Medicare and Medicaid to provide necessary staffing to meet the care needs of the residents;

o)      If so, whether the Defendants used the money received from Medicare and Medicaid to provide adequate staff to meet the care needs of the residents;

p)      Whether the Defendants are required to comply with all state and federal staffing laws and regulations when they received money from Medicare and Medicaid;

q)      Whether the Defendants were in compliance with all state and federal staffing laws when they received money from Medicare and Medicaid;

r)      Whether the Defendants' actions were willful, wanton or demonstrated reckless disregard of the rights of the Plaintiffs; and

s)    Whether the Ponthie Defendants and the named individuals are control persons as defined in Ark. Code Ann. 4-88-113(d)(1) and therefore jointly and severally liable for the damages suffered by the Plaintiff Class for the Defendants' deceptive trade practices.

45.    The Plaintiffs will fairly and adequately protect the interest of the Plaintiff Class and have familiarity with the allegations expressed herein and are able to assist in decision making as to the conduct of this litigation.

46.    Plaintiffs' claims are typical of the claims of the class because the class representative's claims arise from the Defendants' standard and routine practice of failing to meet the minimum staffing requirements imposed by state law and their standard admission agreement. The chronic understaffing at the Facility made it impossible for the few staff who were there to perform their tasks at a level which complied with the protections afforded by the Residents' Rights Act and at the levels promised by the Defendants' Admission Agreement.

47.    By understaffing the Facility, Defendants acted willfully, wantonly and in reckless disregard of the residents' rights intentionally placing profits over people and knowingly taking advantage of residents who were unable to protect their interests because of their physical and mental infirmities. Systemic understaffing of the Facility directly resulted in undignified living conditions for the residents, a breach of the Admission Agreement, a breach of the provider agreement, a violation of state and federal law, a breach of the Facility's duties to adequately staff the Facility, and unjust enrichment of the Defendants. The injuries sustained by the proposed class representative is typical of the class and further evidence understaffing at the Facility

48.    By understaffing the Facility, Defendants placed profits over compliance with state law the well-being of the residents. These decisions were made and implemented by the

owners, board members, management, employees and agents of Defendants acting in concert and are an illegal, deceptive and unconscionable business practice. Since at least September 1, 2013, the Defendants have, as a standard and routine business practice, violated state and federal laws and regulations in reckless disregard of the Plaintiffs' rights and knowing that the well-being of all residents would be adversely affected as detailed herein.

49.     Defendants failed to discharge their obligations of care to the named Plaintiffs and their loved ones with a conscious and reckless disregard for their individual rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by the Plaintiff class, as more fully set forth below. While a resident at the Facility, Ozie Edwards sustained multiple injuries including, but not limited to, the following: (a) Malnutrition; (b) Dehydration; (c) Multiple infections; (d) Poor hygiene; and (e) Death. Defendants knew that their Facility could not provide the minimum standard of care to the weak and vulnerable residents of the Facility.

50.     As a direct and proximate result of the Defendants' conduct, the Plaintiffs and Plaintiff Class have suffered actual damage, both in terms of physical injuries, as detailed above, and damages for loss of dignity, mental anguish and economic damage. Moreover, the Plaintiffs, or someone acting on behalf of the Plaintiffs, provided payment in exchange for services which were not provided, which were not as represented by the Defendants' Admission Agreement, and did not the standards required by the Arkansas Residents' Rights Act.

51.     The Defendants, as the owners, agents, managers and operators of a private organization having the responsibility of protecting and caring for the residents, have direct, vicarious and joint and several liability for the acts and omissions giving rise to this complaint.

52.    Plaintiffs have retained counsel qualified, experienced and able to conduct the litigation, and Plaintiffs have made arrangements to cover the costs associated with this litigation.

53.    If each class member were required to pursue individual actions, it would be economically and judicially unfeasible. A class action is appropriate and the superior method for the fair and efficient adjudication of this controversy.

## COUNT ONE: VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

54.    Plaintiffs incorporate the allegations contained in Paragraphs 1–53 as if fully set forth herein.

55.    At all times pertinent to this cause of action, Plaintiffs were "elder person[s]" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiffs have a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

56.    At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) ("ADTPA") provides that it is unlawful to:

    a)    Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

        i.    Physical infirmity; or

        ii.    A similar factor; and

    b)    Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

57.    Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for

any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

58.    The conduct of Defendants as described herein constitutes a deceptive practice in violation of the ADTPA. Defendants failed to inform Plaintiffs and the Plaintiff Class in Defendants' standard Admission Agreement that the Facility routinely failed to meet minimum staffing requirements imposed by state and federal law which increased profits. Furthermore, Defendants represented themselves as providing services commensurate with the needs of the residents and in compliance with the requirements of Arkansas state law governing long-term care and nursing Facility.

59.    By understaffing the Facility, the Defendants knowingly took advantage of the most vulnerable consumers and those who were unable to protect themselves. Defendants' unfair and deceptive trade practices asserted herein are the type that the ADTPA is specifically designed to protect against and remedy.

60.    The Defendants' trade practices also are, and have been throughout the Class Period unconscionable, because the nursing home residents constitute a vulnerable population: they are elderly, ill, infirm, and often deteriorating. These residents often face the double burden of dependency and isolation. The Defendants accept these vulnerable residents for admission, and then knowingly fail to provide sufficient levels of staffing to provide the care required without disclosing in their admission agreement the Facility' dreadful history of understaffing.

61.    In furtherance of their deceptive business practices, the Defendants: (1) billed and collected money from Medicare and Medicaid representing that they had complied with all laws, including all state and federal staffing laws and regulations, when Defendants knew they had not;

(2) did not use the funds received from Medicare and Medicaid to adequately staff the Facility as they are required to do; and (3) continued to accept residents when they could not care for the residents currently in the Facility.

62.     The Defendants also engaged in, and have engaged in throughout the Class Period, substantively unconscionable trade practices by understaffing the Facility making it impossible to provide adequate care to residents even though it charged for services it could not provide.

63.     The Defendants knew that they were not meeting, and did not have sufficient staff to meet the Basic Care needs of their residents as mandated by state and federal laws and regulations.   The Defendants were indifferent to the consequences to the elderly resident population when intentionally understaffing the Facility to increase profits.

64.     The Defendants further engaged in deceptive trade practices by infringing upon and depriving the Plaintiff Class of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201, et seq. ("Protection of Long Term Care Facility Residents' Act") including, but not limited to, the following:

      a)     The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for the Plaintiff Class, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

            i.     The right to receive adequate and appropriate custodial service, defined as care for the Plaintiff Class which entailed observation of diet and sleeping habits and maintenance of a watchfulness over their general health, safety, and well-being; and

24

b)   The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

c)   The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of the Plaintiff Class, and not directly furnished by the licensee;

d)   The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

e)   The right to Facility with premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

f)   The right to be free from mental and physical abuse, and from physical and chemical restraints;

g)   The right of the Plaintiff Class to have privacy of their bodies in treatment and in caring for their personal needs;

h)   The right to the obligation of the Facility to keep full records of the admissions and discharges of the Plaintiff Class and their medical and general health status, including:

   i.   medical records;

   ii.   personal and social history;

   iii.   individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

   iv.   making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care Facility record, or cause or procure any of these offenses to be committed; and

   v.   The right to be treated courteously, fairly, and with the fullest measure of dignity.

65.     As described in part and above, the Defendants received repeated citations related to failures of Basic Care in Office of Long Term Care surveys. Upon information and belief, they received these deficiencies despite taking steps to increase staffing and prepare staff for surveys immediately preceding the arrival of state surveyors – steps that would lead surveyors to believe levels of care provided were higher than they actually were during non-survey times.

66.     The conduct of the Defendants, as described herein, constitutes a deceptive practice in violation of the Arkansas Deceptive Trade Practices Act. The Defendants engaged in unconscionable, false, and/or deceptive acts or practices in business, commerce and/or trade including, but not limited to, marketing themselves and holding themselves out to the public as being able to meet the needs of elder residents of the Facility. The Defendants profited greatly as a result of their deceptive trade practices, but the Defendants were aware that the Facility could not meet the needs of its residents.

67.     As a direct and proximate result of the Defendants' wrongful, willful and wanton conduct, Plaintiffs have suffered actual damages, including economic damages, compensatory damages and loss of dignity damages.

## COUNT TWO: BREACH OF THE ADMISSION AGREEMENT

68.     Plaintiffs incorporate the allegations contained in paragraphs 1–67 as if fully set forth herein.

69.     Before being admitted to the Facility, residents, or those acting on their behalf, were required to enter into a resident Admission Agreement, whereby the Facility agreed to provide nursing and personal care required for the Resident's known physical condition as required by law for the Resident's health, safety, grooming and well-being in exchange for valuable consideration. *See* **Exhibit D**.

70.     The residents, or those acting on their behalf, paid for or caused to be paid for, the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Defendants promised to provide.

71.     The Defendants breached their contractual duties, both express and implied, by understaffing the Facility and creating a situation whereby it was impossible for caregivers to provide the care and services as described in the agreement and as required by law for the Resident's health, safety and well-being, causing damage to the residents, including loss of dignity.

72.     As a result, the Plaintiffs are entitled to compensatory damages, and Plaintiffs assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment.

73.     Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or should have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the Admission Agreement would naturally and probably result in injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

## COUNT THREE: BREACH OF THE PROVIDER AGREEMENT

74.     Plaintiffs incorporate the allegations contained in paragraphs 1-73 as if fully set forth herein.

75.     Upon becoming a resident of any of the Facility, the residents, many of whom were Medicare and/or Medicaid recipients, became third-party beneficiaries of the contract or

27

provider agreement between the Defendants and the state and federal governments, an example of which is attached as **Exhibit E**.

76.     For consideration duly paid by the residents, or on their behalf, the Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein. In addition, by entering into the agreement, the Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State." The Defendants further agreed that "the rights and privileges of the residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents. The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement." *See* **Exhibit E**.

77.     As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. Additionally, the provider agreement between the Defendants and the state and federal government was clearly intended to benefit and protect the residents of the Facility by requiring the Defendants to provide quality care consistent with federal and state statutes and regulations.

78.     The Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to adequately staff the Facility and provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

        a)     Failing to provide dietary services, including special diets, supplemental feedings, special delivery preparation, assistance,

and equipment required for preparing and dispensing oral feedings and special feeding devices;

b)    Failing to provide personal or custodial services and nursing care;

c)    Failing to implement policies and procedures so as to prevent infringement or deprivation of the Plaintiff Class's rights as residents of long term care Facility;

d)    Failing to comply with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

e)    Failing to staff the Facility with sufficient personnel to adequately meet the needs of the Plaintiff Class, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

79.    As a result of the Defendants' breach of the provider agreement, Plaintiffs assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment.

80.    The Defendants are also liable for all consequential damages, because the Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to the Plaintiff Class, and, under the circumstances, the Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

81.    Plaintiffs seek judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to mental anguish and loss of dignity.

82.    Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in

injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

83.     A copy of the provider agreement is attached to this Complaint as **Exhibit E**.

## COUNT FOUR:  CIVIL CONSPIRACY/ACTING IN CONCERT

84.     Plaintiff incorporates the allegations contained in Paragraphs 1–83 as if fully set forth herein.

85.     The Facility entered into various agreements, including but not limited to, consulting, administrative, property, clinical and other agreements with the Defendants, which were implemented and carried out by the Defendants in Arkansas as part of a common and integrated plan and design, whereby they conspired to understaff the Facility in violation of state and federal laws and regulations for profit at the expense of the residents.

86.     In furtherance of their civil conspiracy and common plan and design of deceptive business practices, the Defendants billed and collected money from Medicare and Medicaid representing that they complied with all laws, including state and federal staffing laws and regulations, and which funds were required to be used to staff the Facility to provide adequate care for the residents. Instead of using these funds to provide adequate care to the residents, the money was siphoned out of the Facility pursuant to agreements between and among the Defendants for the benefit of the Defendants and the owners.

87.     The Defendants concealed the history of chronic understaffing at the Facility from the residents in furtherance of their common plan, design and deceptive business practice to understaff the Facility and recruit new residents and engaged in other acts which were improper as discussed herein and conducted in furtherance of their common plan and design to understaff

the Facility in violation of state and federal laws and regulations for profit at the expense of the residents.

88.     The actions taken by the Defendants in furtherance of this common plan and design were unlawful, oppressive, deceptive and immoral in chronically understaffing the Facility in violation of the Residents' Rights Act and the Arkansas Deceptive Trade Practices Act and carried out against the elderly and infirm. These actions justify relief under the doctrine of unjust enrichment as the Defendants received money they were not legally entitled to receive and should not be permitted to retain.

89.     As a direct and proximate result of the actions taken by the Defendants taken in furtherance of this common plan and design, the Plaintiff and the Plaintiff Class were harmed. The Defendants are jointly and severally liable for all compensatory and punitive damages against the Defendants including, but not limited to, economic damages and damages for loss of dignity to be determined by the jury, plus costs and all other relief to which Plaintiffs are entitled by law.

## COUNT FIVE:  UNJUST ENRICHMENT

90.     Plaintiff incorporates the allegations contained in Paragraphs 1–89 as if fully set forth herein.

91.     In violation of the Residents' Rights Act, the Arkansas Deceptive Trade Practices Act and other state and federal laws, the Defendants conspired to understaff the Facility and received payments from residents and payments made on behalf of residents which they were not entitled to receive. The Defendants were unjustly enriched by receiving money which they were not legally entitled to receive and should not be permitted to retain.

92.     The Defendants should not be permitted to unjustly enrich themselves at the expense of the Plaintiff and Plaintiff Class. Equity and good conscience requires the Defendants to make restitution and/or be disgorged of all funds received in violation of state and federal laws and regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and on behalf of the Plaintiff Class prays for judgment against Defendants as follows:

a)      For damages, including economic, compensatory, mental anguish and loss of dignity, in an amount adequate to compensate the Plaintiffs for the injuries and damages sustained.

b)      For all actual, general and special damages caused by the alleged conduct of Defendants.

c)      For the costs of litigating this case.

d)      For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204 and 113(f).

e)      For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences the residents and to deter Defendants and others from repeating such atrocities.

f)      Enjoining the Defendants from: (i) understaffing the Facility; (ii) accepting residents at a time the Facility are understaffed; (iii) accepting payments from any source, including Medicare and Medicaid, at any time in which the Facility are not in full compliance with all state and federal laws and regulations; and (iv) billing for services not provided.

g)      For all other relief to which Plaintiffs are entitled.

Respectfully submitted,

The Plaintiffs and all others similarly situated

By: _____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
Daniel K. Yim (2014202)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:     (501) 907-7790
Facsimile:      (501) 907-7793

and

H. Gregory Campbell (92001)
**Campbell Law Firm, P.A.**
One Information Way, Suite 110
Little Rock, AR 72202
Telephone:     (501) 372-5659
Facsimile:      (501) 374-8657

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record on this the 27th day of July, 2017:

Mark W. Dossett
Jeff Fletcher
Dale W. Brown
Andrew Tarvin
**Kutak Rock, LLP**
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703

Amy Wilbourn
Vicki Bronson
**Conner & Winters, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

Attorney for the Plaintiff

OUACHITA COUNTY CLERK

12:36:06 FILED

2 OCT '14

IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
PROBATE DIVISION

IN THE MATTER OF THE ESTATE OF
OZIE LEE EDWARDS, DECEASED

NO. PR-2014-125

## ORDER APPOINTING PERSONAL REPRESENTATIVE

The Petition of Addie Edwards for appointment of a personal representative in the estate of

Ozie Lee Edwards, deceased, is presented to the Court. Upon consideration of the Petition and the

facts and evidence in support of it, the Court finds:

1.      No demand for notice of proceedings for the appointment of a personal representative

of the estate has been filed. The Petition is not opposed by any known person, and it may be heard

without notice.

2.      Ozie Lee Edwards, who resided at Ouachita Nursing & Rehab Center, 1411 Country

Club Rd., Camden, Arkansas, died at Ouachita Nursing & Rehab Center, 1411 Country Club Rd.,

Camden, Arkansas, on November 11, 2013.

3.      This Court has jurisdiction of this proceeding and venue properly lies in this County.

4.      Addie Edwards is a proper person by law to serve as personal representative of the

estate.

5.      It appears there are no unsecured claims against the decedent's estate.

6.      The estate has no assets other than a potential personal injury/wrongful death action,

and bond, therefore, is waived at this time. The Court will revisit the issue of bond should the estate

acquire assets at any time.



EXHIBIT

A

**IT IS THEREFORE ORDERED** as follows:

a.      the administration of the estate is opened;

b.      Addie Edwards is appointed personal representative of the estate; and

c.      Letters of Administration shall be issued to this personal representative without the

requirement of a bond.

DATED this _30_ day of _September_ , 2014.

CIRCUIT JUDGE

Submitted by:

J. Michael Lewis, Bar #92269
LEWIS & LEWIS
P. O. Box 20160
White Hall, AR 71612
Telephone No. (870) 247-2111
Attorneys for Estate

-2-

# Ouachita Nursing and Rehabilitation Center

Telephone:  (870) 836-4111                                    FAX Number: (870) 836-5671

## I.  FACILITY DATA                          Updated        02/04/2015

<u>MAILING ADDRESS</u>

1411 Country Club Road
Camden,  AR 71701

<u>PHYSICAL LOCATION</u>

1411 Country Club Road
Camden,  AR 71701

County:  Ouachita  #52

| | |
|---|---|
| Administrator: | Jennie Jeanette Goss Hassan |
| Administrator License Number: | 2080 |
| Total Licensed Beds: | 142 |
| Life Safety Code Years: | 1981 |
| | |
| Certification: | Title  XIX/XVIII |

### Facility Identification Numbers

| | |
|---|---|
| Federal Provider: 04-5207 | Prov/Supplier Cat: 02 |
| State License: 1020 | Fiscal Year: 12/31 |
| State Vendor: 0557 | Fiscal Intermediary: 15101 |
| MMIS Provider: 199086311 | |

### Certified Beds   142

| | |
|---|---|
| Medicaid: | 0 |
| Medicare: | 0 |
| Caid/Care: | 142 |
| Private Beds: | 0 |
| HomestyleBeds: | |

### Classification

| | |
|---|---|
| NF: | |
| SNF: | |
| NF/SNF: | X |
| ICF/MR: | |
| ICF/MR10: | |

## II. OWNERSHIP AND FINANCIAL INTEREST

<u>Type of Entity:</u>

**Limited Liability Company**

Tax ID #:  46-3337875

<u>Building Ownership</u>

Leased from:
OHI Asset (AR) Camden, LLC
c/o Omega Healthcare Investors, Inc.
200 International Circle, Suite 3500
Hunt Valley, MD  21030

### Ownership and Financial Interest

**Camden Operations, LLC**

**Doing business as      Ouachita Nursing and Rehabilitation Center**

Sub-Ten Holdings, LLC        100%*
P O Box 12187
Alexandria, LA 71315
318.443.8167

MasterTen, LLC - Prime tenant
P O Box 12187
Alexandria, LA 71315
Camden Operations, LLC  - sub-tenant

*Ross Ponthie, Member - 40%
Same address as above

* Mark Thompson, Member   -  20%
2230 S. MacArthur DR - Suite 9A
Alexandria, LA  71301

*JEJ Investments, LLC, Member - 40%
2723 Alvamar Drive, Shreveport, LA 71106
[JEJ Investments, LLC is 100% owned by John Ponthie]

**Effective 09/01/2013 - Change of Ownership**
**[Previous entity operator:  Diversicare Leasing Corp. doing business as Ouachita Nursing and Rehabilitation Center]**

EXHIBIT
B
tabbies

# Ouachita Nursing and Rehabilitation Center

Telephone: (870) 836-4111

FAX Number: (870) 836-5671

## I. FACILITY DATA

Updated   10/01/2015

**MAILING ADDRESS**

1411 Country Club Road
Camden, AR 71701

**PHYSICAL LOCATION**

1411 Country Club Road
Camden, AR 71701
County: Ouachita #52

| | |
|---|---|
| Administrator: | Jennie Jeanette Goss |
| Administrator License Number: | 2080 |
| Total Licensed Beds: | 142 |
| Life Safety Code Years: | 1981 |
| Certification: | Title XIX/XVIII |

### Facility Identification Numbers

Federal Provider: 04-5207       Prov/Supplier Cat: 02

State License: 1070       Fiscal Year: 12/31

State Vendor: 0557       Fiscal Intermediary: 00160

MMIS Provider: 209661311

| Certified Beds | 142 | Classification | |
|---|---|---|---|
| Medicaid: | 0 | NF: | |
| Medicare: | 0 | SNF: | |
| Caid/Care: | 142 | NF/SNF: | X |
| Private Beds: | 0 | ICF/MR: | |
| HomestyleBeds: | | ICF/MR10: | |

## II. OWNERSHIP AND FINANCIAL INTEREST

**Type of Entity:**

Corporation

Tax ID #: 47-4341182

**Building Ownership**

Landlord:
OHI Asset (AR) Camden, LLC
c/o Omega Healthcare Investors, Inc.
200 International Circle, Suite 3500
Hunt Valley, MD 21030

### Ownership and Financial Interest

Camden - Progressive Eldercare Services, Inc.

Doing business as       Ouachita Nursing and Rehabilitation Center

Jeanette Goss
President/Secretary/Treasurer
1411 Country Club Road
Camden, AR 71701

Helen E. Aregood, Board Member
3020 Cherokee St.
Camden, AR 71701

James S. Brooks, Board Member
1355 Hickman Rd.
Camden, AR 71701

MasterTen, LLC [Prime Tenant]
P. O. Box 12187
Alexandria, LA 71315

Progressive Eldercare Services, Inc., Member
38 Warnock Springs Road
Magnolia, AR 71753

Change of Ownership effective 09/01/2015 [Previous entity operator: Camden Operations, LLC* doing business as Ouachita Nursing and Rehabilitation Center *Sub-Ten Holdings, LLC 100%]

**EXHIBIT**

C

## NOTICE OF CHANGE IN OPERATIONAL CONTROL

1.      Effective September 1, 2015, Camden – Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center will lease and operate the 142 bed facility now operated by Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and located at:

> 1411 Country Club Road
> Camden, AR 71701

2.      Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center will relinquish control of the operations of the above-referenced long term care nursing facility as of September 1, 2015.

3.      This Notice of Operational Change may be signed in counterparts.

The foregoing terms and conditions are hereby accepted and approved by the undersigned as of the 1st day of August, 2015.


Camden Operations, LLC d/b/a                      Camden – Progressive Eldercare Services, Inc.
Ouachita Nursing and Rehabilitation Center        (New Operator)
(Former owner / Operator)

By: its member Sub-Ten Holdings, LLC              By: _Jeanette Gross_____
                                                       Jeanette Gross, President

_____
Ross Ponthie, Member


RECEIVED

AUG 2 5 2015

OLTC
LICENSURE AND CERTIFICATION

# ADMISSION AGREEMENT

## Ouachita Nursing & Rehab Center
1411 Country Club Road
Camden, AR 71701

The undersigned resident or resident's representative (collectively, the "Resident") hereby requests admission of ~~Ozie Edwards~~ [Name of Resident] to **Ouachita Nursing & Rehab Center** (the "Nursing Facility" or "Facility") for medical, nursing, and personal care. The Nursing Facility and the Resident agree to the following terms for the Resident's care.

### Section 1: FACILITY'S OBLIGATIONS

1.1   CareandServices

    a.    To admit and provide nursing care on a nondiscriminatory basis so that all residents receive benefits and services without regard to race, color, religion, or national origin.

    b.    To furnish a semi-private room, nursing and personal care, social services, linens, bedding, and other items required for the Resident's known physical condition or by law for the Resident's health, safety, grooming, and well-being.

    c.    To furnish dietary services, including physician-ordered special diets and special feeding devices.

    d.    To furnish laundry service for personal items not requiring dry cleaning, pressing, or special finishing upon request.

*Do you wish the Facility to do your personal laundry?*    Yes _____   No _✓_

    e.    To notify the Resident of any change(s) in the costs or availability of services prior to any changes.

    f.    To refund any unused portions of prepaid charges based on daily rate schedules.

    g.    To arrange for transfer of the Resident to the hospital when ordered by the Resident's physician and to notify the Resident of the transfer.

1.2   Personal Funds.  If the Resident decides to deposit personal funds with the Facility, the Resident will provide the Facility with written authorization to open a Resident Trust Account. The Facility will report account activity to the Resident at least quarterly.

*Do you wish the Facility to manage your personal funds?*    Yes _____   No _✓_

1841-9088-1386 2

**EXHIBIT**
tabbies
**D**

DEF-000537

1.3   <u>Resident's Rights</u>.  The Facility will explain Resident's Rights to the Resident on admission and periodically throughout the Resident's stay.  The Facility will give a copy of the Rights to the Resident on admission and whenever there is a change affecting the Resident's rights.

1.4   <u>Restraints</u>.  The Facility will use a restraining device on the Resident after completing an assessment of the Resident's medical condition if the assessment shows that the restraining device is necessary for the Resident's safety and well-being.  The Facility will use the least restrictive device possible to ensure safety while allowing the most freedom of movement.  No restraining devices will be used without a physician's order and the Resident's permission to use the restraint.  Restraints could, however, be used in an emergency to ensure the safety of others, and a physician's order and the Resident's consent will be obtained as soon as practicable thereafter.

1.5   <u>Medicare or Medicaid</u>.  The Facility will inform the Resident about Medicare and Medicaid eligibility requirements and will assist the Resident with processing the forms necessary to obtain coverage.

*At the time of Admission, the resident does* ✗ *, does not* ____ *qualify for Medicare benefits.*

*At the time of Admission, the Resident probably meets* ____ *, does not meet* ✗ *criteria for Medicaid benefits.*

1.6   <u>Physician and Dental Services</u>.  The Facility will assist the Resident in obtaining the services of a licensed physician of the Resident's choice whenever necessary, or the services of another licensed physician, if Resident's personal physician is not available or if the designated personal physician so orders.

During the course of the Resident's stay at this Facility, the Resident understands that his or her physician and dentist will determine health care services for the diagnosis and treatment of the Resident's medical or dental conditions.  Subject to the Resident's right to refuse treatment, the Resident authorizes the persons listed below, or whomever they may designate, to order or administer any medications or treatments determined necessary or advisable during the term of this Agreement.

The Resident also authorizes emergency treatment and transfer to Medical Facility(ies) as determined necessary by the attending physician or the Director of Nurses of this Facility in situations where family is unavailable for consent.  In the event that the physician is not available, the Medical Director of this Facility, or whomever he or she may designate, will administer treatment as necessary until the time the attending physician is able to assume responsibility.

*Name of Attending Physician:* ___DR. CRUTTP_____

*Name of Dentist:* _____

2

1841-5088-1286 2

DEF-000538

1.7 <u>Medications & Choice of Pharmacy</u>. The Facility will obtain and administer medications prescribed for the Resident by the attending physician. The Resident will be responsible for the cost of the medications when there is no Medicare or Medicaid reimbursement. The Resident may use the pharmacy of choice, so long as the pharmacy provides the medication to the Facility in a timely manner.

*Please indicate pharmacy preference:* ___Allcare___

1.8 <u>Transportation</u>. The Facility will arrange transportation to hospitals, medical clinics, and dentist's offices when the Resident's visit is medically necessary. The Resident is responsible for transportation in all other cases.

1.9 <u>Care Plan Meetings</u>. With the Resident's permission, family members may attend the Resident's care plan meetings, which are held at least quarterly. The Facility will provide written notification of the care plan meetings in advance.

*Do you (Resident/Responsible Party) wish to attend care plan meetings?* Yes _✓_ No ___

*If yes, who do you authorize to attend these meetings?* ___Ethel William___

1.10 <u>Items Furnished by Facility</u>. The Facility furnishes the following items:

a. <u>Grooming aides</u>: shampoo, hand soap, liquid bath soap, comb, brush, toothbrush, toothpaste, toothettes, lemon glycerin swabs, denture cream, razor, razor blades, breath fresheners, mouthwashes, deodorants, disposable facial tissues, and sanitary napkins.

b. <u>Items</u>: water pitcher, glass, tray, wash basin, emesis basin, denture cups, bedpan, urinal, thermometer, hospital-type gowns, hydrogen peroxide, applicators, isopropyl alcohol, cotton balls, tongue depressors; and over-the-counter drugs such as simple pain relievers, antacids, simple laxatives and suppositories, simple cough syrups, antidiarrheal medications, insulin and insulin needles, or any over-the-counter product ordered by the physician.

c. <u>Equipment</u>: trapeze bars and overhead frames, foot boards, cradles, wheelchairs, and/or geriatric chairs, foot stools, adjustable crutches canes, walkers, bedside commode chairs, hot water bottles, heating pads, and ice bags. Residents may elect to purchase any of the above listed equipment for personal use only, as long as it is marked as personal property and included on the Resident's personal property inventory sheet.

d. <u>Supplies</u>. simple first aid supplies, oxygen administration supplies, enema supplies, douche supplies, physician prescribed lotions, ointments, medications for treatment of skin breaks, medication administration equipment, equipment for simple tests and exams (sphygmomanometers, stethoscopes, clinitest, weighing scales, etc.), special

3

dressings, special pads for incontinence, suction equipment, restraints, intravenous supplies, catheter supplies, and colostomy supplies.

    e.    <u>Additional services and supplies</u>.  Additional services and supplies may be required by the Resident for which there is a reasonable charge, e.g., newspapers, cable TV, barber shop or beauty shop services, etc.

1.11    <u>Photographs</u>.  The Facility may take photographs of the Resident for identification purposes to aid in the Resident's treatment.  Photographs may also be taken during group activities or special events, such as birthdays.  With the Resident's consent, these photographs may be published in the newspaper or may be framed and placed on display in the Facility.

*May photographs be taken for use in the newspaper or display in the Facility?*

                                          Yes _✓_   No ____

1.12    <u>Name Preference</u>.  The Facility's staff would like to address the Resident by his or her requested name of preference.

*Please indicate your name preference:*  " *Moat* " " *Ham Fat* "

1.13    <u>Advance Directive or Living Will</u>.  The Facility provides Residents with information regarding the right to accept or refuse medical or surgical treatment and the right to document wishes on this topic in an Advance Directive.  Complaints concerning the Advance Directive requirements may be filed with the state survey and certification agency.

1.14    <u>Transfer or Discharge</u>.  When it becomes necessary to discharge the Resident, the Facility will provide a thirty (30) day advance written notice, except as provided within this paragraph.  Residents may be discharged only if warranted by the Resident's medical condition, for the safety or health of the Resident or other persons in the Facility, or upon non-payment of the Resident's financial obligations to the Facility.  The Nursing Facility may provide written notice of <u>immediate</u> discharge when the Resident poses a danger to the health or safety of himself or herself, or other persons in the Facility; the Resident's health improves sufficiently to allow for a more immediate discharge; an immediate discharge is required by the Resident's urgent medical needs; or the Resident has not resided in the Facility for thirty (30) days.  The Resident may appeal the Facility's discharge decision within seven (7) calendar days of the Notice by contacting the Department of Health and Human Services at (501) 682-8430.

## Section 2: RESIDENT'S OBLIGATIONS

2.1    <u>Facility Rules and Policies</u>.  To abide by the Facility's rules and policies established in connection with the operation and maintenance of the Facility.

2.2    <u>Respect for Other Residents</u>.  To respect the privacy, personal, and property rights of fellow residents in the Facility.

<p style="text-align:center">4</p>

DEF-000540

2.3   <u>Financial Support</u>.  To provide spending money, as needed, by the Resident.

2.4   <u>Personal Effects</u>.  To provide personal clothing and effects, properly and clearly labeled or marked, and in sufficient quantities to keep the Resident neat in dress and appearance.

2.5   <u>Inventory of Belongings</u>.  To provide a written and signed inventory of personal belongings on the Facility's inventory form at the time of admission and to update that inventory as items are acquired or discarded.  A copy of the inventory will be retained in the Resident's medical record.

2.6   <u>Safekeeping of Valuables</u>.  To arrange the safekeeping of the Resident's money and valuables with the Charge Nurse or the Administrator of the Facility.  The Facility is not otherwise responsible for the loss of money, valuables, or any personal effects.

2.7   <u>Neat and Orderly Room</u>.  To limit items brought into the Resident's room to no more than can be neatly stored in the wardrobe and bedside cabinet, to keep the Resident's personal effects (furniture, TV) in good condition and repair, and to remove furniture that is torn or malodorous from the Facility's premises.

2.8   <u>Responsible Party</u>.  To appoint one family member or other person to act as the Resident's responsible party in admission, care and treatment, and discharge decisions, and to designate one other contact person if the responsible party is not available.

*Do you have a Power of Attorney?*                                    Yes __✓__  No ____
     *(If yes, please provide Facility with a copy of the Document).*

*Do you have a legal guardian?*                                         Yes ____  No __✓__
     *(If yes, please provide the Facility with a copy of the Document).*

*Please name the responsible party and one alternate:*   Addie Edwards
                                                    Ethel Williams (Cousin)

2.9   <u>Private Nurse, Attendants, or Sitters</u>.  To accept financial and legal responsibility for private nurses, attendants, or sitters engaged by the responsible party for the Resident's benefit, and to understand that private nurses, attendants, and sitters will be expected to follow the Facility's rules and policies or be subject to dismissal for violations.  The Resident hereby releases the Facility, its owners, directors, agents, and employees, from all liabilities arising from the care given to the Resident by the private nurse, attendant, or sitter.

2.10   <u>Financial Responsibility</u>.  To pay the Facility's charges as provided in this Agreement.

5

1841-5088-1286 2

DEF-000541

## Section 3: FINANCIAL UNDERSTANDINGS

3.1   <u>Timely Payment</u>.   At the time of admission, payment for services provided under this Agreement through the end of the current month is due and payable.  Thereafter, payment is due in advance by the first (1st) day of each month.  Failure of the Resident to pay the Facility by the tenth (10th) day of the month in which payment is due shall be sufficient grounds for the Facility to discharge the Resident.  The discharge of the resident shall be effective thirty (30) days after the Resident receives a discharge notice from the Facility.

3.2   <u>Payment Guarantees</u>.  The Resident agrees to the following Assignment of Income to the Facility, **or** the Resident's Representative grants the Nursing Facility the following personal Guarantee as evidenced by his or her signature below:

a.   Assignment of Income:

By my signature, I hereby assign all rights to such of my income from whatever source derived, as it exists now or as it may exist in the future, to the Facility as is necessary for payment of all charges incurred relating to my care.  This obligation shall include the payment of reasonable attorneys' fees if this obligation is placed into the hands of an attorney for collection.

_____
Signature of Resident or
Resident's Legal Representative

**OR**

b.   Personal Guarantee:

By my signature, I hereby *personally* guarantee all obligations of Resident under this Agreement, including, but not limited to, the payment of all charges billed by the Facility relating to the care of the Resident.   This obligation shall include the payment of reasonable attorneys' fees if this obligation is placed into the hands of an attorney for collection.

*Addie Edwards*
Signature of Resident's Representative

3.3   <u>Daily Rate</u>.  The basic daily rate for a private room is $ 182.00  and for a semi-private room is $ 142.00 .  The daily rate includes the goods and services listed in Paragraph 1.10 of this Agreement.  This rate may be adjusted upon prior written notice to the Resident, and such notice is incorporated into and made part of this Agreement.

3.4   <u>Extra Charges</u>.  The Resident's personal needs for items or services not customarily provided by the Facility are not covered in the basic daily rate and may be furnished by the Resident or

6

DEF-000542

paid by the Resident as an extra charge. These items or services may include private duty nursing, private room, beauty or barber shop services, brand name personal care items, false teeth, eyeglasses, or prosthetic devices. (Extra charges for items and services not included in the daily rate are set forth in an Attachment to this Agreement).

3.5   Expenses Incurred for Health and Welfare of Resident. The Resident will be billed for, and will pay promptly, those charges for ancillary services, supplies, and special equipment that are not included in the daily rate, but which the Resident's attending physician or the Facility determine, in their discretion, to be necessary for the health and welfare of the Resident. To the extent possible, the Facility will notify the Resident in advance that these charges will be incurred. Where these services or supplies are provided by third parties, such as medical attention by a physician or ambulance service, the Resident may be billed by the appropriate party. The Resident always has the right to refuse treatment or services.

3.6   Third Party Payor Programs. The Facility agrees to accept payment from Medicare, Medicaid, and insurance companies in lieu of or in addition to payment from the Resident, as the case may be. The Resident remains responsible for paying all co-payments, co-insurance, deductibles, and amounts and charges for items and services incurred by or on behalf of the Resident that the third party payors do not cover.

3.7   Government Payment. In the event government payment is denied or terminated, Resident agrees to pay all unpaid charges for care previously rendered. In the event of a termination of governmental payments, the charges for services rendered commencing with the date of the termination will be at the rate herein specified. If a Resident requiring government assistance is not approved for government assistance at the time of admission, the Resident agrees to pay the Facility at the rate listed herein until the Facility receives payment from the government agency. The Facility will refund any overpayments to the Resident by the fifteenth (15th) day of the month following the month of receipt of overpayment.

3.8   Bed-Hold Charge. If the Resident should leave the Facility, a daily bed-hold charge (in accordance with the Bed-Hold policy) will be made until the personal effects of the Resident are removed from the Facility or a stop bed-hold agreement is signed.

## Section 4: Facility Policies And Procedures

4.1   Personal Property. Because the Facility is unable to exercise complete control over Residents' personal property, the Facility will not be liable for the loss, theft, or destruction of money, papers, jewels, or other personal property of the Resident or any other person except as delivered to the Charge Nurse or Administrator of the Facility for safekeeping as evidenced by a signed receipt for such property. The Facility suggests that arrangements for the safekeeping of this property be made prior to the admission of the Resident. Residents are permitted to retain and use personal possessions and appropriate clothing, as space permits. The Facility may refuse to accept any personal property with an estimated value in excess of Fifty Dollars ($50).

7

DEF-000543

4.2   <u>Prescriptions</u>.   All medications must be prescribed by the Resident's physician, and administered by a licensed nurse in the Facility, unless the Resident has been care planned for self-administration.  The Facility will order all medication required by the Resident.

4.3   <u>Smoking</u>.  ~~This is a no tobacco facility.  Smoking and the use of any tobacco product is not permitted in the Facility or upon any of the Facility property.~~  The Resident accepts full responsibility and absolves the Facility, its personnel, and the attending physician of responsibility for any fires, burns, or other accidents occurring as a result of the Resident smoking while the Resident is in bed, in the Resident's room, or in any other area in the Facility.

4.4   <u>Gratuities</u>.  To ensure equality of care to our residents and to protect against abuse or exploitation, this Facility does not permit its staff to accept gratuities or favors from our residents, or their families or friends.  If the Resident or visitor desires to show appreciation for care and services, he or she is encouraged to do something that will benefit the Facility as a whole.

4.5   <u>Telephones</u>.  Each resident room has a standard telephone jack.  The resident or responsible party, however, is responsible for the installation of services and fees, and payment of the monthly bill.  The bill for telephone services should be addressed to the person who has accepted responsibility for payment.  If the Facility initiates a room change, it will arrange for transfer of the line.

4.6   <u>Other Facility Policies</u>.  The Admission Packet contains other important policies that guide your residency in this facility.  By signing this agreement, you are agreeing to be bound by these policies, which are incorporated by reference herein.

**Section 5: MISCELLANEOUS PROVISIONS**

5.1   <u>Termination</u>.  Either party may terminate this Agreement by giving written notice to the other party at the address(es) described below.  This Agreement shall remain in effect until the Resident is discharged.

5.2   <u>Notice</u>.  All notices, bills, and communications required, desired or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given on the date received, if delivered personally, or on the third day after mailing, if sent by registered or certified mail, return receipt requested, postage prepaid, and addressed to the Facility at the address listed at the top of page one of this Agreement and to the Resident at the address set forth below, or to such other person at such location as either party hereto may subsequently designate in similar manner.

_Addie Edwards_
Name of Resident (Responsible Party for Notice)
_725 Pearl St Camden, Ave 71701_
Address of Resident:   City          State          ZIP

8

DEF-000544

5.3   Construction of Agreement.  This Agreement shall be interpreted, construed, and governed by and under the laws of the State of Arkansas, and the resident unconditionally submits to the jurisdiction of the courts located in the State of Arkansas in all matters relating to or arising from this Agreement.

5.4   Entire Understanding.  This Agreement, including its Attachments and Policies, Procedures, and Statements of Understanding of Facility, and any agreement to arbitrate disputes, received and acknowledged by the resident at any time on or after the date of this Agreement, all of which are incorporated by reference herein, contains the entire agreement between the parties and supersedes all prior agreements, arrangements, or oral representations as to all matters relating to the Resident and his or her care at the Facility.  *This Agreement and all accompanying documents and agreements shall remain in full force and effect for all Resident's future stays in the facility, regardless of transfers to hospital, home, or other institutions, until superceded by any new Agreement.*

5.5   Modifications.  No modification of the terms and conditions of this Agreement shall be valid unless in writing and signed by both parties to this Agreement.

It is so agreed this 30 day of August , 20 13.

**RESIDENT:**

_____
Signature of Resident

Resident's Representative

**WITNESS:**

Signature of Witness

**Ouachita Nursing & Rehab Center:**

Signature of Facility's Representative

9

1841-5098-1286 2

DEF-000545

**CONTRACT**
**TO PARTICIPATE IN THE ARKANSAS NURSING HOME PROGRAM**
**ADMINISTERED BY THE DIVISION OF ECONOMIC AND MEDICAL SERVICES**
**OFFICE OF LONG TERM CARE**
**UNDER TITLE XIX (MEDICAID)**

This ___Facility___ agreement made and entered into this the _____ day of _____
<span style="font-size:smaller">(to be completed by DMS)</span>         <span style="font-size:smaller">(to be completed by DMS)</span>

by and between _____ hereinafter called Provider, and
<span style="font-size:smaller">(to be completed by DMS)</span>

the Department of Economic and Medical Services, Office of Long Term Care hereinafter called State.

WITNESSTH:

I. Provider agrees that its responsibilities hereunder shall be as follows:

 A. To keep all records, as set forth in applicable Federal and/or State regulations, and Long Term Care Provider Manuals, and any duly promulgated changes in or additions thereto, and to fully disclose the extent of all services provided to individuals receiving assistance under the State Plan.

 B. To make available for inspection all records herein specified to satisfy audit requirements under the program; to furnish all such records for audit conduction periodically by State or its designated agents and/or representatives of the Department of Human Services, and the Department of Health and Human Services of the United States of America or its designees or representatives. For all Medicaid recipients these records shall include, but not necessarily be limited to those records as defined in Section A above.

 C. Provider shall at all times provide State access to the facility, residents, and resident records. Provider expressly agrees not to hinder, impede, or otherwise restrict State from carrying out its official duties, and expressly agrees to reasonably assist State in carrying out its official duties. In this context, "official duties" include inspections, surveys and investigations and reviews as prescribed by State and Federal laws, rules and regulations, and shall allow "observation and recordings made and conducted relative to long term care facilities, long term care residents, and records of or possessed by facility and/or residents. 'Observation' includes the right and ability to move in or around the interior and/or exterior, including resident rooms of a long term care facility, unaccompanied (except upon request if the inspector[s]) at any time. 'Recordings' include photostatic copies, notes, writings, drawings, and photographs (whether still or motion, in accordance with Section 2 of Ark. Act 33 of 1989), and sound recordings."

 D. To accept only residents who have met the requirements of the duly promulgated Pre-Admission Screening Program and for whom the facility can provide all required and necessary services. Provider specifically herein agrees to insure availability of all medications prescribed by the resident's physician.

 E. To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973. Provider agrees herewith that it has been furnished with a copy of the LTC Provider Manual, and shall be bound by all provisions thereof, including any and all changes and/or additions thereto.

 F. To comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State.

 G. To meet all requirements of applicable Life Safety Code and all State Fire and Safety Codes.

 H. Provider will not transfer or discharge any recipient without a minimum of 30 days advance notice to the individual or a responsible person. Provider may transfer or discharge a Medicaid recipient under the following circumstances:

  1. The transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;

  2. The transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility;

  3. The safety of the individuals in the facility is endangered;

  4. The health of individuals in the facility would otherwise be endangered;

  5. The resident has failed, after reasonable and appropriate notice, to pay (or to have paid under Title XIX or Title XVIII on the resident's behalf an allowable charge imposed by the facility for an item or service requested by the resident and for which a charge may be imposed consistent with federal and state laws and regulations; or

  6. The facility ceases to operate.

  The notice of transfer or discharge must be made at least 30 days in advance of the resident's transfer or discharge except:

  a. In a case described in item H(3) or H(4) above;

  b. In a case described in item H(2) above where the resident's health improves sufficiently to allow for a more immediate transfer or discharge;

  c. In a case described in item H(1) above where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs; or

  d. In a case where the resident has not resided in the facility for 30 days.

 I. Provider shall give 30 day notice to the State prior to any change of ownership including a change which contemplates or provides for the assumptions of existing liabilities by the new owner.



EXHIBIT

E

J. To bill State (Medicaid) only after the service has been provided.

K. To accept Medicaid reimbursement rates determined by the State as full payment for all Medicaid eligible care and services required by the classification of each resident and rendered by the provider, and make no additional charges to the resident, or to accept any additional payment from the resident, relatives, or responsible parties for that service which is covered under the Medicaid Program.

L. To promptly refund to the resident or responsible party any unused portion of recipient applied income collected in advance and not owed due to death, discharge or transfer. Recipient income is to be prorated on a per diem basis according to the number of days in the month.

M. To promptly refund to a resident or other responsible person any deposit or entrance fee collected while awaiting approval for Medicaid eligibility to the extent those days are covered by Medicaid payments.

N. To provide all services and specific items as defined in the Medical Assistance Reasonable Cost Related Reimbursement Manual for Long Term Care Facilities (MARCRRM-LTCF), or any additions thereto or subsequent manuals. Receipt of Medicaid per diem reimbursement rates is considered payment in full for services and items included in the MARCRRM.

O. To accept assignment and file a claim in a timely and proper manner with all third party sources, and if said claim is collected from a third party, to reimburse Medicaid up to the amount Medicaid paid for said services.

P. The $30 Personal Needs Allowance which is provided for by the Medicaid Program for personal expenditures of a resident cannot and shall not be used for any other purpose except as authorized in writing by the resident or responsible party.

Q. To comply with all State and/or Federal regulations pertaining to resident personal funds and to provide the State access to patient account records or any other financial records maintained by the provider for benefit of the patient. The new owner must specify in writing which owner will be responsible for recipient Medicaid claims and facility account receivable balances resulting from dates of service prior to the ownership change.

Further Provider agrees that it will not prevent or interfere with the individual or responsible person, or the Office of Long Term Care in the transfer or discharging of a patient when same is appropriate.

II. The State agrees that it shall have the following responsibilities hereunder:

A. To make timely payments to Provider for the appropriate Medicaid services provided the eligible Medicaid recipients in accordance with the terms of the LTC Provider Manual or other appropriate regulations and procedures previously mentioned herein.

B. To notify Provider of any changes of rules or regulations to be followed hereunder as promptly as is practicable at all times.

C. To safeguard the confidentiality of any Medicaid records maintained for the State, its agents, and/or fiscal intermediary as specified in Federal and State regulations.

III. Mutual Covenants, Duties, Responsibilities, and Undertakings

A. State and Provider mutually agree to comply with all Federal and State laws, rules and regulations.

B. State and Provider agree that the rights and privileges of the residents are of primary concern to the parties and the parties expressly agree and covenant to protect and preserve those rights and privileges and that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement and may result in immediate termination of this agreement without recourse.

C. State and Provider agree and covenant that this written instrument constitutes the entirety of the agreement between both parties and no statement or representations not reduced to writing or incorporated herein by express reference shall be binding upon the parties and such statements or representations not incorporated herein by express reference or not contained herein shall constitute no part of this agreement.

IV. This contract may be terminated in accordance with the following provisions:

A. This contract may be terminated by either party by giving 30 days written notice to the other party.

B. This contract may be terminated immediately by State for the following reasons:

1. Federal sanction of Provider.

2. Change of ownership.

3. Violation of any provision herein contained.

4. In accordance with termination procedures as set out in appropriate Federal and/or State regulations or rules by which Provider is bound hereunder.

|  | **Provider** | **Division of Economic and Medical Services**<br>**Office of Long Term Care** |
|---|---|---|

By: _____
(Signature)

Name: _____
(Type Name)

Title: _____Administrator_____

Date: _____

By: _____
(Signature)

Name: _____Carol Shockley_____
(Type Name)

Title: _____Director, LTC_____

Date: _____

EMS-711 (R. 9/89)

### IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION
### <u>SUMMONS</u>

### Case No: CV-2014-203-6

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; Camden-Progressive
Eldercare Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Progressive Eldercare Services,
Inc.; Sub-Ten Holdings, LLC; JEJ Investments, LLC;
Advanced Practice Solutions, LLC; Procare Therapy
Services, LLC; Southern Administrative Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; Care Plus Staffing, LLC; Ross
Ponthie; and John Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**
Camden-Progressive Eldercare Services, Inc. d/b/a
Ouachita Nursing and Rehabilitation Center
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):     Camden-Progressive Eldercare Services, Inc.
d/b/a Ouachita Nursing and Rehabilitation
Center

### N O T I C E

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Complaint**.

The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you
for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense.
Your pleading or answer must meet the following requirements:

A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.     It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court on this date**     _July 28, 2017_

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701     By: _____ Deputy Clerk

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION
### SUMMONS

### Case No: CV-2014-203-6

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing and
Rehabilitation Center; Camden-Progressive Eldercare
Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Camden II Operations, LLC
d/b/a Pine Hills Health and Rehabilitation Center;
Progressive Eldercare Services, Inc.; Sub-Ten
Holdings, LLC; JEJ Investments, LLC; Advanced
Practice Solutions, LLC; Procare Therapy Services,
LLC; Southern Administrative Services, LLC; Ponthie
Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John
Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**
Camden-Progressive Eldercare Services, Inc. d/b/a
Ouachita Nursing and Rehabilitation Center
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):      Camden-Progressive Eldercare Services, Inc.
d/b/a Ouachita Nursing and Rehabilitation
Center

### N O T I C E

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Amended Class Action Complaint.**

The attached **Amended Class Action Complaint** will be considered admitted by you and a judgment by default
may be entered against you for the relief asked for in the **Amended Class Action Complaint** unless you file a
pleading and thereafter appear and present your defense. Your pleading or answer must meet the following
requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed. Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____July 28, 2017_____

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701

By: _____ Deputy Clerk

**IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS**
**SIXTH DIVISION**
**SUMMONS**

**Case No: CV-2014-203-6**

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate  of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing and
Rehabilitation Center; Camden-Progressive Eldercare
Services,   Inc.   d/b/a   Ouachita   Nursing   and
Rehabilitation Center; Camden II Operations, LLC
d/b/a Pine Hills Health and Rehabilitation Center;
Progressive   Eldercare   Services,   Inc.;   Sub-Ten
Holdings, LLC; JEJ Investments, LLC; Advanced
Practice Solutions, LLC; Procare Therapy Services,
LLC; Southern Administrative Services, LLC; Ponthie
Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John
Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:  (501) 907-7790
Fax:  (501) 907-7793

**TO DEFENDANT:**
Camden II Operations, LLC d/b/a
Pine Hills Health and Rehabilitation Center
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):        Camden II Operations, LLC d/b/a
Pine Hills Health and Rehabilitation Center

**N O T I C E**

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Amended Class Action Complaint**.

The attached **Amended Class Action Complaint** will be considered admitted by you and a judgment by default
may be entered against you for the relief asked for in the **Amended Class Action Complaint** unless you file a
pleading and thereafter appear and present your defense.  Your pleading or answer must meet the following
requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed.  Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____July 28, 2017_____

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701

By: _____ Deputy Clerk

2

**IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS**
**SIXTH DIVISION**
**SUMMONS**

**Case No: CV-2014-203-6**

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing and
Rehabilitation Center; Camden-Progressive Eldercare
Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Camden II Operations, LLC
d/b/a Pine Hills Health and Rehabilitation Center;
Progressive Eldercare Services, Inc.; Sub-Ten
Holdings, LLC; JEJ Investments, LLC; Advanced
Practice Solutions, LLC; Procare Therapy Services,
LLC; Southern Administrative Services, LLC; Ponthie
Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John
Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**
Care Plus Staffing, LLC
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):      Care Plus Staffing, LLC

**N O T I C E**

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Amended Class Action Complaint**.

The attached **Amended Class Action Complaint** will be considered admitted by you and a judgment by default
may be entered against you for the relief asked for in the **Amended Class Action Complaint** unless you file a
pleading and thereafter appear and present your defense.   Your pleading or answer must meet the following
requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed.  Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:**   _July 28, 2017_

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701

By: _____ Deputy Clerk



## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
## SIXTH DIVISION
## SUMMONS

### Case No: CV-2014-203-6

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing and
Rehabilitation Center; Camden-Progressive Eldercare
Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Camden II Operations, LLC
d/b/a Pine Hills Health and Rehabilitation Center;
Progressive Eldercare Services, Inc.; Sub-Ten
Holdings, LLC; JEJ Investments, LLC; Advanced
Practice Solutions, LLC; Procare Therapy Services,
LLC; Southern Administrative Services, LLC; Ponthie
Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John
Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**
Progressive Eldercare Services, Inc.
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):     Progressive Eldercare Services, Inc.

### N O T I C E

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Amended Class Action Complaint**.

The attached **Amended Class Action Complaint** will be considered admitted by you and a judgment by default
may be entered against you for the relief asked for in the **Amended Class Action Complaint** unless you file a
pleading and thereafter appear and present your defense.   Your pleading or answer must meet the following
requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed.  Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:** _____ July 28, 2017 _____

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701

By: _____ Deputy Clerk

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
## SIXTH DIVISION
## <u>SUMMONS</u>

### Case No: CV-2014-203-6

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate  of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing
and   Rehabilitation   Center;   Camden-Progressive
Eldercare Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Progressive Eldercare Services,
Inc.; Sub-Ten Holdings, LLC; JEJ Investments, LLC;
Advanced Practice Solutions, LLC; Procare Therapy
Services,   LLC;   Southern   Administrative   Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; Care Plus Staffing, LLC; Ross
Ponthie; and John Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:  (501) 907-7790
Fax:  (501) 907-7793

**TO DEFENDANT:**
Care Plus Staffing, LLC
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):        Care Plus Staffing, LLC

### N O T I C E

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Complaint**.

The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you
for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense.
Your pleading or answer must meet the following requirements:

A.      It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.      It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed.  Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this date:**   *July 28, 2017*

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701

By: _____ Deputy Clerk

### IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION
### SUMMONS

### Case No: CV-2014-203-6

**PLAINTIFF(S):**
Addie Edwards, as Personal Representative of the
Estate of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated

**DEFENDANT(S):**
Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; Camden-Progressive
Eldercare Services, Inc. d/b/a Ouachita Nursing and
Rehabilitation Center; Progressive Eldercare Services,
Inc.; Sub-Ten Holdings, LLC; JEJ Investments, LLC;
Advanced Practice Solutions, LLC; Procare Therapy
Services, LLC; Southern Administrative Services,
LLC; Ponthie Holdings, LLC; Professional Nursing
Solutions, LLC; Care Plus Staffing, LLC; Ross
Ponthie; and John Ponthie

**PLAINTIFF'S ATTORNEYS:**
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Daniel K. Yim
**REDDICK MOSS, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone: (501) 907-7790
Fax: (501) 907-7793

**TO DEFENDANT:**
Progressive Eldercare Services, Inc.
c/o Amy M. Wilbourn
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

THE STATE OF ARKANSAS TO DEFENDANT(S):     Progressive Eldercare Services, Inc.

### N O T I C E

You are hereby notified that a lawsuit has been filed against you; the relief asked for is stated in the attached
**Complaint**.

The attached **Complaint** will be considered admitted by you and a judgment by default may be entered against you
for the relief asked for in the **Complaint** unless you file a pleading and thereafter appear and present your defense.
Your pleading or answer must meet the following requirements:

A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure
B.     It must be filed in the court clerk's office within **thirty ( 30 ) days** from the day you were served with this
Summons.

If you desire to be represented by an attorney you should immediately contact your attorney so that an Answer can
be filed for you within the time allowed.  Responses should be served on counsel for Plaintiffs.

**WITNESS my hand and seal of the court this** _____ *July 28, 2017* _____

Gladys Nettles
Ouachita County Circuit Clerk
145 Jefferson Street
Camden, AR 71701                                    By: _____ Deputy Clerk

## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
### SIXTH DIVISION

Addie Edwards, as Personal Representative of the
Estate  of Ozie Edwards, and on behalf of the
wrongful death beneficiaries of Ozie Edwards
and All Others Similarly Situated                                         PLAINTIFFS


vs.                              CASE NO. CV-2014-203-6


Camden Operations, LLC d/b/a Ouachita Nursing
and Rehabilitation Center; Camden-Progressive Eldercare
Services, Inc. d/b/a Ouachita Nursing
and Rehabilitation Center; Camden II Operations, LLC
d/b/a Pine Hills Health and Rehabilitation Center; Progressive
Eldercare Services, Inc.; Sub-Ten Holdings, LLC;
JEJ Investments, LLC; Advanced Practice Solutions, LLC;
Procare Therapy Services, LLC; Southern Administrative Services, LLC;
Ponthie Holdings, LLC; Professional Nursing Solutions, LLC;
Care Plus Staffing, LLC; Ross Ponthie; and John Ponthie          DEFENDANTS



### FIRST AMENDED CLASS ACTION COMPLAINT
### AGAINST CAMDEN OPERATIONS, LLC AND CAMDEN-PROGRESSIVE
### ELDERCARE SERVICES, INC BOTH d/b/a OUACHITA NURSING
### AND REHABILITATION CENTER, CAMDEN II OPERATIONS, LLC d/b/a
### PINE HILLS HEALTH AND REHABILITATION CENTER AND
### THE PONTHIE DEFENDANTS

COMES NOW, the Plaintiffs, on behalf of themselves and all others similarly situated,

by and through their attorneys, Reddick Moss, PLLC, and the Campbell Law Firm, P.A., and for

their causes of action against the Defendants, state as follows:

### INTRODUCTION

1.      The class claims of this Complaint are that the Defendants' engaged in a civil

conspiracy, pursued a common plan and design and acted in concert to create a deceptive

business practice of chronically understaffing the Facilities which violated the residents'

statutory and contractual rights and unjustly enriched the Defendants. Plaintiffs allege that the

Defendants engaged in a deceptive business practice of chronically understaffing the Facilities, breached the Admission Agreement and the Provider Agreement, violated the Arkansas Deceptive Trade Practices Act ("ADTPA") and violated the Arkansas Residents' Rights Act. Plaintiffs seek damages for breach of the Admission Agreement and breach of the Provider Agreement. Plaintiffs also seek damages under the ADTPA as well as damages for unjust enrichment for receiving payments they were not legally entitled to receive by engaging in the deceptive business practice of understaffing the Facilities and violating state and federal staffing laws, including the Arkansas Residents' Rights Act.

2.      This complaint includes a request that a class be certified consisting of all residents and estates of residents who resided at Camden Operations, LLC and Camden-Progressive Eldercare Services, Inc. both d/b/a Camden Nursing and Rehabilitation Center and Camden II Operations, LLC d/b/a Pine Hills Health and Rehabilitation Center ("the Facilities") from September 1, 2013 through the present ("Class Period"), as well as a prayer for compensatory, economic and punitive damages, attorney's fees, interest, and costs. Excluded from the Class are residents and estates of residents that have sued in the past or currently have lawsuits pending against any of the Defendants, and all employees of the Court in which the case in pending.

### CLASS ACTION COMPLAINT

### PARTIES

2.      Addie Edwards is Ozie Edwards's wife and the Personal Representative of the Estate of Ozie Edwards pursuant to an Order of the Ouachita County Circuit Court dated October 20, 2014, a copy of which is attached hereto as **Exhibit A.**

3.     Addie Edwards brings this action on behalf of Ozie Edwards, on behalf of the wrongful death beneficiaries of Ozie Edwards, and all other residents of the Facilities ("Plaintiff Class") for the period September 1, 2013, to present ("Class Period").

4.     Other than hospitalizations, Ozie Edwards was a resident of Ouachita Nursing and Rehabilitation Center, a nursing home located at 1411 Country Club Road, Camden, Ouachita County, Arkansas, from September 1, 2013, until his death on November 12, 2013.

5.     Defendant Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center was a domestic limited liability company that, beginning September 1, 2013, owned, operated, managed, and held the license for the nursing home located 1411 Country Club Road, Camden, Ouachita County, Arkansas known as Ouachita Nursing and Rehabilitation Center. See **Exhibit B**. The causes of action that form the basis of this suit arise out of the business conducted by and through the Facilities during the residency of Ozie Edwards. The agent for service of process for Defendant Camden Operations, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

6.     Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center is a domestic limited liability company that, beginning on or about September 1, 2015, owned, operated, managed, and held the license for the nursing home located 1411 Country Club Road, Camden, Ouachita County, Arkansas known as Ouachita Nursing and Rehabilitation Center. **Exhibit C**. The causes of action that form the basis of this suit arise out of the business conducted by and through the Facilities during the residency of Ozie Edwards. The agent for service of process for Defendant Camden Operations, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

3

7.      Defendant Camden II Operations, LLC d/b/a Pine Hills Health and Rehabilitation Center is a domestic limited liability company that owned, operated, managed, and held the license for the nursing home located at 900 Magnolia Road, Camden, Ouachita County, Arkansas known as Pine Hills Health and Rehabilitation Center. The causes of action that form the basis of this suit arise out of the business conducted by and through the Facilities during the residency of Ozie Edwards. The agent for service of process for Defendant Camden II Operations, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

8.      Defendant Sub-Ten Holdings, LLC is a domestic limited liability company that owned, operated, managed and controlled the Facilities at times pertinent to this lawsuit.  Sub-Ten Holdings, LLC was the sole member of Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center.  **Exhibit B and C**.  The causes of action that form the basis of this suit arise out of such business conducted by Sub-Ten Holdings, LLC in the ownership, operation, control, management of, and provision of services to, the Facilities during the residency of Ozie Edwards.  As a result of Sub-Ten Holdings, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.  The agent for service of process on JEJ Investments, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

9.      Defendant JEJ Investments, LLC is a domestic limited liability company that owned, operated, controlled, managed, and/or provided services to the Facilities at times pertinent to this lawsuit. JEJ Investments, LLC also owned, controlled and managed Sub-Ten Holdings, LLC.  **Exhibit B**.  Defendant John Ponthie owns 100% of Defendant JEJ Investments,

4

LLC. **Exhibit B**. The causes of action that form the basis of this suit arise out of such business conducted by JEJ Investments, LLC in the ownership, operation, control, management of, and provision of services to, the Facilities during the residency of Ozie Edwards. As a result of JEJ Investments, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.   The agent for service of process on JEJ Investments, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

10.     Progressive Eldercare Services, Inc. is an Arkansas corporation with its principal place of business located at 26 Warnock Springs Rd., Camden, Arkansas, and it owns 100% of Camden-Progressive Eldercare Services, Inc. Upon information and belief, John Ponthie owns 100% of Progressive Eldercare Services, Inc.  Progressive Eldercare Services, Inc. exercises its powers to supervise and control the Facilities and maintains its supervision and control over the Facilities through its powers to hire and fire the president and administrator of the Facilities; to elect the board of directors of the Facilities; dissolve the Facilities; and establish and amend the admission policy of the Facilities.  The administrator at the Facilities is employed by Progressive Eldercare Services, Inc. The causes of action that form the basis of this suit arise out of such business conducted by Progressive Eldercare Services, Inc. in the ownership, operation, control, management of, and provision of services to, the Facilities during the residency of Ozie Edwards. As a result of Progressive Eldercare Services' ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.  The agent for service of process for Progressive Eldercare

Services, Inc. is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

11.    Defendant Advanced Practice Solutions, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facilities at times pertinent to this lawsuit. Advanced Practice Solutions, LLC is integrally involved in staffing the Facilities and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Advanced Practice Solutions, LLC in the operation, control, management by, and provision of services to the Facilities during the residency of Ozie Edwards. As a result of Advanced Practice Solutions, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Advanced Practice Solutions, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

12.    Defendant Procare Therapy Services, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facilities at times pertinent to this lawsuit. Procare Therapy Services, LLC is integrally involved in staffing the Facilities and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Procare Therapy Services, LLC in the operation, control, management by, and provision of services to the Facilities during the residency of Ozie Edwards. As a result of Procare Therapy Services, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally

6

liable for the Plaintiff's damages. The agent for service of process on Procare Therapy Services, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

13.    Defendant Southern Administrative Services, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facilities at times pertinent to this lawsuit. Southern Administrative Services, LLC is integrally involved in determining the staff at the Facilities and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Southern Administrative Services, LLC in the operation, control, management by, and provision of services to the Facilities during the residency of Ozie Edwards.  As a result of Southern Administrative Services, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Southern Administrative Services, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

14.    Defendant Professional Nursing Solutions, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facilities at times pertinent to this lawsuit. Professional Nursing Services, LLC is integrally involved in determining the staff at the Facilities and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Professional Nursing Solutions, LLC in the operation, control, management by, and provision of services to the Facilities during the residency of Ozie Edwards.  As a result of Professional Nursing Solutions, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-

113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Professional Nursing Solutions, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

15.    Defendant Care Plus Staffing, LLC is a domestic limited liability company that operated, controlled, managed, and provided services to the Facilities at times pertinent to this lawsuit. Care Plus Staffing, LLC is integrally involved in determining the staff at the Facilities and the causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Care Plus Staffing, LLC in the operation, control, management by, and provision of services to the Facilities during the residency of Ozie Edwards. As a result of Care Plus Staffing, LLC's ownership, management and control of the Facilities, it knew or should have known of the understaffing at the Facilities and is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages. The agent for service of process on Care Plus Staffing, LLC is Amy M. Wilbourn, 4375 N. Vantage Drive, Suite 405, Fayetteville, Arkansas 72703.

16.    Defendant John Ponthie is a citizen and resident of Shreveport, Louisiana. At certain times material to this action, John Ponthie was an owner and the Incorporator/Organizer of the licensee Defendant Camden Operations, LLC. John Ponthie is an owner and sole member of separate Defendant JEJ Investments, LLC and an owner/member of Sub-Ten Holdings, LLC. **Exhibit B**. Upon information and belief, John Ponthie is also the owner and/or member of Progressive Eldercare Services, Inc., Advanced Practice Solutions, LLC, Procare Therapy Services, LLC, Southern Administrative Services, LLC, Care Plus Staffing, LLC, and Professional Nursing Solutions, LLC. The causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by John Ponthie in the

8

ownership, operation, control, and management of the Facilities and the Ponthie Defendants during the residency of Ozie Edwards.  The common plan and design to understaff the Facilities to increase profits is the brainchild of John Ponthie and his brother, Ross Ponthie. John Ponthie is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.  John Ponthie's systematic and continuous contacts with the operations of the Facilities, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101(B).

17.    Defendant Ross Ponthie is a citizen and resident of Alexandria, Louisiana. At certain times material to this action, Ross Ponthie was an owner and the Incorporator/Organizer of the licensee Defendant Camden Operations, LLC, Defendant Camden Operations II, LLC, the managing member of Sub-Ten Holdings, LLC, the sole member of the Facilities and an owner/member of JEJ Investments, LLC. **Exhibit B**.  Upon information and belief, Ross Ponthie is an owner and/or member of separate Defendants Advanced Practice Solutions, LLC, Procare Therapy Services, LLC, Southern Administrative Services, LLC, Care Plus Staffing, LLC, and Professional Nursing Solutions, LLC. The causes of action that form the basis of this suit arise out of such business conducted by and decisions made and implemented by Ross Ponthie in the ownership, operation, control, and management of the Facilities and the Ponthie Defendants during the residency of Ozie Edwards.  The common plan and design to understaff the Facilities to increase profits is the brainchild of Ross Ponthie and his brother, John Ponthie. Ross Ponthie is a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.  Ross Ponthie's systematic and continuous contacts with the operations of the Facilities, specifically, and the State of Arkansas, generally, render him subject to the personal jurisdiction of this Court pursuant to Ark. Code Ann. § 16-4-101(B).

9

18.     Whenever the term "Ponthie Defendants" or "Ponthie Nursing Home Defendants" is used throughout this portion of the Complaint, that term collectively refers to and includes the following Defendants: Camden Operations, LLC and Camden-Progressive Eldercare Services, Inc. both d/b/a Ouachita Nursing and Rehabilitation Center; Camden II Operations, LLC d/b/a Pine Hills Health and Rehabilitation Center; JEJ Investments, LLC; Sub-Ten Holdings, LLC; Progressive Eldercare Services, Inc.; Advanced Practice Solutions, LLC; Procare Therapy Services, LLC; Southern Administrative Services, LLC; Care Plus Staffing, LLC; Professional Nursing Solutions, LLC; Ross Ponthie and John Ponthie.

19.     The Defendants collectively and by agreement controlled the operation, planning, and management of the Facilities allowing them to pursue a common plan and design to understaff the Facilities in violation of the residents' statutory and contractual rights. The authority exercised by the Defendants over the Facilities included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policies and procedures used by the Facilities, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

20.     The Defendants operated as a joint venture/enterprise and pursued a common plan and design to advance their business interests of increasing profits at the expense of the residents, as the Ponthie Defendants were owned by and controlled by the same owners, managers, and decision makers, including Ross Ponthie and John Ponthie.

10

21.     At all relevant times mentioned herein, the Defendants owned, operated and/or controlled the operation of the Facilities, either directly or through the agency of each other and/or other agents, subsidiaries, servants, or employees.

22.     Because the Defendants named herein and others were engaged in a joint venture/enterprise and aided and abetted each other in pursing their common plan and design in carrying out their deceptive business practice of understaffing the Facilities, the acts and omissions of each participant are imputable to all other participants making them jointly and severally liable for all harm caused to the residents. The actions of the Defendants and each of its servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

<h3 style="text-align:center">JURISDICTION AND VENUE</h3>

23.     This Court has jurisdiction over the subject matter and the parties to this action, and venue is proper in this Court.

<h3 style="text-align:center">BACKGROUND AND FACTUAL ALLEGATIONS</h3>

24.     This case arises from Defendants' systemic failure to have sufficient staff at the Facilities to meet the needs of its residents which caused Plaintiffs and the proposed Plaintiff Class to suffer economic and compensatory damages and injuries described in more detail below. The operation and activity of the Facilities is to provide skilled and complex nursing, rehabilitative and personal care services to ill, infirm, medically disabled and elderly individuals.

25.     Persons admitted to the Facilities have limitations caused by physical deterioration, cognitive decline, the onset or exacerbation of an acute or chronic illness or condition, or other related factors. They need nursing care, medical treatment, and rehabilitation to maintain functional status, increase functional status, or live safely from day to day. The

residents are elderly, disabled, confined to their beds or unable to rise from a bed or chair independently, and unable to groom, feed, toilet, or clean themselves. Consequently, many nursing home residents rely upon nursing home staff for not only skilled nursing care and treatment, but also essential primary care (herein "Basic Care") including:

a)   Toileting assistance;

b)   Incontinence are and changing of wet and soiled clothing and linen;

c)   Assistance transferring to and from bed and wheelchair;

d)   Assistance with dressing and personal hygiene;

e)   Assistance with bathing;

f)   Assistance with turning and repositioning residents in bed or chair;

g)   Feeding assistance; and

h)   Exercises/passive range of motion ("ROM") exercises.

26.   Defendants limited the number of CNA staff and licensed staff on duty at the Facilities which rendered the Facilities incapable of meeting the needs of the residents. With the limited budgets for staffing, the supply of staffing hours fell far short of the hours needed to adequately care for the residents.

27.   The difference between the services that Defendants were required to provide according to state and federal law and regulations—which Defendants promised to provide in their admissions agreement—and the services that the Facilities were actually capable of providing is profound.

28.   Analysis of survey results reported by the Office of Long Term Care confirm the chronic understaffing at the Facilities and the Defendants inability to provide the Basic Care services for which they were paid.

29.     More specifically, understaffing led to a pattern and practice of failing to provide

Basic Care Services at the Facilities to the residents during the Class Period. For example, the

Facilities failed to provide adequate staff:

a)     To regularly provide toileting, incontinence care, and basic hygiene care, leaving dependent residents in dirty diapers, dirty clothes, and dirty beds for hours at a time;

b)     To timely respond to call lights rung by residents. Residents were left to soil themselves while waiting for assistance; others fell while attempting to walk to the bathroom unaided;

c)     To re-position bed-bound and immobile residents; many residents remained in the same position for hours at a time, which can and sometimes did result in painful, infection-prone pressure sores;

d)     To undertake ROM exercises – moving their joints and limbs, and assisting vulnerable residents who could walk or exercise. Without this assistance, residents lost mobility, rendering them even less independent.

e)     To wash and bathe dependent residents;

f)     To get dependent residents up, dressed, and out of bed; and

g)     To assist dependent residents with meals. Without help, some residents were unable to eat or drink in the time allotted, and some of them suffered weight loss and dehydration.

30.     These practices confirm that the Facilities did not provide the Basic Care that was

required and paid for, and highlight the very human toll of understaffing the Facilities.

Defendants' understaffing practices saved them millions of dollars at the expense of the

residents' dignity and comfort, and jeopardized their safety. As a result of chronic understaffing,

residents at the Facilities were left for long periods in their own urine and waste; were not

cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility;

were deprived of food and water; and suffered falls. The failure to provide adequate staff not

only violated the law and the contractual terms of the Admission Agreement, it also degraded residents and stripped them of their dignity.

31.     As even more specific proof of the chronic understaffing at the Facilities and the resulting harm to residents, surveys conducted by the Office of Long Term Care establish that the Defendants were on notice and aware of problems with understaffing causing harm to the residents. For example, from September 1, 2013 to present, the Facilities was cited for dozens of health-related deficiencies.

32.     As even more specific proof of the chronic understaffing at the Facilities and the resulting harm to residents, surveys conducted by the Office of Long Term Care establish that the Ponthie Defendants were on notice and aware of problems with understaffing at each Facilities causing harm to the residents. For example, from October 8, 2013 to April 19, 2016, the Facilities was cited for at least twenty-seven (27) health related deficiencies. Specifically, in a October 8, 2013 survey, the Facilities was cited for failing to "meet minimum direct-care staffing on the day shift." In surveys conducted on October 8, 2013 and April 19, 2016, the Facilities was cited for numerous deficiencies relevant to the injuries suffered by Ozie Edwards and the Plaintiff Class including:

a.      Failure to ensure that sufficient direct care staff was available to provide personal care and to assist a resident with getting out of bed as requested; and

b.      Failure to ensure that a resident who enters the Facilities without pressure sores does not develop pressure sores and a resident having pressure sores receives necessary treatment and service to promote healing and prevent infection and prevent new pressure sores from developing; and

c.      Failure to ensure physician-ordered laboratory tests were performed as ordered, to enable the physician to identy any potential abnormalities that might necessitate changes in treatment; and

d.      Failure to have a program that investigates, controls and keeps infection from spreading; and

14

e.   Failure to have enough nurses to care for every resident in a way that

maximizes the resident's well being.

33.   Under Arkansas law, the Department of Human Services which licenses nursing Facilities to operate, "shall not issue or renew a license of a nursing Facilities unless that Facilities employs the direct-care staff needed to provide continuous twenty-four-hour nursing care and service to meet the needs of each resident of the nursing Facilities and the staffing standards required by all state and federal regulations." Ark. C. Ann. § 20-10-1402(a).

34.   Under Arkansas law, there are specific staffing standards regarding the minimum number of direct-care staff required in nursing Facilities and "the staffing standard required…shall be the minimum number of direct-care staff required by nursing Facilities and shall be adjusted upward to meet the care needs of residents." Ark. C. Ann. § 20-10-1402(b)(1). Therefore, a Facilities which provides staffing at the minimum number of direct-care givers required is not in compliance with Arkansas law as those staffing numbers "shall be adjusted upward to meet the care needs of residents." *Id.* By definition, failure to meet the minimum staffing requirements for direct-care under Arkansas law is also a direct violation of the federal law staffing requirements.

35.   Under Arkansas law for direct-care givers,

…all nursing Facilities shall maintain the following minimum direct-care staffing-to-resident ratios:

(1) One (1) direct-care staff to every six (6) residents for the day shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(2) One (1) direct-care staff to every nine (9) residents for the evening shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(3) One (1) direct-care staff to every fourteen (14) residents for the night shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every eighty (80) residents.

Ark. C. Ann. § 20-10-1403(a).

## CAUSES OF ACTION AGAINST THE DEFENDANTS

### CLASS CLAIMS

36.    Plaintiffs bring this action individually and in a representative capacity pursuant to Arkansas Rule of Civil Procedure 23 against the Defendants for engaging in a civil conspiracy, pursuing a common plan and design and acting in concert to create a deceptive business practice of chronically understaffing the Facilities which violated the residents' statutory and contractual rights that unjustly enriched the Defendants. Plaintiffs allege that the Defendants engaged in a deceptive business practice of chronically understaffing the Facilities, breached the Admission Agreement and the Provider Agreement, violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), and violated the Residents' Rights Act. Plaintiffs seek damages for breach of the Admission Agreement and breach of the Provider Agreement; damages under the ADTPA as well as damages for unjust enrichment for receiving payments they were not legally entitled to receive by engaging in the deceptive business practice of understaffing the Facilities and violating state and federal laws, including the Residents' Rights Act on behalf of the named Plaintiffs and all residents and estates of residents who resided at the Facilities from April 1, 2016 to present.  Excluded from the class are residents and estates of residents that have sued in the past or currently have lawsuits pending against any of the Defendants, employees of the Defendants, and all employees of the Court in which this case is pending.

37.    From September 1, 2013 to present, the Defendants provided custodial care to more than 400 residents at the Facilities. The class plaintiffs are so numerous that joinder of all individual claims is impracticable.

38.    Upon information and belief, at or near the time of admission to the Facilities, all residents were required to sign the same or substantially the same "Admission Agreement," an example of which is attached, marked as **Exhibit D**.

39.    In the Admission Agreement, the Defendants promised "to furnish  . . . nursing and personal care, social services, linens, bedding, and other items required for the Resident's known physical condition or by law for the Resident's health, safety, grooming and well-being." Also, Defendants promised "to exercise due diligence to obtain the services of the Resident's personal physician when the Resident's condition requires such medical attention."

40.    The Defendants owed a non-delegable legal duty to the Plaintiffs and Plaintiff Class to provide adequate and appropriate staffing at the Facilities at all times, and Defendants knew that state and federal law, which the Defendants expressly incorporated into their Admission Agreement, required the Defendants to meet critical staffing requirements. These requirements include but are not limited to the following:

a)    Meeting requirements for minimum numbers of Facilities staff members to be present at all times, Ark. Code Ann. § 20-10-1401 et seq.;

b)    Meeting requirements for the minimum number of staff members to be adjusted upward to meet the care needs of residents, Ark. Code. Ann. § 20-10-1401 et seq.;

c)    Meeting additional staffing requirements to assure that all residents receive the highest quality of life while protecting their health and welfare; Ark. Code Ann. § 20-10-1002 et seq.;

d)    Meeting the federal minimum standards imposed by the United States Department of Health and Human Services, 42 CFR Section

405-301 et seq., including providing sufficient nursing staff and nursing personnel to ensure that each resident attains and maintains the highest practical physical, mental, and psychosocial well-being. 42 CFR Section 483.30; and

e)     Meeting the requirements of other provisions of Arkansas and Federal law.

41.     In an effort to ensure that minimum staffing requirements are met, Arkansas law requires that Defendants honestly, accurately, regularly and truthfully:

a)     Post daily personnel sign-in sheets reflecting levels of staffing per shift, Ark. Code Ann. § 20-10-1406; and

b)     Submit to the Office of Long Term Care a written report of all shifts which failed to meet the minimum staffing requirements, Ark. Code Ann. § 20-10-1407.

42.     Defendants filed such reports knowing that they were inaccurate and misleading.

43.     By understaffing the Facilities, Defendants saved significant money and profited at the expense of all residents. Defendants operated and managed the Facilities so as to maximize profits by reducing staffing levels below that which was needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing Facilities. By understaffing the Facilities, the Defendants did not use money received from Medicare and/or Medicaid they were legally required to use to adequately staff the Facilities to meet the needs of its residents. Thus, Defendants intentionally and/or with reckless disregard for the consequences of their actions caused staffing levels at the Facilities to be set so that the personnel on duty at any given time could not reasonably meet the needs of the residents, causing injury to the residents at the Facilities. The Defendants have created a broad corporate culture in which understaffing is a standard practice and in which Defendants sought reimbursement of funds from government sources for services not provided.

18

44.    All residents in the Facilities were injured by the Defendants' chronic and institutionalized understaffing. The lack of personnel in the Facilities resulted in residents receiving a level of care (1) that was below the level of care that Defendants represented they were able to provide in their Admission Agreement, and (2) that failed to comply with state and federal minimum staffing requirements.

45.    The pervasive common question is whether the Facilities was chronically understaffed so as to violate the residents' statutory and contractual rights and breached their legal duty to adequately staff the Facilities. There are other questions of law and fact common to the Plaintiff Class which predominate over questions affecting only individual class members. Such common questions include, but are not limited to:

a)    Whether the standard Admission Agreement required the Facilities to have sufficient staff to meet the care needs of the residents as required by state and federal laws and regulations;

b)    Whether Ark. Code Ann. §§ 20-10-1201, et. seq., imposes minimum staffing requirements requiring the Facilities to have sufficient staff to meet the care needs of the residents;

c)    Whether Defendants failed to meet the minimum staffing requirements of Ark. Code Ann. §§ 20-10-1201, et seq., and the Defendants' admission agreement by failing to provide sufficient staff to meet the care needs of the residents;

d)    Whether failure to meet the minimum staffing requirements required by state and federal laws and regulations breaches the Defendants' admission agreement, Ark. Code Ann. §20-10-1201, et seq., and the Arkansas Deceptive Trade Practices Act;

e)    Whether chronically understaffing the Facilities in violation of state and federal laws and regulations is a deceptive business practice and/or an unconscionable business practice and/or a violation of the Arkansas Deceptive Trade Practices Act;

f)    Whether the Defendants owed a legal duty to the residents to staff the Facilities in compliance with state and federal laws and regulations;

g)      Whether failure to staff the Facilities in compliance with state and federal laws and regulations is a breach of the provider agreement;

h)      Whether the admission agreement's failure to disclose the Facilities's history of understaffing is an omission or concealment which constitutes a deceptive business practice and/or a violation of the Arkansas Deceptive Trade Practices Act;

i)      Whether the Defendants were unjustly enriched;

j)      Whether the Defendants engaged in a civil conspiracy to understaff the Facilities in violation of state and federal laws and regulations;

k)      Whether the Defendants entered into a conscious agreement to pursue a common plan or design to violate the Residents Rights Act and/or understaff the Facilities;

l)      Whether the Defendants pursued a common plan and design and acted in concert to understaff the Facilities;

m)      Whether the Defendants actions degraded the residents and stripped them of their dignity;

n)      Whether the Defendants were required to use the money they received from Medicare and Medicaid to provide necessary staffing to meet the care needs of the residents;

o)      If so, whether the Defendants used the money received from Medicare and Medicaid to provide adequate staff to meet the care needs of the residents;

p)      Whether the Defendants are required to comply with all state and federal staffing laws and regulations when they received money from Medicare and Medicaid;

q)      Whether the Defendants were in compliance with all state and federal staffing laws when they received money from Medicare and Medicaid;

r)      Whether the Defendants' actions were willful, wanton or demonstrated reckless disregard of the rights of the Plaintiffs; and

s)      Whether the Ponthie Defendants and the named individuals are control persons as defined in Ark. Code Ann. 4-88-113(d)(1) and

20

therefore jointly and severally liable for the damages suffered by
the Plaintiff Class for the Defendants' deceptive trade practices.

46.     The Plaintiffs will fairly and adequately protect the interest of the Plaintiff Class
and have familiarity with the allegations expressed herein and are able to assist in decision
making as to the conduct of this litigation.

47.     Plaintiffs' claims are typical of the claims of the class because the class
representative's claims arise from the Defendants' standard and routine practice of failing to
meet the minimum staffing requirements imposed by state law and their standard admission
agreement. The chronic understaffing at the Facilities made it impossible for the few staff who
were there to perform their tasks at a level which complied with the protections afforded by the
Residents' Rights Act and at the levels promised by the Defendants' Admission Agreement.

48.     By understaffing the Facilities, Defendants acted willfully, wantonly and in
reckless disregard of the residents' rights intentionally placing profits over people and knowingly
taking advantage of residents who were unable to protect their interests because of their physical
and mental infirmities. Systemic understaffing of the Facilities directly resulted in undignified
living conditions for the residents, a breach of the Admission Agreement, a breach of the
provider agreement, a violation of state and federal law, a breach of the Facilities's duties to
adequately staff the Facilities, and unjust enrichment of the Defendants. The injuries sustained
by the proposed class representative is typical of the class and further evidence understaffing at
the Facilities

49.     By understaffing the Facilities, Defendants placed profits over compliance with
state law the well-being of the residents. These decisions were made and implemented by the
owners, board members, management, employees and agents of Defendants acting in concert and
are an illegal, deceptive and unconscionable business practice. Since at least September 1, 2013,

the Defendants have, as a standard and routine business practice, violated state and federal laws and regulations in reckless disregard of the Plaintiffs' rights and knowing that the well-being of all residents would be adversely affected as detailed herein.

50.     Defendants failed to discharge their obligations of care to the named Plaintiffs and their loved ones with a conscious and reckless disregard for their individual rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by the Plaintiff class, as more fully set forth below. While a resident at the Facilities, Ozie Edwards sustained multiple injuries including, but not limited to, the following: (a) Malnutrition; (b) Dehydration; (c) Multiple infections; (d) Poor hygiene; and (e) Death. Defendants knew that their Facilities could not provide the minimum standard of care to the weak and vulnerable residents of the Facilities.

51.     As a direct and proximate result of the Defendants' conduct, the Plaintiffs and Plaintiff Class have suffered actual damage, both in terms of physical injuries, as detailed above, and damages for loss of dignity, mental anguish and economic damage. Moreover, the Plaintiffs, or someone acting on behalf of the Plaintiffs, provided payment in exchange for services which were not provided, which were not as represented by the Defendants' Admission Agreement, and did not the standards required by the Arkansas Residents' Rights Act.

52.     The Defendants, as the owners, agents, managers and operators of a private organization having the responsibility of protecting and caring for the residents, have direct, vicarious and joint and several liability for the acts and omissions giving rise to this complaint.

53.     Plaintiffs have retained counsel qualified, experienced and able to conduct the litigation, and Plaintiffs have made arrangements to cover the costs associated with this litigation.

54.     If each class member were required to pursue individual actions, it would be economically and judicially unfeasible. A class action is appropriate and the superior method for the fair and efficient adjudication of this controversy.

### COUNT ONE: VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

55.     Plaintiffs incorporate the allegations contained in Paragraphs 1–54 as if fully set forth herein.

56.     At all times pertinent to this cause of action, Plaintiffs were "elder person[s]" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiffs have a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

57.     At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) ("ADTPA") provides that it is unlawful to:

   a)     Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

      i.    Physical infirmity; or

      ii.   A similar factor; and

   b)     Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

58.     Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for

any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

59.     The conduct of Defendants as described herein constitutes a deceptive practice in violation of the ADTPA. Defendants failed to inform Plaintiffs and the Plaintiff Class in Defendants' standard Admission Agreement that the Facilities routinely failed to meet minimum staffing requirements imposed by state and federal law which increased profits. Furthermore, Defendants represented themselves as providing services commensurate with the needs of the residents and in compliance with the requirements of Arkansas state law governing long-term care and nursing Facilities.

60.     By understaffing the Facilities, the Defendants knowingly took advantage of the most vulnerable consumers and those who were unable to protect themselves. Defendants' unfair and deceptive trade practices asserted herein are the type that the ADTPA is specifically designed to protect against and remedy.

61.     The Defendants' trade practices also are, and have been throughout the Class Period unconscionable, because the nursing home residents constitute a vulnerable population: they are elderly, ill, infirm, and often deteriorating. These residents often face the double burden of dependency and isolation. The Defendants accept these vulnerable residents for admission, and then knowingly fail to provide sufficient levels of staffing to provide the care required without disclosing in their admission agreement the Facilities' dreadful history of understaffing.

62.     In furtherance of their deceptive business practices, the Defendants: (1) billed and collected money from Medicare and Medicaid representing that they had complied with all laws, including all state and federal staffing laws and regulations, when Defendants knew they had not;

(2) did not use the funds received from Medicare and Medicaid to adequately staff the Facilities as they are required to do; and (3) continued to accept residents when they could not care for the residents currently in the Facilities.

63. The Defendants also engaged in, and have engaged in throughout the Class Period, substantively unconscionable trade practices by understaffing the Facilities making it impossible to provide adequate care to residents even though it charged for services it could not provide.

64. The Defendants knew that they were not meeting, and did not have sufficient staff to meet the Basic Care needs of their residents as mandated by state and federal laws and regulations. The Defendants were indifferent to the consequences to the elderly resident population when intentionally understaffing the Facilities to increase profits.

65. The Defendants further engaged in deceptive trade practices by infringing upon and depriving the Plaintiff Class of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201, et seq. ("Protection of Long Term Care Facilities Residents' Act") including, but not limited to, the following:

> a) The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for the Plaintiff Class, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:
>
> > i. The right to receive adequate and appropriate custodial service, defined as care for the Plaintiff Class which entailed observation of diet and sleeping habits and maintenance of a watchfulness over their general health, safety, and well-being; and

b)   The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

c)   The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of the Plaintiff Class, and not directly furnished by the licensee;

d)   The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

e)   The right to Facilities with premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

f)   The right to be free from mental and physical abuse, and from physical and chemical restraints;

g)   The right of the Plaintiff Class to have privacy of their bodies in treatment and in caring for their personal needs;

h)   The right to the obligation of the Facilities to keep full records of the admissions and discharges of the Plaintiff Class and their medical and general health status, including:

   i.   medical records;

   ii.   personal and social history;

   iii.   individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

   iv.   making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care Facilities record, or cause or procure any of these offenses to be committed; and

   v.   The right to be treated courteously, fairly, and with the fullest measure of dignity.

66.     As described in part and above, the Defendants received repeated citations related to failures of Basic Care in Office of Long Term Care surveys. Upon information and belief, they received these deficiencies despite taking steps to increase staffing and prepare staff for surveys immediately preceding the arrival of state surveyors – steps that would lead surveyors to believe levels of care provided were higher than they actually were during non-survey times.

67.     The conduct of the Defendants, as described herein, constitutes a deceptive practice in violation of the Arkansas Deceptive Trade Practices Act. The Defendants engaged in unconscionable, false, and/or deceptive acts or practices in business, commerce and/or trade including, but not limited to, marketing themselves and holding themselves out to the public as being able to meet the needs of elder residents of the Facilities. The Defendants profited greatly as a result of their deceptive trade practices, but the Defendants were aware that the Facilities could not meet the needs of its residents.

68.     As a direct and proximate result of the Defendants' wrongful, willful and wanton conduct, Plaintiffs have suffered actual damages, including economic damages, compensatory damages and loss of dignity damages.

### COUNT TWO: BREACH OF THE ADMISSION AGREEMENT

69.     Plaintiffs incorporate the allegations contained in paragraphs 1–68 as if fully set forth herein.

70.     Before being admitted to the Facilities, residents, or those acting on their behalf, were required to enter into a resident Admission Agreement, whereby the Facilities agreed to provide nursing and personal care required for the Resident's known physical condition as required by law for the Resident's health, safety, grooming and well-being in exchange for valuable consideration. *See* **Exhibit D**.

71.     The residents, or those acting on their behalf, paid for or caused to be paid for, the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Defendants promised to provide.

72.     The Defendants breached their contractual duties, both express and implied, by understaffing the Facilities and creating a situation whereby it was impossible for caregivers to provide the care and services as described in the agreement and as required by law for the Resident's health, safety and well-being, causing damage to the residents, including loss of dignity.

73.     As a result, the Plaintiffs are entitled to compensatory damages, and Plaintiffs assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment.

74.     Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or should have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the Admission Agreement would naturally and probably result in injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

### COUNT THREE: BREACH OF THE PROVIDER AGREEMENT

75.     Plaintiffs incorporate the allegations contained in paragraphs 1-74 as if fully set forth herein.

76.     Upon becoming a resident of any of the Facilities, the residents, many of whom were Medicare and/or Medicaid recipients, became third-party beneficiaries of the contract or

provider agreement between the Defendants and the state and federal governments, an example of which is attached as **Exhibit E**.

77.     For consideration duly paid by the residents, or on their behalf, the Defendants agreed to provide residents with personal and custodial care and professional nursing care in compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein. In addition, by entering into the agreement, the Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State." The Defendants further agreed that "the rights and privileges of the residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents. The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement." *See* **Exhibit E**.

78.     As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. Additionally, the provider agreement between the Defendants and the state and federal government was clearly intended to benefit and protect the residents of the Facilities by requiring the Defendants to provide quality care consistent with federal and state statutes and regulations.

79.     The Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to adequately staff the Facilities and provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

> a)      Failing to provide dietary services, including special diets, supplemental feedings, special delivery preparation, assistance,

and equipment required for preparing and dispensing oral feedings and special feeding devices;

b)     Failing to provide personal or custodial services and nursing care;

c)     Failing to implement policies and procedures so as to prevent infringement or deprivation of the Plaintiff Class's rights as residents of long term care Facilities;

d)     Failing to comply with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

e)     Failing to staff the Facilities with sufficient personnel to adequately meet the needs of the Plaintiff Class, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

80.     As a result of the Defendants' breach of the provider agreement, Plaintiffs assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment.

81.     The Defendants are also liable for all consequential damages, because the Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to the Plaintiff Class, and, under the circumstances, the Defendants should have understood that it had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

82.     Plaintiffs seek judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to mental anguish and loss of dignity.

83.     Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in

injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

84.     A copy of the provider agreement is attached to this Complaint as **Exhibit E**.

## COUNT FOUR:  CIVIL CONSPIRACY/ACTING IN CONCERT

85.     Plaintiff incorporates the allegations contained in Paragraphs 1–84 as if fully set forth herein.

86.     The Facilities entered into various agreements, including but not limited to, consulting, administrative, property, clinical and other agreements with the Defendants, which were implemented and carried out by the Defendants in Arkansas as part of a common and integrated plan and design, whereby they conspired to understaff the Facilities in violation of state and federal laws and regulations for profit at the expense of the residents.

87.     In furtherance of their civil conspiracy and common plan and design of deceptive business practices, the Defendants billed and collected money from Medicare and Medicaid representing that they complied with all laws, including state and federal staffing laws and regulations, and which funds were required to be used to staff the Facilities to provide adequate care for the residents. Instead of using these funds to provide adequate care to the residents, the money was siphoned out of the Facilities pursuant to agreements between and among the Defendants for the benefit of the Defendants and the owners.

88.     The Defendants concealed the history of chronic understaffing at the Facilities from the residents in furtherance of their common plan, design and deceptive business practice to understaff the Facilities and recruit new residents and engaged in other acts which were improper as discussed herein and conducted in furtherance of their common plan and design to understaff

the Facilities in violation of state and federal laws and regulations for profit at the expense of the residents.

89.    The actions taken by the Defendants in furtherance of this common plan and design were unlawful, oppressive, deceptive and immoral in chronically understaffing the Facilities in violation of the Residents' Rights Act and the Arkansas Deceptive Trade Practices Act and carried out against the elderly and infirm. These actions justify relief under the doctrine of unjust enrichment as the Defendants received money they were not legally entitled to receive and should not be permitted to retain.

90.    As a direct and proximate result of the actions taken by the Defendants taken in furtherance of this common plan and design, the Plaintiff and the Plaintiff Class were harmed. The Defendants are jointly and severally liable for all compensatory and punitive damages against the Defendants including, but not limited to, economic damages and damages for loss of dignity to be determined by the jury, plus costs and all other relief to which Plaintiffs are entitled by law.

## COUNT  FIVE:  UNJUST ENRICHMENT

91.    Plaintiff incorporates the allegations contained in Paragraphs 1–90 as if fully set forth herein.

92.    In violation of the Residents' Rights Act, the Arkansas Deceptive Trade Practices Act and other state and federal laws, the Defendants conspired to understaff the Facilities and received payments from residents and payments made on behalf of residents which they were not entitled to receive. The Defendants were unjustly enriched by receiving money which they were not legally entitled to receive and should not be permitted to retain.

32

93.     The Defendants should not be permitted to unjustly enrich themselves at the expense of the Plaintiff and Plaintiff Class. Equity and good conscience requires the Defendants to make restitution and/or be disgorged of all funds received in violation of state and federal laws and regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and on behalf of the Plaintiff Class prays for judgment against Defendants as follows:

a)     For damages, including economic, compensatory, mental anguish and loss of dignity, in an amount adequate to compensate the Plaintiffs for the injuries and damages sustained.

b)     For all actual, general and special damages caused by the alleged conduct of Defendants.

c)     For the costs of litigating this case.

d)     For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204 and 113(f).

e)     For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences the residents and to deter Defendants and others from repeating such atrocities.

f)     Enjoining the Defendants from: (i) understaffing the Facilities; (ii) accepting residents at a time the Facilities are understaffed; (iii) accepting payments from any source, including Medicare and Medicaid, at any time in which the Facilities are not in full compliance with all state and federal laws and regulations; and (iv) billing for services not provided.

g)     For all other relief to which Plaintiffs are entitled.

Respectfully submitted,

The Plaintiffs and all others similarly situated

By: _Brian Reddick_____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
Daniel K. Yim (2014202)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas 72202
Telephone:    (501) 907-7790
Facsimile:     (501) 907-7793

and

H. Gregory Campbell (92001)
**Campbell Law Firm, P.A.**
One Information Way, Suite 110
Little Rock, AR 72202
Telephone:    (501) 372-5659
Facsimile:     (501) 374-8657

34

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record on this the 28th day of July, 2017:

Mark W. Dossett
Jeff Fletcher
Dale W. Brown
Andrew Tarvin
**Kutak Rock, LLP**
234 East Millsap Road, Suite 200
Fayetteville, Arkansas 72703

Amy Wilbourn
Vicki Bronson
**Conner & Winters, LLP**
4375 N. Vantage Dr., Suite 405
Fayetteville, AR 72703

_Brian Redlick_
_____
Attorney for the Plaintiff

OUACHITA COUNTY CLERK

12:36:06*FILED

20CT'14

IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
PROBATE DIVISION

IN THE MATTER OF THE ESTATE OF
OZIE LEE EDWARDS, DECEASED                    NO. PR-2014-125

## ORDER APPOINTING PERSONAL REPRESENTATIVE

The Petition of Addie Edwards for appointment of a personal representative in the estate of

Ozie Lee Edwards, deceased, is presented to the Court. Upon consideration of the Petition and the

facts and evidence in support of it, the Court finds:

1.      No demand for notice of proceedings for the appointment of a personal representative

of the estate has been filed. The Petition is not opposed by any known person, and it may be heard

without notice.

2.      Ozie Lee Edwards, who resided at Ouachita Nursing & Rehab Center, 1411 Country

Club Rd., Camden, Arkansas, died at Ouachita Nursing & Rehab Center, 1411 Country Club Rd.,

Camden, Arkansas, on November 11, 2013.

3.      This Court has jurisdiction of this proceeding and venue properly lies in this County.

4.      Addie Edwards is a proper person by law to serve as personal representative of the

estate.

5.      It appears there are no unsecured claims against the decedent's estate.

6.      The estate has no assets other than a potential personal injury/wrongful death action,

and bond, therefore, is waived at this time. The Court will revisit the issue of bond should the estate

acquire assets at any time.



EXHIBIT

A

IT IS THEREFORE ORDERED as follows:

a.    the administration of the estate is opened;

b.    Addie Edwards is appointed personal representative of the estate; and

c.    Letters of Administration shall be issued to this personal representative without the

requirement of a bond.

DATED this _30_ day of _September_ , 2014.

_____
CIRCUIT JUDGE

Submitted by:

_____
J. Michael Lewis, Bar #92269
LEWIS & LEWIS
P. O. Box 20160
White Hall, AR 71612
Telephone No. (870) 247-2111
Attorneys for Estate

-2-

# Ouachita Nursing and Rehabilitation Center

Telephone: (870) 836-4111                                          FAX Number: (870) 836-5671

## I. FACILITY DATA

|  |  | Updated | 02/04/2015 |
|---|---|---|---|

| MAILING ADDRESS | Administrator: | Jennie Jeanette Goss Hassan |
|---|---|---|
|  | Administrator License Number: | 2080 |
| 1411 Country Club Road | Total Licensed Beds: | 142 |
| Camden, AR 71701 |  |  |
|  | Life Safety Code Years: | 1981 |
| PHYSICAL LOCATION |  |  |
| 1411 Country Club Road |  |  |
| Camden, AR 71701 | Certification: | Title XIX/XVIII |
| County: Ouachita #52 |  |  |

| Facility Identification Numbers | | Certified Beds  142 | | Classification | |
|---|---|---|---|---|---|
| Federal Provider: 04-5207 | Prov/Supplier Cat: 02 | Medicaid: | 0 | NF: | |
| State License: 1020 | Fiscal Year: 12/31 | Medicare: | 0 | SNF: | |
| State Vendor: 0557 | Fiscal Intermediary: 15101 | Caid/Care: | 142 | NF/SNF: | X |
| MMIS Provider: 199086311 | | Private Beds: | 0 | ICF/MR: | |
| | | HomestyleBeds: | | ICF/MR10: | |

## II. OWNERSHIP AND FINANCIAL INTEREST

| Type of Entity: | Building Ownership |
|---|---|
| Limited Liability Company | Leased from: |
|  | OHI Asset (AR) Camden, LLC |
|  | c/o Omega Healthcare Investors, Inc. |
|  | 200 International Circle, Suite 3500 |
| Tax ID #: 46-3337875 | Hunt Valley, MD 21030 |

### Ownership and Financial Interest

Camden Operations, LLC

Doing business as     Ouachita Nursing and Rehabilitation Center

Sub-Ten Holdings, LLC     100%*         MasterTen, LLC - Prime tenant
P O Box 12187                              P O Box 12187
Alexandria, LA 71315                      Alexandria, LA 71315
318.443.8167                               Camden Operations, LLC  - sub-tenant

*Ross Ponthie, Member - 40%       * Mark Thompson, Member   -  20%
Same address as above                2230 S. MacArthur DR - Suite 9A
                                             Alexandria, LA  71301

*JEJ Investments, LLC, Member - 40%
2723 Alvamar Drive, Shreveport, LA 71106
[JEJ Investments, LLC is 100% owned by John Ponthie]

Effective 09/01/2013 - Change of Ownership
[Previous entity operator: Diversicare Leasing Corp. doing business as Ouachita Nursing and Rehabilitation Center]

**EXHIBIT B**

# Ouachita Nursing and Rehabilitation Center

Telephone: (870) 836-4111                                    FAX Number: (870) 836-5671

## I. FACILITY DATA

|  |  |  |
|---|---|---|
|  | Updated | 10/01/2015 |

| MAILING ADDRESS | |
|---|---|
| 1411 Country Club Road<br>Camden, AR 71701 | Administrator: Jennie Jeanette Goss |
| | Administrator License Number: 2080 |
| | Total Licensed Beds: 142 |
| PHYSICAL LOCATION | Life Safety Code Years: 1981 |
| 1411 Country Club Road<br>Camden, AR 71701<br>County: Ouachita #52 | Certification: Title XIX/XVIII |

| Facility Identification Numbers | | Certified Beds   142 | | Classification | |
|---|---|---|---|---|---|
| Federal Provider: 04-5207 | Prov/Supplier Cat: 02 | Medicaid: | 0 | NF: | |
| State License: 1070 | Fiscal Year: 12/31 | Medicare: | 0 | SNF: | |
| State Vendor: 0557 | Fiscal Intermediary: 00160 | Caid/Care: | 142 | NF/SNF: | X |
| MMIS Provider: 209661311 | | Private Beds: | 0 | ICF/MR: | |
| | | HomestyleBeds: | | ICF/MR10: | |

## II. OWNERSHIP AND FINANCIAL INTEREST

| Type of Entity: | Building Ownership |
|---|---|
| Corporation<br><br><br>Tax ID #: 47-4341182 | Landlord:<br>OHI Asset (AR) Camden, LLC<br>c/o Omega Healthcare Investors, Inc.<br>200 International Circle, Suite 3500<br>Hunt Valley, MD 21030 |

### Ownership and Financial Interest

Camden - Progressive Eldercare Services, Inc.

Doing business as      Ouachita Nursing and Rehabilitation Center

Jeanette Goss
President/Secretary/Treasurer
1411 Country Club Road
Camden, AR 71701

MasterTen, LLC [Prime Tenant]
P. O. Box 12187
Alexandria, LA 71315

Helen E. Aregood, Board Member
3020 Cherokee St.
Camden, AR 71701

Progressive Eldercare Services, Inc., Member
38 Warnock Springs Road
Magnolia, AR 71753

James S. Brooks, Board Member
1355 Hickman Rd.
Camden, AR 71701

Change of Ownership effective 09/01/2015 [Previous entity operator: Camden Operations, LLC* doing business
as Ouachita Nursing and Rehabilitation Center *Sub-Ten Holdings, LLC 100%]

EXHIBIT
tabbies*
C

**NOTICE OF CHANGE IN OPERATIONAL CONTROL**

1.      Effective September 1, 2015, Camden – Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center will lease and operate the 142 bed facility now operated by Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and located at:

> 1411 Country Club Road
> Camden, AR 71701

2.      Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center will relinquish control of the operations of the above-referenced long term care nursing facility as of September 1, 2015.

3.      This Notice of Operational Change may be signed in counterparts.

The foregoing terms and conditions are hereby accepted and approved by the undersigned as of the 1st day of August, 2015.

Camden Operations, LLC d/b/a
Ouachita Nursing and Rehabilitation Center
(Former owner / Operator)

By: its member Sub-Ten Holdings, LLC

Ross Ponthie, Member

Camden – Progressive Eldercare Services, Inc.
(New Operator)

By: Jeanette Gross, President

RECEIVED

AUG 2 5 2015

OLTC
LICENSURE AND CERTIFICATION

## ADMISSION AGREEMENT

### Ouachita Nursing & Rehab Center
1411 Country Club Road
Camden, AR 71701

The undersigned resident or resident's representative (collectively, the "Resident") hereby requests admission of ____Ozie Edwards____ [Name of Resident] to **Ouachita Nursing & Rehab Center** (the "Nursing Facility" or "Facility") for medical, nursing, and personal care. The Nursing Facility and the Resident agree to the following terms for the Resident's care.

### Section 1: FACILITY'S OBLIGATIONS

1.1   CareandServices

    a.    To admit and provide nursing care on a nondiscriminatory basis so that all residents receive benefits and services without regard to race, color, religion, or national origin.

    b.    To furnish a semi-private room, nursing and personal care, social services, linens, bedding, and other items required for the Resident's known physical condition or by law for the Resident's health, safety, grooming, and well-being.

    c.    To furnish dietary services, including physician-ordered special diets and special feeding devices.

    d.    To furnish laundry service for personal items not requiring dry cleaning, pressing, or special finishing upon request.

*Do you wish the Facility to do your personal laundry?*        *Yes* ____   *No* _✓_

    e.    To notify the Resident of any change(s) in the costs or availability of services prior to any changes.

    f.    To refund any unused portions of prepaid charges based on daily rate schedules.

    g.    To arrange for transfer of the Resident to the hospital when ordered by the Resident's physician and to notify the Resident of the transfer.

1.2   Personal Funds.  If the Resident decides to deposit personal funds with the Facility, the Resident will provide the Facility with written authorization to open a Resident Trust Account. The Facility will report account activity to the Resident at least quarterly.

*Do you wish the Facility to manage your personal funds?*        *Yes* ____   *No* _✓_

1

1841-5698-1286  2



**EXHIBIT**
D

DEF-000537

1.3     Resident's Rights.  The Facility will explain Resident's Rights to the Resident on admission and periodically throughout the Resident's stay.  The Facility will give a copy of the Rights to the Resident on admission and whenever there is a change affecting the Resident's rights.

1.4     Restraints.  The Facility will use a restraining device on the Resident after completing an assessment of the Resident's medical condition if the assessment shows that the restraining device is necessary for the Resident's safety and well-being.  The Facility will use the least restrictive device possible to ensure safety while allowing the most freedom of movement. No restraining devices will be used without a physician's order and the Resident's permission to use the restraint.  Restraints could, however, be used in an emergency to ensure the safety of others, and a physician's order and the Resident's consent will be obtained as soon as practicable thereafter.

1.5     Medicare or Medicaid.  The Facility will inform the Resident about Medicare and Medicaid eligibility requirements and will assist the Resident with processing the forms necessary to obtain coverage.

*At the time of Admission, the resident does* ✗ , *does not* _____ *qualify for Medicare benefits.*

*At the time of Admission, the Resident probably meets* _____ , *does not meet* ✗ *criteria for Medicaid benefits.*

1.6     Physician and Dental Services.  The Facility will assist the Resident in obtaining the services of a licensed physician of the Resident's choice whenever necessary, or the services of another licensed physician, if Resident's personal physician is not available or if the designated personal physician so orders.

During the course of the Resident's stay at this Facility, the Resident understands that his or her physician and dentist will determine health care services for the diagnosis and treatment of the Resident's medical or dental conditions.  Subject to the Resident's right to refuse treatment, the Resident authorizes the persons listed below, or whomever they may designate, to order or administer any medications or treatments determined necessary or advisable during the term of this Agreement.

The Resident also authorizes emergency treatment and transfer to Medical Facility(ies) as determined necessary by the attending physician or the Director of Nurses of this Facility in situations where family is unavailable for consent.  In the event that the physician is not available, the Medical Director of this Facility, or whomever he or she may designate, will administer treatment as necessary until the time the attending physician is able to assume responsibility.

*Name of Attending Physician:* _____ DR. PRUITT _____

*Name of Dentist:* _____

1341-5088-1286 2

2

DEF-000538

1.7     Medications&ChoiceofPharmacy.  The Facility will obtain and administer medications prescribed for the Resident by the attending physician.  The Resident will be responsible for the cost of the medications when there is no Medicare or Medicaid reimbursement.  The Resident may use the pharmacy of choice, so long as the pharmacy provides the medication to the Facility in a timely manner.

*Please indicate pharmacy preference:* _____ ALLCARE _____

1.8     Transportation.  The Facility will arrange transportation to hospitals, medical clinics, and dentist's offices when the Resident's visit is medically necessary.   The Resident is responsible for transportation in all other cases.

1.9     Care Plan Meetings.   With the Resident's permission, family members may attend the Resident's care plan meetings, which are held at least quarterly.  The Facility will provide written notification of the care plan meetings in advance.

*Do you (Resident/Responsible Party) wish to attend care plan meetings?*     Yes  √   No ____

*If yes, who do you authorize to attend these meetings?* _____ Ethel Williams _____

1.10    ItemsFurnishedbyFacility.  The Facility furnishes the following items:

   a.     Groomingaides:  shampoo, hand soap, liquid bath soap, comb, brush, toothbrush, toothpaste, toothettes, lemon glycerin swabs, denture cream, razor, razor blades, breath fresheners, mouthwashes, deodorants, disposable facial tissues, and sanitary napkins.

   b.     Items:  water pitcher, glass, tray, wash basin, emesis basin, denture cups, bedpan, urinal, thermometer, hospital-type gowns, hydrogen peroxide, applicators, isopropyl alcohol, cotton balls, tongue depressors; and over-the-counter drugs such as simple pain relievers, antacids, simple laxatives and suppositories, simple cough syrups, antidiarrheal medications, insulin and insulin needles, or any over-the-counter product ordered by the physician.

   c.     Equipment:  trapeze bars and overhead frames, foot boards, cradles, wheelchairs, and/or geriatric chairs, foot stools, adjustable crutches canes, walkers, bedside commode chairs, hot water bottles, heating pads, and ice bags.  Residents may elect to purchase any of the above listed equipment for personal use only, as long as it is marked as personal property and included on the Resident's personal property inventory sheet.

   d.     Supplies.  simple first aid supplies, oxygen administration supplies, enema supplies, douche supplies, physician prescribed lotions, ointments, medications for treatment of skin breaks, medication administration equipment, equipment for simple tests and exams (sphygmomanometers, stethoscopes, clinitest, weighing scales, etc.), special

3

DEF-000539

dressings, special pads for incontinence, suction equipment, restraints, intravenous supplies, catheter supplies, and colostomy supplies.

e. Additional services and supplies. Additional services and supplies may be required by the Resident for which there is a reasonable charge, e.g., newspapers, cable TV, barber shop or beauty shop services, etc.

1.11 Photographs. The Facility may take photographs of the Resident for identification purposes to aid in the Resident's treatment. Photographs may also be taken during group activities or special events, such as birthdays. With the Resident's consent, these photographs may be published in the newspaper or may be framed and placed on display in the Facility.

*May photographs be taken for use in the newspaper or display in the Facility?*
Yes _✓_   No ____

1.12 Name Preference. The Facility's staff would like to address the Resident by his or her requested name of preference.
*Please indicate your name preference:* " Moat " " Ham Fait "

1.13 Advance Directive or Living Will. The Facility provides Residents with information regarding the right to accept or refuse medical or surgical treatment and the right to document wishes on this topic in an Advance Directive. Complaints concerning the Advance Directive requirements may be filed with the state survey and certification agency.

1.14 Transfer or Discharge. When it becomes necessary to discharge the Resident, the Facility will provide a thirty (30) day advance written notice, except as provided within this paragraph. Residents may be discharged only if warranted by the Resident's medical condition, for the safety or health of the Resident or other persons in the Facility, or upon non-payment of the Resident's financial obligations to the Facility. The Nursing Facility may provide written notice of immediate discharge when the Resident poses a danger to the health or safety of himself or herself, or other persons in the Facility; the Resident's health improves sufficiently to allow for a more immediate discharge; an immediate discharge is required by the Resident's urgent medical needs; or the Resident has not resided in the Facility for thirty (30) days. The Resident may appeal the Facility's discharge decision within seven (7) calendar days of the Notice by contacting the Department of Health and Human Services at (501) 682-8430.

Section 2: RESIDENT'S OBLIGATIONS

2.1 Facility Rules and Policies. To abide by the Facility's rules and policies established in connection with the operation and maintenance of the Facility.

2.2 Respect for Other Residents. To respect the privacy, personal, and property rights of fellow residents in the Facility.

4

1841-5088-1286  2

DEF-000540

2.3   FinancialSupport.  To provide spending money, as needed, by the Resident.

2.4   PersonalEffects.  To provide personal clothing and effects, properly and clearly labeled or marked, and in sufficient quantities to keep the Resident neat in dress and appearance.

2.5   InventoryofBelongings.  To provide a written and signed inventory of personal belongings on the Facility's inventory form at the time of admission and to update that inventory as items are acquired or discarded.  A copy of the inventory will be retained in the Resident's medical record.

2.6   Safekeeping of Valuables.   To arrange the safekeeping of the Resident's money and valuables with the Charge Nurse or the Administrator of the Facility.  The Facility is not otherwise responsible for the loss of money, valuables, or any personal effects.

2.7   NeatandOrderlyRoom.  To limit items brought into the Resident's room to no more than can be neatly stored in the wardrobe and bedside cabinet, to keep the Resident's personal effects (furniture, TV) in good condition and repair, and to remove furniture that is torn or malodorous from the Facility's premises.

2.8   ResponsibleParty.  To appoint one family member or other person to act as the Resident's responsible party in admission, care and treatment, and discharge decisions, and to designate one other contact person if the responsible party is not available.

*Do you have a Power of Attorney?*                                        Yes ✓  No ___
    *(If yes, please provide Facility with a copy of the Document).*

*Do you have a legal guardian?*                                          Yes ___  No ✓
    *(If yes, please provide the Facility with a copy of the Document).*

*Please name the responsible party and one alternate:*  Addie Edwards
                                                        Ethel Williams (Cousin

2.9   Private Nurse, Attendants, or Sitters.  To accept financial and legal responsibility for private nurses, attendants, or sitters engaged by the responsible party for the Resident's benefit, and to understand that private nurses, attendants, and sitters will be expected to follow the Facility's rules and policies or be subject to dismissal for violations.  The Resident hereby releases the Facility, its owners, directors, agents, and employees, from all liabilities arising from the care given to the Resident by the private nurse, attendant, or sitter.

2.10   FinancialResponsibility.  To pay the Facility's charges as provided in this Agreement.

5

DEF-000541

## Section 3: FINANCIAL UNDERSTANDINGS

3.1    Timely Payment.  At the time of admission, payment for services provided under this Agreement through the end of the current month is due and payable.  Thereafter, payment is due in advance by the first (1st) day of each month.  Failure of the Resident to pay the Facility by the tenth (10th) day of the month in which payment is due shall be sufficient grounds for the Facility to discharge the Resident.  The discharge of the resident shall be effective thirty (30) days after the Resident receives a discharge notice from the Facility.

3.2    Payment Guarantees.  The Resident agrees to the following Assignment of Income to the Facility, or the Resident's Representative grants the Nursing Facility the following personal Guarantee as evidenced by his or her signature below:

   a.    Assignment of Income:

         By my signature, I hereby assign all rights to such of my income from whatever source derived, as it exists now or as it may exist in the future, to the Facility as is necessary for payment of all charges incurred relating to my care.  This obligation shall include the payment of reasonable attorneys' fees if this obligation is placed into the hands of an attorney for collection.

         _____
         Signature of Resident or
         Resident's Legal Representative

                  **OR**

   b.    Personal Guarantee:

         By my signature, I hereby *personally* guarantee all obligations of Resident under this Agreement, including, but not limited to, the payment of all charges billed by the Facility relating to the care of the Resident.  This obligation shall include the payment of reasonable attorneys' fees if this obligation is placed into the hands of an attorney for collection.

         *Addie Edwards*
         Signature of Resident's Representative

3.3    Daily Rate.  The basic daily rate for a private room is $ 182.00 and for a semi-private room is $ 142.00.  The daily rate includes the goods and services listed in Paragraph 1.10 of this Agreement.  This rate may be adjusted upon prior written notice to the Resident, and such notice is incorporated into and made part of this Agreement.

3.4    Extra Charges.  The Resident's personal needs for items or services not customarily provided by the Facility are not covered in the basic daily rate and may be furnished by the Resident or

1841-5088-1286 2

6

DEF-000542

paid by the Resident as an extra charge. These items or services may include private duty nursing, private room, beauty or barber shop services, brand name personal care items, false teeth, eyeglasses, or prosthetic devices. (Extra charges for items and services not included in the daily rate are set forth in an Attachment to this Agreement).

3.5     Expenses Incurred for Health and Welfare of Resident. The Resident will be billed for, and will pay promptly, those charges for ancillary services, supplies, and special equipment that are not included in the daily rate, but which the Resident's attending physician or the Facility determine, in their discretion, to be necessary for the health and welfare of the Resident. To the extent possible, the Facility will notify the Resident in advance that these charges will be incurred. Where these services or supplies are provided by third parties, such as medical attention by a physician or ambulance service, the Resident may be billed by the appropriate party. The Resident always has the right to refuse treatment or services.

3.6     Third Party Payor Programs. The Facility agrees to accept payment from Medicare, Medicaid, and insurance companies in lieu of or in addition to payment from the Resident, as the case may be. The Resident remains responsible for paying all co-payments, co-insurance, deductibles, and amounts and charges for items and services incurred by or on behalf of the Resident that the third party payors do not cover.

3.7     Government Payment. In the event government payment is denied or terminated, Resident agrees to pay all unpaid charges for care previously rendered. In the event of a termination of governmental payments, the charges for services rendered commencing with the date of the termination will be at the rate herein specified. If a Resident requiring government assistance is not approved for government assistance at the time of admission, the Resident agrees to pay the Facility at the rate listed herein until the Facility receives payment from the government agency. The Facility will refund any overpayments to the Resident by the fifteenth (15th) day of the month following the month of receipt of overpayment.

3.8     Bed-Hold Charge. If the Resident should leave the Facility, a daily bed-hold charge (in accordance with the Bed-Hold policy) will be made until the personal effects of the Resident are removed from the Facility or a stop bed-hold agreement is signed.

Section 4: FACILITY POLICIES AND PROCEDURES

4.1     Personal Property. Because the Facility is unable to exercise complete control over Residents' personal property, the Facility will not be liable for the loss, theft, or destruction of money, papers, jewels, or other personal property of the Resident or any other person except as delivered to the Charge Nurse or Administrator of the Facility for safekeeping as evidenced by a signed receipt for such property. The Facility suggests that arrangements for the safekeeping of this property be made prior to the admission of the Resident. Residents are permitted to retain and use personal possessions and appropriate clothing, as space permits. The Facility may refuse to accept any personal property with an estimated value in excess of Fifty Dollars ($50).

7

1843-5085-1286 2

DEF-000543

4.2   Prescriptions.   All medications must be prescribed by the Resident's physician, and administered by a licensed nurse in the Facility, unless the Resident has been care planned for self-administration.   The Facility will order all medication required by the Resident.

4.3   Smoking.   ~~This is a no tobacco facility.~~   ~~Smoking and the use of any tobacco product is not permitted in the Facility or upon any of the Facility property.~~   The Resident accepts full responsibility and absolves the Facility, its personnel, and the attending physician of responsibility for any fires, burns, or other accidents occurring as a result of the Resident smoking while the Resident is in bed, in the Resident's room, or in any other area in the Facility.

4.4   Gratuities.   To ensure equality of care to our residents and to protect against abuse or exploitation, this Facility does not permit its staff to accept gratuities or favors from our residents, or their families or friends.   If the Resident or visitor desires to show appreciation for care and services, he or she is encouraged to do something that will benefit the Facility as a whole.

4.5   Telephones.   Each resident room has a standard telephone jack.   The resident or responsible party, however, is responsible for the installation of services and fees, and payment of the monthly bill.   The bill for telephone services should be addressed to the person who has accepted responsibility for payment.   If the Facility initiates a room change, it will arrange for transfer of the line.

4.6   Other Facility Policies.   The Admission Packet contains other important policies that guide your residency in this facility.   By signing this agreement, you are agreeing to be bound by these policies, which are incorporated by reference herein.

**Section 5: MISCELLANEOUS PROVISIONS**

5.1   Termination.   Either party may terminate this Agreement by giving written notice to the other party at the address(es) described below.   This Agreement shall remain in effect until the Resident is discharged.

5.2   Notice.   All notices, bills, and communications required, desired or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given on the date received, if delivered personally, or on the third day after mailing, if sent by registered or certified mail, return receipt requested, postage prepaid, and addressed to the Facility at the address listed at the top of page one of this Agreement and to the Resident at the address set forth below, or to such other person at such location as either party hereto may subsequently designate in similar manner.

*Addie E. Edwards*

Name of Resident (Responsible Party for Notice)

*725 Pearl St   Camden, Ave   71701*

Address of Resident:   City                    State          ZIP

1841-56789-1286 2

8

DEF-000544

5.3    Construction of Agreement. This Agreement shall be interpreted, construed, and governed by and under the laws of the State of Arkansas, and the resident unconditionally submits to the jurisdiction of the courts located in the State of Arkansas in all matters relating to or arising from this Agreement.

5.4    Entire Understanding. This Agreement, including its Attachments and Policies, Procedures, and Statements of Understanding of Facility, and any agreement to arbitrate disputes, received and acknowledged by the resident at any time on or after the date of this Agreement, all of which are incorporated by reference herein, contains the entire agreement between the parties and supersedes all prior agreements, arrangements, or oral representations as to all matters relating to the Resident and his or her care at the Facility. *This Agreement and all accompanying documents and agreements shall remain in full force and effect for all Resident's future stays in the facility, regardless of transfers to hospital, home, or other institutions, until superceded by any new Agreement.*

5.5    Modifications. No modification of the terms and conditions of this Agreement shall be valid unless in writing and signed by both parties to this Agreement.

It is so agreed this ___30___ day of ___August___, 20 _13_.

RESIDENT:

_____          _____
Signature of Resident                     Resident's Representative

WITNESS:

_____
Signature of Witness

Ouachita Nursing & Rehab Center:

_____
Signature of Facility's Representative

9

1811-5088-1286  2

DEF-000545

CONTRACT
TO PARTICIPATE IN THE ARKANSAS NURSING HOME PROGRAM
ADMINISTERED BY THE DIVISION OF ECONOMIC AND MEDICAL SERVICES
OFFICE OF LONG TERM CARE
UNDER TITLE XIX (MEDICAID)

This ___Facility___ agreement made and entered into this the _____ day of _____

by and between _____ hereinafter called Provider, and
(to be completed by DMS)

the Department of Economic and Medical Services, Office of Long Term Care hereinafter called State.

WITNESSTH:

I.   Provider agrees that its responsibilities hereunder shall be as follows:

   A.   To keep all records, as set forth in applicable Federal and/or State regulations, and Long Term Care Provider Manuals, and any duly promulgated changes in or additions thereto, and to fully disclose the extent of all services provided to individuals receiving assistance under the State Plan.

   B.   To make available for inspection all records herein specified to satisfy audit requirements under the program; to furnish all such records for audit conduction periodically by State or its designated agents and/or representatives of the Department of Human Services, and the Department of Health and Human Services of the United States of America or its designees or representatives. For all Medicaid recipients these records shall include, but not necessarily be limited to those records as defined in Section A above.

   C.   Provider shall at all times provide State access to the facility, residents, and resident records. Provider expressly agrees not to hinder, impede, or otherwise restrict State from carrying out its official duties, and expressly agrees to reasonably assist State in carrying out its official duties. In this context, "official duties" include inspections, surveys and investigations and reviews as prescribed by State and Federal laws, rules and regulations, and shall allow "observation and recordings made and conducted relative to long term care facilities, long term care residents, and records of or possessed by facility and/or residents. 'Observation' includes the right and ability to move in or around the interior and/or exterior, including resident rooms of a long term care facility, unaccompanied (except upon request if the inspector[s]) at any time. 'Recordings' include photostatic copies, notes, writings, drawings, and photographs (whether still or motion, in accordance with Section 2 of Ark. Act 33 of 1989), and sound recordings."

   D.   To accept only residents who have met the requirements of the duly promulgated Pre-Admission Screening Program and for whom the facility can provide all required and necessary services. Provider specifically herein agrees to insure availability of all medications prescribed by the resident's physician.

   E.   To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973. Provider agrees herewith that it has been furnished with a copy of the LTC Provider Manual, and shall be bound by all provisions thereof, including any and all changes and/or additions thereto.

   F.   To comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State.

   G.   To meet all requirements of applicable Life Safety Code and all State Fire and Safety Codes.

   H.   Provider will not transfer or discharge any recipient without a minimum of 30 days advance notice to the individual or a responsible person. Provider may transfer or discharge a Medicaid recipient under the following circumstances:

      1.   The transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;

      2.   The transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility;

      3.   The safety of the individuals in the facility is endangered;

      4.   The health of individuals in the facility would otherwise be endangered;

      5.   The resident has failed, after reasonable and appropriate notice, to pay (or to have paid under Title XIX or Title XVIII on the resident's behalf an allowable charge imposed by the facility for an item or service requested by the resident and for which a charge may be imposed consistent with federal and state laws and regulations; or

      6.   The facility ceases to operate.

     The notice of transfer or discharge must be made at least 30 days in advance of the resident's transfer or discharge except:

      a.   In a case described in item H(3) or H(4) above;

      b.   In a case described in item H(2) above where the resident's health improves sufficiently to allow for a more immediate transfer or discharge;

      c.   In a case described in item H(1) above where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs; or

      d.   In a case where the resident has not resided in the facility for 30 days.

   I.   Provider shall give 30 day notice to the State prior to any change of ownership including a change which contemplates or provides for the assumptions of existing liabilities by the new owner.

EMS-711 (R. 9/89)

EXHIBIT
tabbies®
E

1 of 2

J.  To bill State (Medicaid) only after the service has been provided.

K.  To accept Medicaid reimbursement rates determined by the State as full payment for all Medicaid eligible care and services required by the classification of each resident and rendered by the provider, and make no additional charges to the resident, or to accept any additional payment from the resident, relatives, or responsible parties for that service which is covered under the Medicaid Program.

L.  To promptly refund to the resident or responsible party any unused portion of recipient applied income collected in advance and not owed due to death, discharge or transfer. Recipient income is to be prorated on a per diem basis according to the number of days in the month.

M.  To promptly refund to a resident or other responsible person any deposit or entrance fee collected while awaiting approval for Medicaid eligibility to the extent those days are covered by Medicaid payments.

N.  To provide all services and specific items as defined in the Medical Assistance Reasonable Cost Related Reimbursement Manual for Long Term Care Facilities (MARCRRM-LTCF), or any additions thereto or subsequent manuals. Receipt of Medicaid per diem reimbursement rates is considered payment in full for services and items included in the MARCRRM.

O.  To accept assignment and file a claim in a timely and proper manner with all third party sources, and if said claim is collected from a third party, to reimburse Medicaid up to the amount Medicaid paid for said services.

P.  The $30 Personal Needs Allowance which is provided for by the Medicaid Program for personal expenditures of a resident cannot and shall not be used for any other purpose except as authorized in writing by the resident or responsible party.

Q.  To comply with all State and/or Federal regulations pertaining to resident personal funds and to provide the State access to patient account records or any other financial records maintained by the provider for benefit of the patient. The new owner must specify in writing which owner will be responsible for recipient Medicaid claims and facility account receivable balances resulting from dates of service prior to the ownership change.

Further Provider agrees that it will not prevent or interfere with the individual or responsible person, or the Office of Long Term Care in the transfer or discharging of a patient when same is appropriate.

II.  The State agrees that it shall have the following responsibilities hereunder:

A.  To make timely payments to Provider for the appropriate Medicaid services provided the eligible Medicaid recipients in accordance with the terms of the LTC Provider Manual or other appropriate regulations and procedures previously mentioned herein.

B.  To notify Provider of any changes of rules or regulations to be followed hereunder as promptly as is practicable at all times.

C.  To safeguard the confidentiality of any Medicaid records maintained for the State, its agents, and/or fiscal intermediary as specified in Federal and State regulations.

III.  Mutual Covenants, Duties, Responsibilities, and Undertakings

A.  State and Provider mutually agree to comply with all Federal and State laws, rules and regulations.

B.  State and Provider agree that the rights and privileges of the residents are of primary concern to the parties and the parties expressly agree and covenant to protect and preserve those rights and privileges and that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement and may result in immediate termination of this agreement without recourse.

C.  State and Provider agree and covenant that this written instrument constitutes the entirety of the agreement between both parties and no statement or representations not reduced to writing or incorporated herein by express reference shall be binding upon the parties and such statements or representations not incorporated herein by express reference or not contained herein shall constitute no part of this agreement.

IV.  This contract may be terminated in accordance with the following provisions:

A.  This contract may be terminated by either party by giving 30 days written notice to the other party.

B.  This contract may be terminated immediately by State for the following reasons:

1.  Federal sanction of Provider.

2.  Change of ownership.

3.  Violation of any provision herein contained.

4.  In accordance with termination procedures as set out in appropriate Federal and/or State regulations or rules by which Provider is bound hereunder.

| Provider | Division of Economic and Medical Services Office of Long Term Care |
|---|---|
| By: _____<br>(Signature) | By: _____<br>(Signature) |
| Name: _____<br>(Type Name) | Name: ___Carol Shockley___<br>(Type Name) |
| Title: ___Administrator___ | Title: ___Director, LTC___ |
| Date: _____ | Date: _____ |

EMS-711 (R. 9/89)

2 of 2