IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ADDIE EDWARDS, *as Personal Representative
of the Estate of Ozie Edwards and on behalf of the
wrongful death beneficiaries of Ozie Edwards and
all others similarly situated*; and DEBRA
WHEELINGTON, *as Personal Representative of the Estate
of Buele Cross and on behalf of the wrongful death beneficiaries
of Buele Cross and all others similarly situated*                                                    PLAINTIFFS


V.                              CASE NO. 1:17-CV-01054


CAMDEN OPERATIONS, LLC, d/b/a Ouachita Nursing
and Rehabilitation Center, *et al*.                                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss filed by Separate Defendants Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and Sub-Ten Holdings, LLC (hereinafter the "Camden Defendants"). ECF No. 57. Plaintiffs have filed a response. ECF No. 62. The Camden Defendants have filed a reply. ECF No. 67. The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiffs bring claims in their capacities as personal representatives of the estates of two former residents of the Ouachita Nursing and Rehabilitation Center (hereinafter the "Facility") as well as on behalf of a proposed class consisting of "all residents and estates of residents who resided at Camden Operations, LLC and Camden-Progressive Eldercare Services, Inc. both d/b/a Ouachita Nursing and Rehabilitation Center from September 1, 2013 through the present[.]" ECF No. 55, pp. 1-2. In the Third Amended Class Action Complaint, Plaintiffs assert causes of action for: (1) violations of the Arkansas Deceptive Trade Practices Act (hereinafter "ADTPA") (ECF No. 55, p. 23); (2) breach of the admission agreement (ECF No. 55, p. 27); (3) illegal exaction

under Article Sixteen, section Thirteen of the Arkansas Constitution (ECF No. 55, p. 29); (4) civil conspiracy/acting in concert (ECF No. 55, p. 31); and (5) unjust enrichment (ECF No. 55, p. 33). Plaintiffs claim that Defendants chronically understaffed the Facility, which led to the injury of residents. ECF No. 55, ¶ 29. Plaintiffs state that:

> Defendants' understaffing practices saved them millions of dollars at the expense of the residents' dignity and comfort, and jeopardized their safety. As a result of chronic understaffing, residents at the Facilities were left for long periods in their own urine and waste; were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; were deprived of food and water; and suffered falls. The failure to provide adequate staff not only violated the law and the contractual terms of the Admission Agreement, it also degraded residents and stripped them of their dignity.

ECF No. 55, ¶ 35. According to Plaintiffs, "Defendants' systemic failure to have sufficient staff at the Facility to meet the needs of its residents . . . caused Plaintiffs and the proposed Plaintiff Class to suffer economic and compensatory damages and injuries[.]" ECF No. 55, ¶ 29.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must accept as true all factual allegations set forth in the complaint by the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that

2

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. In considering a motion to dismiss under Rule 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (internal citations and alterations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

In the instant motion, the Camden Defendants assert that Plaintiffs' claims against them warrant dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Camden Defendants also argue that the claims of Plaintiff Debra Wheelington in her capacity as personal representative of the Estate of Buele Cross "must be dismissed as to [the] Camden Defendants because Mr. Cross did not reside at the facility while it was operated by [the] Camden

3

Defendants." ECF No. 57, ¶ 7. The Court will address each of the Camden Defendants' arguments in turn.

I. **Arkansas Deceptive Trade Practices Act Claims**

The Camden Defendants assert that Plaintiffs have failed to plead the elements of an ADTPA claim and that, therefore, Plaintiffs' claims against the Camden Defendants for alleged ADTPA violations should be dismissed. The Camden Defendants also argue that Plaintiffs rely on insufficient "group pleading" instead of alleging specific conduct of any one defendant.

As an initial matter, the Court must address the issue of whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to the instant matter. The parties disagree on this issue. In general, Rule (9)(b) applies to ADTPA claims. *Perez v. Volkswagen Grp. of Am., Inc.*, No. 2:12-CV-02289, 2013 WL 1661434, at *8 (W.D. Ark. Apr. 17, 2013) (applying Rule 9(b) to ADTPA claims and observing that "Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims"); *Pruitt v. Sw. Energy Co.*, 2013 WL 588998, at *5 (E.D. Ark. Feb. 13, 2013); *Whatley v. Reconstrust Co. NA*, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010)).

However, Plaintiffs appear to take the position that the Rule 9(b) standard does not apply to their particular ADTPA claims under Ark. Code Ann. § 4-88-108(2). In asserting that the Rule 9(b) heightened standard does not apply, Plaintiffs fail to cite any caselaw stating that Rule 9(b) is inapplicable under the present circumstances.[1] Instead, Plaintiffs rely on opinions noting that the

---

[1] Although the Court is aware that a court in the Western District of Arkansas has stated that "a strict 9(b) analysis should not apply to allegations of omissions," that court nonetheless appears to have applied the 9(b) standard. *See Burns v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:14-CV-02208, 2015 WL 11117157, at *4 (W.D. Ark. Apr. 23, 2015). In *Burns*, the court stated as follows:

> Toyota also argues that Burns's allegations fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). As this Court has previously observed, "Rule 9(b)'s pleading standard applies with equal force to state consumer fraud statutes as to common law fraud claims." *Perez v. Volkswagen Group of America, Inc.*, 2013 WL 1661434 at *8 (W.D. Ark. Apr. 17, 2013)

ADTPA must be construed liberally. Although the ADTPA requires liberal construction, that does not mean that claims made pursuant to § 4-88-108(2) of the ADTPA are excused from the heightened pleading requirements of Rule 9(b). The Eighth Circuit has observed that "[c]laims 'grounded in fraud' must meet [the Rule 9(b)] heightened pleading requirement." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015). The ADTPA appears to be a statute that is "grounded in fraud." *See* Ark. Code Ann. § 4-88-108(2) ("When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful:. . . (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."). Accordingly, the Court concludes that the heightened pleading standard of Rule 9(b) applies to Plaintiffs' ADTPA claims.

Having determined that Rule 9(b) applies, the Court now turns to that rule's requirements. Federal Rule of Civil Procedure 9(b) states as follows: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This standard "demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir.

---

(citations omitted). Rule 9(b) "demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). The Court finds, however, that a strict 9(b) analysis should not apply to allegations of omissions "because a plaintiff cannot be required to specifically identify the precise time, place, and content of an event that did not occur." *Belville v. Ford Motor Co.*, 2014 WL 6387961 at *5 (S.D.W.V. Nov. 14, 2014). Here, Burns sufficiently notifies Toyota in his complaint that Toyota (who) at no place (where) or time (when) supplied Burns with material facts, the content of which should have been notification of an existing defect in Tacoma rust protection (what), and in so doing intended for Burns to rely on the omissions in choosing to purchase his Tacoma (how).

Accordingly, although the *Burns* court purported to apply a less "strict" 9(b) standard, it appears that it simply applied the standard in the context of alleged fraudulent omissions.

2003). "The reason for requiring particularity in pleading for fraud claims, such as those established under the ADTPA, is 'to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Perez*, 2013 WL 1661434, at *8 (quoting *United States ex rel. Costner*, 317 F.3d at 888).

### A. Failure to Plead the Elements of an ADTPA Claim

The Court will first address the Camden Defendants' assertion that Plaintiffs have failed to plead the elements of an ADTPA claim.

Plaintiffs state that they base their ADTPA claims on Ark. Code Ann. § 4-88-108(2). That statute states as follows:

> When utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, the following shall be unlawful:. . . (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission.

To prevail on an ADTPA claim based on omission, "a plaintiff must show that: (1) the plaintiff has sustained damages; (2) the defendant concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of services; (3) the defendant intended that others rely upon the concealment, suppression, or omission; and (4) the defendant's conduct was a proximate cause of the plaintiff's damages."[2] *Moore v. Mack's Sport Shop, LLLP*, No. 4:16-CV-00540-KGB, 2017 WL 4350980, at *3 (E.D. Ark. Sept. 29, 2017) (quoting *Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d. 1011, 1023-24 (W.D. Ark. 2015)). In regard to the damages element, a plaintiff must show that he has sustained actual damage or injury. *Ramthun*, 93 F. Supp. 3d. at 1023. Claims made pursuant to Ark. Code Ann. § 4-88-108(2) do not require knowing or intentional deception. *Curtis Lumber Co., Inc. v. La. Pac. Corp.*, 618 F.3d 762, 776 (8th Cir. 2010).

---

[2] Although the Court finds it unnecessary in light of the proceeding discussion to address the proximate cause element of an ADTPA claim based on omission, the Court notes that Plaintiffs appear to base their right to relief on the assertion that understaffing—not a fraudulent omission—was the proximate cause of the alleged damages.

As previously noted, the Camden Defendants assert that Plaintiffs have failed to sufficiently allege any element of the ADTPA section under which they move. However, the Court will only address two of the necessary elements of a claim under Ark. Code Ann. § 4-88-108(2) in the interest of judicial economy. The Court will first discuss whether Plaintiffs have sufficiently alleged that they—through the decedents whose estates Plaintiffs represent—sustained damages. The Court will then turn to the issue of whether Plaintiffs have sufficiently alleged that the Camden Defendants omitted the information regarding understaffing with the intent that others rely on those alleged omissions.

### i. Sufficiency of Damages Allegations

The Camden Defendants assert that Plaintiffs have failed to plead "any actual damage or injury suffered by Ozie Edwards or Buele Cross as a result of any instance of understaffing" and that Plaintiffs instead make allegations of general injuries suffered by Plaintiffs and the proposed class. Plaintiffs argue that their allegations of damages are sufficient.

Upon review of Plaintiffs' response to the instant motion, the Court notes that most of the citations to the Third Amended Class Action Complaint refer to sections stating either that Plaintiffs generally suffered damages or that Defendants' alleged understaffing practices made them unable to provide specific services to residents. *See* ECF No. 55, ¶ 29 ("This case arises from Defendants' systemic failure to have sufficient staff at the Facility to meet the needs of its residents which caused Plaintiffs and the proposed Plaintiff Class to suffer economic and compensatory damages and injuries described in more detail below."); ECF No. 55, ¶ 34 ("More specifically, understaffing led to a pattern and practice of failing to provide Basic Care Services at the Facility to the residents during the Class Period. For example, the Facility failed to provide adequate staff: . . . To regularly provide toileting, incontinence care, and basic hygiene care,

7

leaving dependent residents in dirty diapers, dirty clothes, and dirty beds for hours at a time; To timely respond to call lights rung by residents. Residents were left to soil themselves while waiting for assistance; others fell while attempting to walk to the bathroom unaided[.]"); ECF No. 55, ¶ 35 ("As a result of chronic understaffing, residents at the Facility were left for long periods in their own urine and waste; were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; were deprived of food and water; and suffered falls."); ECF No. 55, ¶ 57 ("As a direct and proximate result of the Defendants' conduct, the Plaintiffs and Plaintiff Class have suffered actual damage, both in terms of physical injuries, as detailed above, and damages for loss of dignity, mental anguish and economic damage."). That being said, Plaintiffs do state as follows in relation to Ozie Edwards and Buele Cross specifically:

> While a resident at the Ouachita Nursing and Rehabilitation Center, Ozie Edwards sustained multiple injuries including, but not limited to, the following: (a) malnutrition; (b) dehydration; (c) multiple infections; (d) poor hygiene; and (e) death. Additionally, while a resident at the Ouachita Nursing and Rehabilitation Center, Buele Cross sustained multiple injuries including, but not limited to, the following: (a) skin tears; (b) poor hygiene; (c) severe pain; and (d) death.

ECF No. 55, ¶ 56.

Upon consideration, the Court finds that Plaintiffs' damage allegations are insufficient. Although it is true that Plaintiffs have generally alleged that they suffered damages and injuries, many of those assertions are conclusory. The one instance Plaintiffs cite—and that the Court has quoted above—in which they list specific physical injuries allegedly suffered by Ozie Edwards and Buele Cross contains little factual content other than the bare assertion that the injuries were allegedly suffered.[3] Further, without some context, these allegations are largely vague. For instance, Plaintiffs aver that Ozie Edwards suffered "multiple infections" but do not state the type

---
[3] As noted above, Plaintiffs appear to argue that understaffing was the alleged cause of these injuries, not the alleged omission of information regarding understaffing.

of infection, duration of illness, any relevant dates, or any other facts that would allow Defendants to meaningfully respond to the allegation. Similarly, Plaintiffs state that Buele Cross suffered "severe pain," but provide no context to establish what they mean by "severe pain" or what instances of "severe pain" they reference. Finally, although Plaintiffs state that Ozie Edwards and Buele Cross died while residents of the Facility, they do not explain the circumstances of the decedents' deaths or otherwise explain how decedents died so as to allow Defendants to mount a defense against such allegations or otherwise meaningfully answer the complaint.

Accordingly, the Court finds that Plaintiffs have failed to plead the damages element of an ADTPA claim sufficiently to comply with the heightened pleading standard of Rule 9(b). However, even if Plaintiffs' damages allegations were sufficient, their ADTPA claims would still be subject to dismissal as explained below.

### ii. Sufficiency of Intent Allegations

The Camden Defendants further argue that Plaintiffs have failed to plead that "any defendant <u>intended</u> that the Plaintiffs <u>rely</u>" on the alleged omission. ECF No. 58, p. 17 (emphasis in original). Plaintiffs respond that they "claim that Defendants omitted the fact that their nursing home was chronically understaffed in violation of federal and state laws and regulations from their Admission Agreements with the intent that the residents would rely on the Admissions Agreement to believe that Defendants could provide all the services promised therein." ECF No. 62, p. 10. In support of this assertion, Plaintiffs cite two paragraphs in the Third Amended Class Action Complaint. Those paragraphs state as follows:

> Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission. . . . The conduct of Defendants as described herein constitutes a deceptive practice in violation

9

> of the ADTPA. Defendants failed to inform Plaintiffs and the Plaintiff Class in Defendants' standard Admission Agreement that the Facility routinely failed to meet minimum staffing requirements imposed by state and federal law which increased profits. Furthermore, Defendants represented themselves as providing services commensurate with the needs of the residents and in compliance with the requirements of Arkansas state law governing long-term care and nursing Facility [sic].

ECF No. 55, ¶¶ 64, 65.

As noted above, Rule 9(b) allows that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, the less strict Rule 8 standard governs this issue. Upon review of the cited excerpts of Plaintiffs' Third Amended Class Action Complaint, the Court is unsure where Plaintiffs assert that Defendants omitted the information regarding understaffing with the intent that others rely on the omission. The above-quoted paragraphs simply recite the elements of Ark. Code Ann. § 4-88-108(2) and allege that Defendants failed to include information regarding understaffing in the admission agreement. Although Plaintiffs allege that "Defendants failed to inform Plaintiffs and the Plaintiff Class in Defendants' standard Admission Agreement that the Facility routinely failed to meet minimum staffing requirements[,]" they do not allege that the pertinent information was omitted with intent that others rely on the omission.

Accordingly, Plaintiffs have failed to sufficiently allege that Defendants omitted material information with the intent that others would rely on the omission. However, even if the Court were to find that Plaintiffs allegations were sufficient as to this element, their ADTPA claims would still be subject to dismissal as explained below.

## B. "Group Pleading" Tactics

As noted above, the Camden Defendants also argue that Plaintiffs rely on "group pleading" tactics, and fail to discuss the conduct of any specific Defendant. Plaintiffs do not offer argument in response to this assertion.

As previously stated, under Rule 9(b), a complaint "must identify who, what, where, when, and how." *United States ex rel. Costner*, 317 F.3d at 888. Under this standard, making allegations generally against a group of defendants is insufficient. *See Streambend Props.*, 781 F.3d at 1013. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id*. (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

A review of the Third Amended Class Action Complaint reveals allegations against "Defendants" generally. Further, in the section of the Third Amended Class Action Complaint specific to the asserted ADTPA cause of action, Plaintiffs only refer to the actions of "Defendants" generally. *See, e.g.*, ECF No. 55, ¶ 65 ("The conduct of Defendants as described herein constitutes a deceptive practice in violation of the ADTPA."); ECF No. 55, ¶ 67 ("The Defendants' trade practices also are, and have been throughout the Class Period[,] unconscionable[.]"). Such generalized pleading is insufficient under Rule 9 and, accordingly, Plaintiffs' ADTPA claims should be dismissed.

Therefore, the Court finds that, in light of the foregoing deficiencies, Plaintiffs' ADTPA claims against the Camden Defendants must be dismissed for failure to state a claim upon which relief can be granted.

## II. Breach of Contract

The Camden Defendants further assert that Plaintiffs' Third Amended Class Action Complaint fails to meet the federal pleading standards as it contains only conclusory allegations as to Plaintiffs' breach of contract claim.[4] In response, Plaintiffs argue that "[t]he complaint alleges the existence of a contract that obligated the defendants to provide services and that the defendants failed to provide the services outlined in the admission agreement, causing damage to the plaintiffs. That is all that is required[.]" ECF No. 62, p. 14.

Under Arkansas law, "[i]n order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and the defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach." *Farris v. Conger*, 512 S.W.3d 631, 634 (Ark. 2017) (citing *Rabalaias v. Barnett*, 683 S.W.2d 919, 921 (Ark. 1985)). The Court will address the breach of contract claim of each Plaintiff in turn.

### A. Breach of Contract Claim of Plaintiff Addie Edwards

Upon consideration, the Court finds that Plaintiff Addie Edwards, in her capacity as Personal Representative of the Estate of Ozie Edwards, has stated a breach of contract claim against Separate Defendant Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation

---

[4] The Camden Defendants also argue that Plaintiffs' breach of contract claim fails against Separate Defendant Sub-Ten Holdings, LLC, and all other Defendants because those entities and individuals were not parties to the contract at issue. In their response, Plaintiffs "acknowledge that Defendants Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center are the sole Defendants who were parties to the Admission Agreements" and state that they "are not seeking breach of contract claims against the remaining Defendants." ECF No. 62, p. 14. Accordingly, at this time the Court will only determine whether Plaintiffs have stated a breach of contract claim against Separate Defendant Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center, as Plaintiffs do not bring their breach of contract claims against Separate Defendant Sub-Ten Holdings, LLC, and Separate Defendant Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center is not moving under the instant motion.

Center (hereinafter "Camden Operations, LLC"). In the Third Amended Class Action Complaint, Plaintiffs allege that:

> Before being admitted to the Facility, residents,[5] or those acting on their behalf, were required to enter into a resident Admission Agreement, whereby the Facility agreed to provide nursing and personal care required for the Resident's known physical condition as required by law for the Resident's health, safety, grooming and well-being in exchange for valuable consideration. *See* Exhibit E.

ECF No. 55, ¶ 76 (footnote added). "Exhibit E" is a copy of the Admission Agreement entered into by Plaintiff Addie Edwards—on behalf of Ozie Edwards—and the Facility, which at that time was owned by Separate Defendant Camden Operations, LLC. Plaintiffs further contend that "residents, or those acting on their behalf, paid for or caused to be paid for, the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Defendants promised to provide" and that "Defendants breached their contractual duties, . . . by understaffing the Facility and creating a situation whereby it was impossible for caregivers to provide the care and services as described in the agreement[.]" ECF No. 55, ¶¶ 77, 78. Read as a whole with all reasonable inferences drawn in favor of Plaintiffs, it is evident that Plaintiff Addie Edwards asserts: (1) the existence of a valid and enforceable contract, namely the admission agreement, between Plaintiff Edwards and the Facility, which was owned and operated by Separate Defendant Camden Operations, LLC; (2) that Separate Defendant Camden Operations, LLC, as the owner of the Facility at the time of Ozie Edwards's residency, was obligated under that contract to provide personal care to Ozie Edwards; (3) that Separate Defendant Camden Operations, LLC failed to provide that care; and (4) that damages resulted in that Ozie Edwards did not receive the

---

[5] The Court is cognizant that the Third Amended Class Action Complaint often refers to "residents" generally. At this stage, the Court is bound to accept as true all factual allegations set forth in the Third Amended Class Action Complaint and to draw all reasonable inferences in Plaintiffs' favor. In the Third Amended Class Action Complaint, Plaintiffs clearly state that Ozie Edwards and Buele Cross were "residents" of the facility. *See* ECF No. 55, ¶¶ 6, 9. Accordingly, the Court will infer that when the Third Amended Class Action Complaint speaks of "residents" generally, it speaks of Ozie Edwards and Buele Cross.

contracted-for care. Accordingly, the Court finds that Plaintiff Addie Edwards has stated a breach of contract claim against Separate Defendant Camden Operations, LLC.

Therefore, the instant motion should be denied insofar as it seeks dismissal of Plaintiff Addie Edwards' breach of contract claim against Separate Defendant Camden Operations, LLC.

### B. Breach of Contract Claim of Plaintiff Debra Wheelington

Specifically in relation to Buele Cross, the Camden Defendants argue that "Buele Cross . . . was not even a resident during the time that Camden Operations, LLC operated Ouachita Nursing and Rehabilitation Center and therefore could not assert a valid claim for breach of the admission agreement" against that Defendant. ECF No. 58, p. 20. Plaintiffs have not responded to this argument.

Upon review of the Third Amended Class Complaint, it is evident that Buele Cross was a resident of the Facility when it was owned by Separate Defendant Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center, not when it was owned by Separate Defendant Camden Operations, LLC. *See* ECF No. 55, ¶ 9 ("Buele Cross was a resident of Ouachita Nursing and Rehabilitation Center . . . from approximately March 8, 2016, until his death on April 30, 2016."); ECF No. 55, ¶ 11 ("Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center . . . beginning on or about September 1, 2015, owned, operated, managed, and held the license for . . . Ouachita Nursing and Rehabilitation Center."). Likewise, Plaintiffs did not attach the Admission Agreement relevant to Buele Cross to their Third Amended Class Action Complaint and there appears to be no specific allegation that Buele Cross entered into an admission agreement with Separate Defendant Camden Operations, LLC. Accordingly, there is no indication that Buele Cross and Separate Defendant Camden Operations, LLC were ever parties to a valid and enforceable contract. Therefore, to the extent Plaintiffs meant

14

to assert a breach of contract claim in relation to Buele Cross against Separate Defendant Camden Operations, LLC, that claim should be dismissed.

### III. Illegal Exaction

The Camden Defendants assert, in relevant part, that "Plaintiffs' illegal exaction claim fails . . . because their complaint does not identify any Arkansas law that is allegedly being violated by the expenditure of public funds, [and] does not allege any wrongdoing by a governmental actor in expending state funds[.]" ECF No. 58, p. 25. In response, Plaintiffs assert that the Camden Defendants' arguments were rejected by the Arkansas Supreme Court in *Nelson v. Berry Petroleum Co.*, 413 S.W.2d 46 (Ark. 1967).

Article Sixteen, section Thirteen of the Arkansas Constitution provides that "any citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." "An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law." *Bowerman v. Takeda Pharm. U.S.A.*, 442 S.W.3d 839, 842 (Ark. 2014). There are two types of illegal exaction cases: "'public funds' cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and 'illegal tax' cases, where the plaintiff asserts that the tax itself is illegal." *Id.* The instant matter is a "public funds" case, as Plaintiffs assert that public funds were used improperly by Defendants. Before a public funds illegal exaction case "will be allowed to proceed, there must be facts showing that monies generated from tax dollars or arising from taxation are being misapplied or illegally spent." *Id.* at 843 (citing *Dockery v. Morgan*, 380 S.W.3d 377 (Ark. 2011)). In order to state an illegal exaction claim, a plaintiff "must allege that the expenditure was illegal, misapplied, or arbitrary." *Id.*

15

Furthermore, it appears that in order to state an illegal exaction claim a plaintiff must allege some wrongdoing on the part of a State actor. *See Bowerman*, 442 S.W.3d 839. The parties disagree on this point. The Camden Defendants rely heavily on *Bowerman v. Takeda Pharmaceuticals U.S.A.*, while Plaintiffs rely exclusively on *Nelson v. Berry Petroleum Co*. In *Bowerman*, the Arkansas Supreme Court found that the plaintiff could not proceed on an illegal exaction cause of action.[6] In coming to this conclusion, the *Bowerman* court stated:

> [I]n order to state a claim for an illegal exaction, Bowerman must allege that the expenditure was illegal, misapplied, or arbitrary. *Bowerman does not assert that the action of the State in expending funds on Actos was unlawful.* Nor can he, as the State is authorized by Arkansas Code Annotated section 19-5-306(10)(a)(viii) (Supp. 2013) to use State funds to pay for prescription drugs. Bowerman also does not allege that the funds were misapplied or arbitrarily spent. In fact, *Bowerman does not allege any wrongdoing on the part of the State in expending these funds. All the wrongdoing that Bowerman alleges is on the part of the Respondents.*

442 S.W.3d at 843 (emphasis added). Accordingly, based on this reasoning, it seems that a plaintiff who wishes to pursue an illegal exaction claim must allege some wrongdoing on the part of a State actor. In contrast, the Arkansas Supreme Court found in *Nelson* that the plaintiff could proceed with an illegal exaction claim against non-State actors.[7] Accordingly, *Nelson* appears to stand for

---

[6] *Bowerman* was brought before the Arkansas Supreme Court on certified questions from the United States District Court for the Western District of Louisiana.

[7] In *Bowerman*, the Arkansas Supreme Court distinguished *Nelson*, stating "[i]n *Nelson*, the plaintiff alleged that the State overpaid for asphalt that was inferior to the grade of asphalt contracted by the State. Unlike *Nelson*, here the State paid reimbursement for exactly the drug that was prescribed. Thus, Bowerman's claim fails as a matter of law." *Bowerman*, 442 S.W.3d at 843. Accordingly, the *Bowerman* court found it unnecessary to answer the certified question of whether *Nelson* is still good law, instead finding that "[b]ecause we hold that Bowerman has not stated a claim for illegal exaction, *Nelson* has no application to the facts asserted by Bowerman" and that answering the certified question would constitute an advisory opinion. *Bowerman*, 442 S.W.3d at 843-44. In his concurrence and dissent, Justice Danielson stated that the court should have answered whether *Nelson* was still good law. He further stated that he could "find no significant difference between [*Bowerman*] and the *Nelson* case" and "would overrule [*Nelson*] to the extent it conflicts with [*Bowerman*]." *Id*. at 845 (Danielson, Corbin, and Hoofman, JJ., concurring in part and dissenting in part). Notwithstanding the Arkansas Supreme Court's attempt to distinguish *Nelson* from the decision in *Bowerman*, the Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, has recently noted that "[a]lthough *Bowerman* did not explicitly overrule *Nelson*, . . . *Bowerman* greatly limited the scope of illegal exaction claims from what *Nelson* previously held permissible." *Green v. Skyline Highland Holdings, LLC, et al.*, Case No. 4:17-CV-00534-BSM, ECF No. 24, p. 4. (E.D. Ark. December 13, 2017) (granting a defendant's motion to dismiss the plaintiffs' illegal exaction claims pursuant to *Bowerman* and in spite of *Nelson* in a similar action against nursing home defendants).

the proposition that non-state defendants may be sued for illegal exaction. *See Bowerman*, 442 S.W.3d 839, 844 ("As the federal district court's certification order aptly points out, *Nelson* appears to support two propositions. First, that a citizen-taxpayer may sue private defendants for illegal exaction. Second, that even when the state has proper authorization to distribute money, an illegal-exaction suit may be sustained where a nongovernment third party acted illegally.") (Danielson, Corbin, and Hoofman, JJ., concurring in part and dissenting in part).

Upon consideration, the Court finds that it need not resolve the perceived tension between *Nelson* and *Bowerman* discussed by Justice Danielson in his concurrence and dissent in *Bowerman*. The Court finds that the reasoning of *Bowerman* directly applies to the instant matter. *See Green v. Skyline Highland Holdings, LLC, et al.*, Case No. 4:17-CV-00534-BSM, ECF No. 24 (E.D. Ark. December 13, 2017) (dismissing plaintiffs' illegal exaction claims pursuant to *Bowerman* and in spite of *Nelson*). As noted above, in concluding that the *Bowerman* plaintiff could not proceed on his illegal exaction claim, the Arkansas Supreme Court noted that he had not alleged any wrongdoing on the part of the State of Arkansas, but instead only alleged wrongdoing by non-State actors. 442 S.W.3d at 843. The same flaw is present in the instant case. Plaintiffs allege that:

> The majority of the money received by the Defendants for services provided to the Residents comes from Medicaid and Medicare which is funded by tax dollars and therefore implicates the state treasury. The Arkansas Department of Human Services ("DHS") regulates and administers the Medicaid Program in Arkansas.

ECF No. 55, ¶ 87. However, Plaintiffs do not assert that these expenditures by the State were unlawfully disbursed by the State, misapplied by the State, or arbitrarily used by the State. As in *Bowerman*, Plaintiffs do "not allege any wrongdoing on the part of the State in expending these funds. All the wrongdoing that [Plaintiffs] allege[] is on the part of the [Defendants]."

Accordingly, Plaintiffs' illegal exaction claims fail.

## IV. Civil Conspiracy/Acting in Concert

The Camden Defendants argue that Plaintiffs' civil conspiracy claims must be dismissed.

In *Tuohey v. Chenal Healthcare, LLC, et al.*, 173 F. Supp. 3d 804 (E.D. Ark. 2016)—a case, similar to the case at bar, concerning alleged understaffing of a nursing facility—the Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, observed that:

> "Civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." To state a claim for civil conspiracy, one must allege the existence of an agreement to accomplish a purpose "that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another." Civil conspiracy is not a separate tort; it must be based on the underlying tortious activity. A plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim.

173 F. Supp. 3d at 812 (internal citations omitted). "A plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim." *Id.*; *see* Ark. Model Jury Instructions 714-Civil (2017 ed.); *Foster v. Boch Indus., Inc.*, Case No. 08-CV-5093, 2009 WL 485407, at *5 (W.D. Ark. Feb. 26, 2009) (stating that in order to establish a civil conspiracy claim, the plaintiff was required to prove, in relevant part, that "an intentional tort can be proven on the part of one conspirator[.]"). Further, "it is clear that civil conspiracy is a derivative tort that is not actionable in and of itself." Ark. Model Jury Instructions 714-Civil (2017 ed.); *see Tuohey*, 173 F. Supp. 3d at 812.

In the instant case, the Camden Defendants assert that Plaintiffs' civil conspiracy claims fail because there is no underlying intentional tort. In response, Plaintiffs assert that a civil conspiracy claim may proceed where a plaintiff asserts some "underlying tortious activity," and does not require that an intentional tort be alleged in the complaint. ECF No 62, p. 17. Plaintiffs

appear to take the position that a civil conspiracy claim may be based on statutory violations, such as Defendants' alleged violation of the ADTPA.

Upon consideration, the Court finds that Plaintiffs' civil conspiracy claims fail under both the parties' theories. If the Court were to agree with the Camden Defendants that in order to state a claim for civil conspiracy Plaintiffs must allege an underlying intentional tort, Plaintiffs claims would fail because they have alleged no cause of action for an intentional tort. Likewise, if the Court were to find that a civil conspiracy claim must simply be based on "underlying tortious activity" such as statutory violations under the ADTPA, as Plaintiffs argue, Plaintiffs claims would fail because, as found above, Plaintiffs' ADTPA claims must be dismissed. At this point, Plaintiffs' only remaining cause of action is based on an alleged breach of contract and "a civil conspiracy claim under Arkansas law cannot be based on a breach of contract." *Tuohey*, 173 F. Supp. 3d at 812 (citing *Ondrisek v. Hoffman*, 698 F.3d 1020, 1026 (8th Cir. 2012) and *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)).

Accordingly, Plaintiffs' civil conspiracy/acting in concert claims must be dismissed.

### V.  Unjust Enrichment

The Camden Defendants argue that Plaintiffs' unjust enrichment claims must be dismissed.

Upon review of the parties' briefing on this issue, the Court finds that it need not address Plaintiffs' unjust enrichment claims in regard to the Camden Defendants. In their response to the instant motion, Plaintiffs state that they:

> are not pursuing unjust enrichment claims against the Defendants who were a party to the Admission Agreement, namely Defendants Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and Camden-Progressive Eldercare Services, Inc. d/b/a Ouachita Nursing and Rehabilitation Center. Accordingly, Plaintiffs have alleged claims of unjust enrichment against only Defendants Progressive Eldercare Services, Inc.; JEJ Investments, LLC; Advanced Practice Solutions, LLC; ProCare Therapy Services, LLC; Southern Administrative

19

Services, LLC; Ponthie Holdings, LLC; Professional Nursing Solutions, LLC; CarePlus Staffing Services, LLC; Ross Ponthie; and John Ponthie.

ECF No. 62, p. 21. Accordingly, Plaintiffs explicitly state that they do not pursue unjust enrichment claims against Separate Defendant Camden Operations, LLC. Likewise, in specifically noting which Defendants are subject to their unjust enrichment claims, Plaintiffs have not included Separate Defendant Sub-Ten Holdings, LLC.[8] Thus, the Court need not determine whether Plaintiffs have stated a claim against the Camden Defendants.

## CONCLUSION

For the foregoing reasons, the Court finds that the Camden Defendants' Motion to Dismiss (ECF No. 57) should be and hereby is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Plaintiffs' ADTPA claims, illegal exaction claims, civil conspiracy/acting in concert claims, and unjust enrichment claims against the Camden Defendants are hereby **DISMISSED WITHOUT PREJUDICE**. Likewise, Plaintiff Debra Wheelington's breach of contract claim against the Camden Defendants is hereby **DISMISSED WITHOUT PREJUDICE**. However, Plaintiff Addie Edwards has sufficiently stated a breach of contract claim against Separate Defendant Camden Operations, LLC d/b/a Ouachita Nursing and Rehabilitation Center and her claim against that separate defendant remains for further consideration.

**IT IS SO ORDERED**, this 19th day of July, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[8] The Camden Defendants appear not to have noticed this omission, stating in their reply that Plaintiffs "continue to pursue the claim against Sub-Ten Holdings, LLC[.]" ECF No. 67, p. 7.